UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DALE W. ECONOMAN and <br> ECONOMAN AND ASSOCIATES <br> FAMILY MEDICINE, <br><br> Plaintiffs, <br><br> v. <br><br> TONDA COCKRELL, <br> GARY L. WHISENAND, <br> THE GARRISON LAW FIRM L.L.C., <br> JAMES LUTTRULL, JESSICA KRUG, <br> THE OFFICE OF THE INDIANA <br> ATTORNEY GENERAL, and <br> THE UNITED STATES, <br><br> Defendants. | Case No. 1:20-CV-32 |

**OPINION AND ORDER**

This matter is before the Court on the motion to dismiss and memorandum in support (ECF Nos. 13 and 14) filed by Defendants James Luttrull, Jessica Krug and the Office of the Indiana Attorney General (collectively "the State Defendants"). Plaintiffs Dale Economan and Economan and Associates Family Medicine ("the Plaintiffs") filed a response in opposition (ECF No. 17), and the State Defendants filed a reply (ECF No. 20). For the reasons set forth below, the motion is GRANTED in part and DENIED in part. The motion is granted as to all claims asserted against the Office of the Indiana Attorney General and the office of the Grant County Prosecutor (to the extent that any claims are intended to be asserted against the latter, as discussed below). The motion is denied as to the Plaintiffs' federal and state law claims against Luttrull and Krug. The Plaintiffs' claims against the federal Defendants, including Tonda Cockrell, Gary Whisenand and the United States, are not at issue at this juncture and so are

unaffected by the Court's rulings and remain pending.

## STANDARD OF REVIEW

The State Defendants bring their motion to dismiss pursuant to Federal Rule 12(b)(6). "A judge reviewing a complaint pursuant to Rule 12(b)(6) must construe the allegations in the complaint in the light most favorable to the non-moving party, accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the non-movant." *Knowles v. Hudson*, 2019 WL 4306364, at *2 (N.D. Ind. Sept. 11, 2019) (citing *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018)). Under the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (quoting *Ray v. City of Chicago*, 629 F.3d 660, 662-63 (7th Cir. 2011); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "Even if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded are taken as true, a plaintiff has 'nudged

2

their claims across the line from conceivable to plausible.'" *Knowles*, 2019 WL 4306364, at *2 (quoting *Twombly*, 550 U.S. at 570).

## BACKGROUND

Dale Economan worked as a physician in Marion, Indiana, and was the owner of Economan and Associates Family Medicine. EAFM was "a general family medical practice . . . created in August 2012 by Dr. Economan, and began officially seeing patients in December of 2012." Complaint, p. 5. Economan brought this lawsuit alleging that state and federal authorities conspired to seize his assets and suspend his medical license based on false allegations that he was illegally dispensing narcotics to some of his patients. Economan summarizes the factual basis for his claims as follows:

> In July 2015, local law enforcement, the Medicaid Fraud and Control Unit of the Indiana Office of the Attorney General, DEA agents, Grant County Prosecutors, and Joint Task Force officers met to discuss and conspire, upon information and belief, a multi-pronged attack to take down Dr. Economan and EAFM. Upon information and belief, this meeting occurred on July 16, 2015, and was tape recorded. . . . Upon information and belief, the Plaintiffs were targeted, in large part, because the Defendants were aware of their financial assets and the potential to seize those assets through forfeiture proceedings. . . . The first prong of the attack would be to seize the financial assets and accounts of Economan and EAFM through the forfeiture process. . . . The second prong of the attack would be to seek summary suspension of Dr. Economan's medical license.

*Id*., p. 6. Economan alleges that:

> On July 29, 2015, local law enforcement, the Medicaid Fraud and Control Unit of the Indiana Office of the Attorney General, DEA agents, Grant County Prosecutors, and Joint Task Force officers executed a search warrant on the residence of Dr. Economan and EAFM. . . . The criminal allegations contained within the affidavit used to secure the search warrant accused Dr. Economan of illegally prescribing opioids, or prescribing opioids without a legitimate medical purpose, to approximately fifty (50) of his 2,500 distinct patients. . . . However, the search warrant affidavit was devoid of any real probable cause, in that it lacked any medical opinions, or sworn statements from any medically trained

3

individual, attesting to the medical illegitimacy of Dr. Economan's prescriptions
or practices.

*Id*., pp. 6-7. Economan alleges that his assets were illegally seized as a result of the Defendants' conspiratorial actions. He asserts that "the Seizure Order restricted over one million ($1,000,000.00) dollars of property belonging to the Plaintiffs. . . . For over the next three (3) years, the majority of the Plaintiffs' financial assets would remain seized, before being ultimately returned after all of the criminal allegations forming the basis for the forfeiture actions were dismissed with prejudice." *Id*., p. 10. Finally, Economan contends that his medical license was illegally suspended. Economan states that "[t]he [Indiana Medical Licensing] Board ultimately stripped Dr. Economan of his ability to practice medicine on the sole basis of" false testimony submitted by the Defendants. *Id*., p. 11. Economan claims that as a result of this conspiracy, he "never again practiced medicine[]" and that "[w]ithout Dr. Economan's medical license and after having had its financial accounts seized and frozen, EAFM was forced to close the practice." *Id*.

Based on the foregoing facts, Economan brings several claims against the Defendants, including: (1) federal civil rights claims against all Defendants for violation of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights, brought under 42 U.S.C. § 1983 (*id*., pp. 19-20)[1]; (2) a state law claim for malicious prosecution against all Defendants (*id*., pp. 20-22); (3) a state law claim for abuse of process against all Defendants (*id*., pp. 23-24); (4) a claim simply titled "conspiracy,"[2] (*id*., pp. 24-25); and (5) a claim for "injunctive and declaratory relief," in which he

---

[1] The Plaintiffs' civil rights claims against the United States, while not at issue now, are brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Complaint, p. 2.

[2] Relevant to his civil conspiracy claim, Economan alleges that "Defendants conspired and acted in concert to do whatever was necessary, lawful or not, to i) cause the arrest,

4

asserts that Indiana Code § 34-24-2-1 *et seq*. [v]iolates the Fourteenth Amendment to the United States Constitution[]" (*id*., pp. 25-28).[3]

Economan names as Defendants the following entities and individuals:

1) Tonda Cockrell, "a sworn law enforcement officer employed by the United States Drug Enforcement Administration ("DEA") and the Kokomo Police Department."

2) Gary Whisenand, "a civilian investigator employed by the United States Drug Enforcement Administration."

3) The Garrison Law Firm, LLC, "a law firm located in Indianapolis, Indiana and hired by the Grant County Prosecutor's Office to handle all forfeiture cases filed in Grant County, Indiana."

4) James Luttrull, who "served as the Grant County Prosecutor during all relevant times, representing the 48th Judicial Circuit in Indiana."

5) Jessica Krug, who "served as an employee of The Medicaid Fraud and Control Unit of the Indiana Office of the Attorney General."

6) "The Office of the Indiana Attorney General."

Complaint, pp. 3-4. Economan also names the United States as a Defendant, alleging as follows:

---

prosecution, pretrial detention, conviction and imprisonment of Plaintiff Dr. Economan; ii) shut down EAFM; iii) strip Dr. Economan of his ability to practice medicine; and iv) seize Dr. Economan's and EAFM assets. . . . Throughout the period of the conspiracy, Defendants pursued their objectives with actual malice toward Plaintiffs, with utter and deliberate indifference to and disregard for the Plaintiffs' rights under the Constitution and laws of the United States, without probable or reasonable cause to believe Plaintiff guilty of the crimes and misconduct for which he was accused." Complaint, p. 24. This conspiracy claim is the backbone of Economan's claims under § 1983 and § 1985, and the factual basis for his state law claims.

[3] I.C. § 34-24-2-1 is titled the "Civil Remedies for Racketeering Act" ("CRRA"). It is "Indiana's counterpart" to the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Sims v. New Penn Fin. LLC*, 2016 WL 558920, at *9 (N.D. Ind. Feb. 12, 2016).

5

> The United States is a party to this action, in part, pursuant to 28 U.S.C. § 1346(b), which makes it liable for the injuries to Dr. Economan and EAFM that were caused by the negligent or wrongful acts of its employees and jointly and severally for those caused by their co-conspirators.

*Id*., p. 5.

## DISCUSSION

The present motion to dismiss is brought only by the State Defendants, Luttrull, Krug and the Office of the Indiana Attorney General. The State Defendants seek dismissal of all claims asserted against them, arguing as follows:

> Plaintiffs' claims against the Office of the Indiana Attorney General fail as the Office is neither a "person" for purposes of 42 U.S.C. § 1983 nor can the remaining state law claims proceed as they are barred by the Eleventh Amendment. . . . Plaintiffs' claims against James Luttrull and Jessica Krug fail as they are all barred by the absolute prosecutorial immunity [doctrine]. . . . Lastly, Plaintiffs' constitutional claim also fails. Not only do Plaintiffs not plead a present case or controversy to establish subject matter jurisdiction, Plaintiffs have not properly plead an appropriate claim under the *Ex Parte Young* doctrine.

Motion to Dismiss, p. 1.

**I. Claims against the Office of the Indiana Attorney General (and the Grant County Prosecutors Office).**

The Plaintiffs concede in their response brief "that the Office of the Indiana Attorney General and Grant County Prosecutor's Office are not proper defendants for purposes of a § 1983 or 1985 claim based on the facts now known to Plaintiffs, as they are not 'persons'–but Plaintiffs make no allegation to the contrary in the Complaint." Plaintiffs' Memorandum in Opposition (ECF No. 17), p. 9. The Plaintiffs then make the rather perplexing statement that "Plaintiffs name the Office of the Indiana Attorney General to the extent that they seek injunctive relief, to the extent that it is the employer of other named Defendants, and insofar as their state claims are

6

alleged." *Id*. So the Plaintiffs concede that the OAG and the Grant County Prosecutor's Office cannot be sued under §§ 1983 or 1985, but insist that the OAG is a proper defendant for purposes of the Plaintiffs' claim for injunctive relief, because it employed other Defendants (namely, Jessica Krug), and because state law tort claims are asserted against Krug.[4] The only arguably viable claim that the Plaintiffs assert against the OAG is their claim for injunctive relief (i.e., their argument that Indiana's forfeiture statute is unconstitutional). And even then, the State Defendants assert that the OAG is not the proper party to sue for this claim. However, the Court finds that this claim is not viable under the facts of this case, as discussed below. Accordingly, all claims against the OAG (and the Grant County Prosecutor's Office) must be dismissed.

The Grant County Prosecutor's Office was not named as a Defendant or served with process. The reason the State Defendants include a discussion of that Office is because the Plaintiffs included in their response brief a footnote that states as follows:

> To the extent that Plaintiffs refer to the Medicaid Fraud and Control Unit ("MFCU) in their Complaint, they do so interchangeably with Defendant Jessica Krug ("Krug"). To the extent that Plaintiffs refer to the Grant County Prosecutor or Grant County Prosecutor's Office in their Complaint, they do so interchangeably with Defendant James Luttrull ("Luttrull"). As previously reiterated, Plaintiffs name The Office of the Indiana Attorney General as a defendant insofar as injunctive relief is sought.

Plaintiffs' Response, p. 4, n. 2. The State Defendants respond by stating that while "Plaintiffs 'concede that the OAG and Grant County Prosecutor's Office are not proper defendants for purposes of a § 1983 claim[,]' . . . [i]t is unclear how Plaintiffs intended to marry their footnote with their concession." Defendants' Reply, p. 3, n. 1. In short, the State Defendants contend–and

---

[4] Nowhere in the Plaintiffs' Complaint do they allege state tort claims against the OAG (or the Grant County Prosecutor's Office) on the basis of *respondeat superior*. They also do not raise any such argument in their brief in opposition to the motion to dismiss.

7

the Court agrees–that the Plaintiffs' Complaint (especially the footnote quoted above) is confusing. The Plaintiffs state in their Complaint that their claim for "deprivation of federal civil rights under 42 U.S.C. § 1983" is asserted against "All Defendants." Complaint, p. 19. The same goes for the Plaintiffs' state claims for malicious prosecution (Complaint, p. 20), their state law claim for abuse of process (*id*., p. 23), and their claim for "conspiracy" (*id*., p. 24). Their claim for injunctive relief does not specifically state, as their other claims do, which Defendant or Defendants are being sued on this claim. As noted above, the Plaintiffs expressly state that they named the OAG "insofar as injunctive relief is sought." The State Defendants contend that the Plaintiffs' interchangeable references to Luttrull/Grant County Prosecutor's Office and Krug/the Medicaid Fraud and Control Unit" of the OAG, create confusion about who is being sued for what. But in the end, as the State Defendants argue, this confusion doesn't matter, because "[a]ny claims against the Office of the Indiana Attorney General and to the extent any claims can be read as to apply to the Grant County Prosecutor's Office must be dismissed as those claims are barred either by Eleventh Amendment immunity or § 1983 is inapplicable as these agencies are not 'persons' for purposes of 42 U.S.C. § 1983." Defendants' Memorandum, p. 7. The Plaintiffs have conceded that the OAG and the Grant County Prosecutor's Office (the latter, again, an unnamed, unserved entity) are not proper parties for any claims brought under § 1983. Accordingly, any claims asserted against the OAG or the Grant County Prosecutor's Office under § 1983 must be dismissed.

  The State Defendants also argue that any claims asserted against these two entities are barred by the Eleventh Amendment, which bars suits against a state or state agencies. Defendants' Memorandum, pp. 9-10. The Plaintiffs respond by asserting that the Eleventh

8

Amendment does not present a bar *to their claim for injunctive relief* because their claim falls under the exception of *Ex Parte Young*, 209 U.S. 123 (1908). As the State Defendants correctly point out, "[t]he *Ex Parte Young* doctrine was created so that 'a private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law.'" Defendants' Reply, p. 6 (quoting *Baskin v. Bogan*, 12 F.Supp.3d 1144, 1152 (S.D. Ind. 2014), *aff'd*, 766 F.3d 648 (7th Cir. 2014)). The State Defendants also correctly observe that "[t]he *Ex Parte Young* exception comes into play against a 'state official' in his or her 'official capacity,' not the state itself. What is more, it does nothing to keep alive Plaintiffs' *respondeat superior* claims or separate state law claims." *Id*. (citing *Raygor v. Regents of U. of Minnesota*, 534 U.S. 533, 540-41 (2002) (federal courts' supplemental jurisdiction under 28 U.S.C. § 1367 does not overcome Eleventh Amendment bar)).

The Plaintiffs do not address the Eleventh Amendment bar to their claims for damages. They do, however, argue that the Eleventh Amendment does not present a bar to their injunctive relief claim, i.e., that this claim avoids the Eleventh Amendment bar because it falls within the exception carved out by *Ex Parte Young*. This argument fails.

As another district court explained, "[t]he Eleventh Amendment 'bars an action in federal court against a state, its agencies, or its officials in their official capacity' without the state's consent. *Gossmeyer v. McDonald*, 128 F.3d 481, 487 (7th Cir. 1997) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-102 (1984) ). There are, however, exceptions to the Eleventh Amendment bar on suits against the state or state officials. Among these are . . . where the plaintiff seeks 'prospective relief' to 'enjoin state officials to conform their future conduct to the requirements of federal law.' *Quern v. Jordan*, 440 U.S. 332, 337 (1979)." *Kelly*

9

*K. v. Walker*, 2018 WL 4635641, at *11 (N.D. Ill. Sept. 27, 2018). "'In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Galvan v. Indiana*, 2020 WL 2849901, at *2 (S.D. Ind. June 1, 2020) (quoting *Verizon Maryland, Inc. v. Public Serv. Commission of Maryland*, 535 U.S. 635, 645 (2002)).

> As another district court explained recently:
>
> A plaintiff can bring an official capacity claim for injunctive relief under section 1983. "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official capacity actions for prospective relief are not treated as actions against the State.'" *Will* [*v. Michigan Dep't of State Police*], 491 U.S. [58], at 71 n.10 [(1989)] (quoting *Kentucky v. Graham*, 473 U.S. at 167 n.14.). The Eleventh Amendment does not prohibit injunctive relief against state officials and state agencies. *See, e.g., Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (holding that suits for prospective injunctive relief are not treated as actions against the State for immunity purposes). "Under *Young*, state officials may be sued in their official capacities for injunctive relief, although they may not be sued for money damages." *MSA Realty Corp. v. State of Illinois*, 990 F.2d 288, 291 (7th Cir. 1993); *Dean Foods Co. v. Brancel*, 187 F.3d 609, 613 (7th Cir. 1999) ("Under the longstanding doctrine of *Ex Parte Young*, a private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law."). Courts conduct a "'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks federal relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).
>
> But the potential availability of a claim for injunctive relief does not mean that such a claim is appropriate here. *An injunction is a forward-facing form of relief. It applies to ongoing or imminent harm.* See Federal Trade Comm'n v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 772 (7th Cir. 2019); *Lambert v. Broglin*, 946 F.2d 897, at *2 (7th Cir. 1991) (unpublished table decision) ("*Injunctive relief is inappropriate when a litigant alleges only past harm*, unaccompanied by a 'continuing adverse effect.'"). "*Because injunctive relief looks to the future, and is designed to deter rather than punish, relief will be denied if the conduct has been*

> *discontinued on the ground that the dispute has become moot and does not require the court's intervention.*" See 11A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2942 (3d ed. 2019). *Damages can look back, but an injunction must look to the present, or look forward.*

*Love v. Illinois Dep't of Corr.*, 2020 WL 1237200, at *4 (N.D. Ill. Mar. 13, 2020) (italics added).

The State Defendants argue that the "Plaintiffs' constitutional challenge is moot" because it is based on alleged past harm rather than seeking prospective relief, and the *Ex Parte Young* doctrine, as set forth above, allows such claims only when a plaintiff seeks to enjoin future conduct. As the State Defendants put it, "even if the State Defendants conceded that the [Indiana forfeiture statute] at issue violates notions of due process, which they do not so concede, Plaintiffs do no presently suffer such violations. At best, they did–in the past. This, alone, is sufficient to dismiss Plaintiffs' *Ex Parte Young* claim[.]" Defendants' Reply, p. 9.

It is undisputed, as recounted above, that the Plaintiffs' property was returned to them, albeit years after it was seized. Accordingly, their argument that the *Ex Parte Young* doctrine saves their injunctive relief claim fails due to mootness. The Plaintiffs' claim looks back, rather than forward, which is contrary to the *Ex Parte Young* doctrine. The State Defendants explain it as follows:

> Here, the Plaintiffs property that was initially seized has been released. . . . Plaintiffs do not allege that the present parties are violating the order of dismissal [of the forfeiture action] or that there is presently any issue. Indeed, the issue ended in February 2019. Plaintiffs, simply, lack an active case or controversy with which to challenge Ind. Code § 34-24-2-1. And, importantly, Plaintiffs cannot meet the "capable-of-repetition" doctrine–the exception to mootness [that] levies "attacks on practices that no longer directly affect the attacking party, but are 'capable of repetition' while 'evading review.'" *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)[.] This doctrine "applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *Id*. Plaintiffs do not plead, nor can they, that Economan or his practice will again be in a situation where the State of Indiana

11

> brings criminal charges against him for his prescribing habits–never mind that Economan does not reside in Indiana any further and his practice closed. Not only do Plaintiffs lack an ongoing case or controversy to support their constitutional challenge, they are unable to show that it is capable of repetition.

Defendants' Memorandum, p. 14.

As a result of the foregoing, the Plaintiffs' claim for injunctive relief against the OAG (or Luttrull or the Grant County Prosecutor's Office) is barred by the Eleventh Amendment, does not fit within the narrow exception carved out by *Ex Parte Young*, and fails to survive the motion to dismiss.

**II. Claims against Luttrull and Krug.**

"[T]he Eleventh Amendment poses no barrier to plaintiff's § 1983, § 1985 and state law claims against [individual defendants] in their personal capacities." *Werthman v. Illinois Dep't of Mental Health & Developmental Disabilities*, 831 F.Supp. 625, 628 (N.D. Ill. 1993). That notwithstanding, Defendants Luttrull and Krug argue that they are entitled to absolute immunity and cannot be sued for the conduct alleged. As this Court has explained, the doctrine of prosecutorial immunity is broad and bars suits against prosecutors even when they act in bad faith, so long as their alleged conduct was within the scope of their prosecutorial duties:

> Absolute immunity is an affirmative defense. *Tully v. Barada*, 599 F.3d 591, 594 (7th Cir. 2010). An immunity defense typically depends on the facts of the case, and therefore dismissal is often inappropriate at the pleading stage. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). "Complaints need not anticipate or attempt to defuse potential defenses."[5] *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). However, as with other affirmative defenses, "[a]

---

[5] In this case, the Plaintiffs *did* anticipate that the Defendants would assert an absolute immunity defense, and addressed it head-on in their Complaint. *See* Complaint, p. 19 ("Plaintiffs further allege that because the conspiracy was set in motion occurred no later than July 16, 2015, and prior to probable cause being established, the Defendants are not protected by absolute immunity.").

> litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense[.]" *Id*. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).
>
> Actions taken by prosecutors in their role as advocates are absolutely immune from liability for damages under § 1983. *Rehberg v. Paulk*, 566 U.S. 356, 363 (2012). "[T]here is no bad-faith exception to absolute immunity when . . . the prosecutor acts as an advocate." *Jackson v. Bloomfield Police Dep't*, 764 F.App'x 557, . . . 559 (7th Cir. 2019). This immunity extends even to malicious prosecutions that are not supported by probable cause. *Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017).

*Knowles v. Hudson*, 2019 WL 4306364, at *3 (N.D. Ind. Sept. 11, 2019).

The Plaintiffs characterize the alleged conduct of Krug and Luttrull as taking place during the investigatory stage of the underlying criminal proceedings, rather than during the strictly prosecutorial stage. They do so because "absolute immunity does not shield prosecutors from liability for actions that are not 'intimately associated with the judicial phase of the criminal process,' nor does it apply when they are performing non-prosecutorial actions, such as administrative and investigatory activities." *Knowles v. Hudson*, 2019 WL 4306364, at *3 (quoting *Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017) (in turn quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "'Protection hinges not on the defendant's job title, but on the nature of the function he performed.'" *Id*. (quoting *Archer*, 870 F.3d at 612). "The distinction lies in the difference between an advocate's prosecutorial role in evaluating evidence and preparing for trial, and his detective's role in searching for evidence." *Id*. (citing *Fields v. Wharrie*, 672 F.3d 505, 511 (7th Cir. 2012)). A prosecutor "is entitled to absolute immunity for any claims related to: her role as an officer of the court; her evaluation of evidence; her interview of witnesses; her decision to initiate criminal proceedings; her preparation for trial; and her

13

presentation of evidence at trial." *Knowles*, 2019 WL 4306364, at * 3. However, prosecutorial immunity does not attach where there is "a reasonable inference to be drawn that [the prosecutor] also participated in investigative functions that were not intimately associated with the judicial phase of the criminal proceedings. For example, to the extent that Knowles' claims arise out of Hudson's search for clues and corroborating evidence that might give her probable cause to recommend that Knowles be arrested, she acted in an investigatory capacity and is not entitled to absolute immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993) ('A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.). Similarly, Knowles alleges that Hudson provided legal advice to investigators. . . . Any advice Hudson gave to investigators during the investigative phase of the criminal proceeding is not entitled to absolute immunity." *Id.*

In the present case, the Plaintiffs allege that Luttrull, acting in concert with other Defendants, fabricated evidence in order to obtain and execute a search warrant for Economan's residence and the business of EAFM. Complaint, pp. 6-7. The Plaintiffs allege that Luttrull conspired to present false evidence (including false affidavits) in order to obtain "an *ex parte* order for seizure [of Economan's assets] pursuant to Indiana Code 34-24-2-3[.]" *Id.*, p. 8. As to Krug, the Plaintiffs contend that she "sought an emergency suspension of Dr. Economan's medical license . . ." and that she elicited false testimony before the Medical Licensing Board for the purpose of "shutting EAFM down." *Id.*, p. 10. Importantly, the Plaintiffs assert that the alleged actions of Luttrull and Krug occurred more than a year before Economan was charged with any crimes, i.e., before probable cause was established in the underlying criminal proceeding. Plaintiffs' Response, p. 4 ("It is during [the] investigatory stage that Plaintiffs allege

14

that all named Defendants conspired to do just the wrongful acts described in the Complaint. . . . Specifically, Plaintiffs allege that Defendants conspired to manufacture and present false evidence for the purposes of establishing probable cause through a forfeiture action."). The Plaintiffs argue that these actions pierce the veil, as it were, on absolute immunity and render Luttrull and Krug amenable to suit. *Id*., generally. The Complaint alleges that the State Defendants' alleged misconduct took place at the investigatory stage of the underlying criminal proceedings, i.e., *before* Luttrull or Krug were acting in their capacities as advocates. The Plaintiffs state that "the Seventh Circuit has specifically held that 'a showing that a prosecutor investigated and fabricated evidence against a target would automatically defeat absolute prosecutorial immunity, even if that target was later . . . brought to trial.'" Plaintiffs' Memorandum in Opposition, p. 13 (quoting *Lewis v. Mills*, 677 F.3d 324, 330 (7th Cir. 2012)). The Plaintiffs claim that "Krug and Luttrull did more than just prosecute a case–they fabricated evidence, knowingly presented fabricated evidence, and conspired to do the same." *Id*. The Plaintiffs argue that "prosecutorial immunity does not apply to actions taken by prosecutor Defendants during the course of the investigation, for the creation of false evidence, for advice given to law enforcement during an investigation, or for the knowing creation and presentation of false and misleading evidence. Nor does absolute immunity protect the prosecutor who conspires to knowingly tender false and misleading evidence to a judicial body. As such, Defendants are not protected by absolute immunity." *Id*., p. 15.

In *Knowles*, the plaintiff "allege[d] that defendants wrongfully coerced incriminating statements, fabricated evidence in the form of false testimony, and knowingly detained and prosecuted him without probable cause." *Knowles*, 2019 WL 4306364, at * 1. This Court (Judge

15

Moody) concluded that "at this stage of the litigation, the court cannot determine that Hudson is entitled to absolute immunity on all of Knowles' claims. Based on the allegations in Knowles' amended complaint and his response brief, there is a reasonable inference to be drawn that Hudson also participated in investigative functions that were not intimately associated with the judicial phase of the criminal proceedings. For example, to the extent that Knowles' claims arise out of Hudson's search for clues and corroborating evidence that might give her probable cause to recommend that Knowles be arrested, she acted in an investigatory capacity and is not entitled to absolute immunity. . . . It is too early to determine that Hudson is entitled to absolute immunity with respect to all of the claims against her. Accordingly, Knowles may proceed with any claim that Hudson violated his constitutional rights while serving in an investigative capacity." *Knowles*, 2019 WL 4306364, at * 3.

The outcome is the same in this case. It is too early for the Court to determine that Luttrull or Krug are entitled to absolute immunity. The Plaintiffs have pleaded sufficient facts to support their allegations–sufficient, that is, to survive a motion to dismiss. The Plaintiffs have alleged that Luttrull's and Krug's actions were not intimately associated with the judicial phase of the criminal proceedings brought against them and so the doctrine of absolute immunity does not apply. Accordingly, the motion to dismiss the Plaintiffs' federal and state law claims against Luttrull and Krug on the basis of absolute prosecutorial immunity must be denied.[6]

---

[6] The State Defendants contend that the Plaintiffs, in their response brief, "attempt to recast the allegations in their Complaint. . . . Plaintiffs rehash their allegations in the broadest strokes possible to the extent they may as well be attempt[ing] to amend their complaint." Defendants' Reply, p. 2. The State Defendants insist that "the Court should be disinclined to accept Plaintiffs' re-telling of their complaint. Plaintiffs should have to stick with the Complaint as plead or file an amendment." *Id*., p. 4. However, as this Court pointed out in *Knowles*:

16

**CONCLUSION**

For the reasons discussed above, the motion to dismiss filed by the State Defendants, James Luttrull, Jessica Krug and the Office of the Indiana Attorney General (ECF No. 13) is GRANTED in part and DENIED in part. The motion is granted as to all claims asserted against the Office of the Indiana Attorney General and the office of the Grant County Prosecutor (to the extent that any claims are intended to be asserted against the latter, as discussed above). If the Plaintiffs believe they have cognizable claims against the OAG or the Grant County Prosecutor's Office, they may file a motion to amend their Complaint to properly plead such claims. The motion is denied as to the Plaintiffs' federal and state law claims against Luttrull and Krug. The Plaintiffs' claims against the federal Defendants, including Tonda Cockrell, Gary Whisenand and the United States, are not at issue at this juncture and remain pending.

---

> A plaintiff opposing a Rule 12(b)(6) motion to dismiss may "may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, n. 1 (7th Cir. 2012). A "'plaintiff need not put all of the essential facts in the complaint' but instead 'may add them by affidavit or brief–even a brief on appeal." *United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016) (quoting *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992)). Here, Knowles' elaboration in his response brief regarding Hudson's involvement is consistent with the rest of his pleadings, and therefore may be properly considered in ruling on Hudson's motion to dismiss.

*Knowles*, 2019 WL 4306364, at *3, n. 2. In this case, the Plaintiffs' elaborations in their response are consistent with the allegations in their Complaint, even though they fail to carry the day. Additionally, the State Defendants' reading of the admittedly convoluted assertions in the Complaint is restrictive and literal. At this juncture, however, the Court is charged with the duty to draw all reasonable inferences in favor of the Plaintiffs. In doing so, the Court concludes that the Plaintiffs have stated a cognizable claim. "[T]he Seventh Circuit has succinctly described the pleading requirements of a conspiracy as demanding that the Plaintiff identify 'the who, what, when, why, and how.'" *Rangel v. Reynolds*, 607 F.Supp.2d 911, 924 (N.D. Ind. 2009) (quoting *Brokaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000) (noting that "No more is required" to survive a Motion to Dismiss)).

Date: June 16, 2020.

     /s/   William C. Lee  
William C. Lee, Judge  
U.S. District Court  
Northern District of Indiana

.