**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| DALE W. ECONOMAN and | ) | |
| ECONOMAN AND ASSOCIATES | ) | |
| FAMILY MEDICINE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-CV-32 |
| | ) | |
| TONDA COCKRELL, | ) | |
| GARY L. WHISENAND, | ) | |
| THE GARRISON LAW FIRM L.L.C., | ) | |
| JAMES LUTTRULL, JESSICA KRUG, and | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the motions to dismiss filed by Defendants Tonda Cockrell, Gary Whisenand, and the United States ("the government" or "the United States"). The government filed its motion to dismiss and memorandum in support on July 10, 2020 (ECF Nos. 41 and 42). The Plaintiffs filed their response in opposition on July 31, 2020 (ECF No. 56) and the government filed its reply brief on August 13, 2020 (ECF No. 58). Cockrell filed her motion to dismiss and memorandum in support on July 17, 2020 (ECF Nos. 44 and 45), as did Whisenand (ECF Nos. 46 and 47). Both Cockrell and Whisenand moved to refile their memorandums due to technical errors (their original submissions having been filed with an improper typeface and font size). Their corrected versions appear at ECF No. 54 (Cockrell Memorandum) and ECF No. 55 (Whisenand Memorandum). The Plaintiffs filed responses in opposition to these motions on August 14, 2020 (ECF No. 59, Plaintiffs' Response to Whisenand motion to dismiss); (ECF No. 60, Plaintiffs' Response to Cockrell motion to dismiss). Cockrell

and Whisenand filed their reply briefs on August 28, 2020 (ECF No. 67, Cockrell Reply Brief); (ECF No. 69, Whisenand Reply Brief).

Lastly, on September 11, 2020, Plaintiffs' counsel submitted a declaration in which he asks the Court to stay ruling on the motions to dismiss and requesting additional discovery. Application and Declaration of Eric D. Schmadeke (ECF No. 70). On September 25, 2020, the government, Cockrell and Whisenand filed a joint memorandum in opposition to Plaintiffs' request to stay. Defendants' Joint Memorandum (ECF No. 71). The Plaintiffs did not file a reply brief and the time for doing so has passed. Accordingly, the motions are ripe for ruling.

**For the reasons explained below, the Motions to Dismiss are GRANTED in part and DENIED in part as follows:**

1) The United States' motion to dismiss (ECF No. 41) is GRANTED as to the Plaintiffs' claims against the United States brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985; GRANTED in part and DENIED in part as to the Plaintiffs' claims against the United States pursuant to the Federal Tort Claims Act (the motion is granted as to the Plaintiffs' claims for malicious prosecution arising out of the underlying criminal and medical licensing board proceedings, denied as to the Plaintiffs' claims for malicious prosecution arising out of the underlying forfeiture proceeding, and denied as to the Plaintiffs' claims for abuse of process);

2) Cockrell's motion to dismiss (ECF No. 44) is GRANTED as to the Plaintiffs' claims under § 1985; DENIED as to the Plaintiffs' claims under § 1983; GRANTED in part and DENIED in part as to the Plaintiffs' claims for malicious prosecution (as stated in ¶ 1) above); DENIED as to the Plaintiffs' claims for abuse of process; and GRANTED as to the Plaintiffs' claims brought pursuant to *Bivens v. Six Unknown Named Agents*; and

2

3) Whisenand's motion to dismiss (ECF No. 46) is GRANTED as to the Plaintiffs' claims under § 1985; DENIED as to the Plaintiffs' claims under § 1983; GRANTED in part and DENIED in part as to the Plaintiffs' claims for malicious prosecution (as stated in ¶ 1) above); DENIED as to the Plaintiffs' claims for abuse of process; and GRANTED as to the Plaintiffs' claims brought pursuant to *Bivens v. Six Unknown Named Agents*.

The Plaintiffs' Application to Stay (ECF No. 70) is DENIED.

## BACKGROUND

Dale Economan worked as a physician in Marion, Indiana, and was the owner of Economan and Associates Family Medicine. EAFM was "a general family medical practice . . . created in August 2012 by Dr. Economan, and began officially seeing patients in December of 2012." Complaint, p. 5. Dr. Economan and EAFM brought this lawsuit alleging that state and federal authorities conspired to seize their assets and suspend Dr. Economan's medical license based on false allegations that he was illegally dispensing narcotics to some of his patients. The Plaintiffs alleged in their Complaint as follows:

> In July 2015, local law enforcement, the Medicaid Fraud and Control Unit of the Indiana Office of the Attorney General, DEA agents, Grant County Prosecutors, and Joint Task Force officers met to discuss and conspire, upon information and belief, a multi-pronged attack to take down Dr. Economan and EAFM. Upon information and belief, this meeting occurred on July 16, 2015, and was tape recorded. . . . Upon information and belief, the Plaintiffs were targeted, in large part, because the Defendants were aware of their financial assets and the potential to seize those assets through forfeiture proceedings. . . . The first prong of the attack would be to seize the financial assets and accounts of Economan and EAFM through the forfeiture process. . . . The second prong of the attack would be to seek summary suspension of Dr. Economan's medical license. On July 29, 2015, local law enforcement, the Medicaid Fraud and Control Unit of the Indiana Office of the Attorney General, DEA agents, Grant County Prosecutors, and Joint Task Force officers executed a search warrant on the residence of Dr. Economan and EAFM. . . . The criminal allegations contained within the affidavit used to

3

secure the search warrant accused Dr. Economan of illegally prescribing opioids, or prescribing opioids without a legitimate medical purpose, to approximately fifty (50) of his 2,500 distinct patients. . . . However, the search warrant affidavit was devoid of any real probable cause, in that it lacked any medical opinions, or sworn statements from any medically trained individual, attesting to the medical illegitimacy of Dr. Economan's prescriptions or practices.

*Id.*, pp. 6-7, ¶¶ 32-38. The Plaintiffs allege that their assets were illegally seized as a result of the Defendants' conspiratorial actions. The contend that on "July 29, 2015, a forfeiture action was filed against Dr. Economan and EAFM in Grant County, Indiana[,] under Cause Number 27D01-1507-MI-000102 again alleging that Dr. Economan was operating a "pill mill." *Id.*, p. 7, ¶ 39. The Plaintiffs state that the state court, "based on the affidavits of Whisenand and Cockrell, . . . issued an Order ('Seizure Order') on July 29, 2015[,] which effectively served to seize Dr. Economan's entire lifesavings [sic], and all accounts belonging to EAFM." *Id.*, p. 9, ¶ 49. The Plaintiffs assert that "the Seizure Order restricted over one million ($1,000,000.00) dollars of property belonging to the Plaintiffs. . . . For over the next three (3) years, the majority of the Plaintiffs' financial assets would remain seized, before being ultimately returned after all of the criminal allegations forming the basis for the forfeiture actions were dismissed with prejudice." *Id.*, p. 10. Finally, the Plaintiffs contend that Dr. Economan's medical license was illegally suspended. The Plaintiffs state that "[t]he [Indiana Medical Licensing] Board ultimately stripped Dr. Economan of his ability to practice medicine on the sole basis of" false testimony submitted by the Defendants. *Id.*, p. 11. The Plaintiffs claim that as a result of this conspiracy, Dr. Economan "never again practiced medicine[]" and that "[w]ithout Dr. Economan's medical license and after having had its financial accounts seized and frozen, EAFM was forced to close the practice." *Id*.

4

Based on the foregoing facts, the Plaintiffs bring several claims against the Defendants, including: (1) federal civil rights claims against all Defendants for violation of his Fourth, Fifth and Fourteenth Amendment rights, brought under 42 U.S.C. § 1983 (*id*., pp. 19-20)[1]*id*., pp. 20-22); (3) a state law claim for abuse of process against all Defendants (*id*., pp. 23-24); (4) a claim simply titled "conspiracy,"[2] (*id*., pp. 24-25); and (5) a claim for "injunctive and declaratory relief" (*id*., pp. 25-28).

The Plaintiffs named as Defendants the following entities and individuals:

1) Tonda Cockrell, "a sworn law enforcement officer employed by the United States Drug Enforcement Administration ("DEA") and the Kokomo Police Department."

2) Gary Whisenand, "a civilian investigator employed by the United States Drug Enforcement

---

[1] Throughout their Complaint, the Plaintiffs state that they are seeking redress for "violations of their Fourth, Fifth and Fourteenth Amendment rights." Complaint, p. 3, ¶ 8; p. 16, ¶¶ 90, 91. In one paragraph of the Complaint (out of a total of 146), the Plaintiffs state that the Defendants "deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, *Eighth*, and Fourteenth Amendments[.]" *Id*., p. 20, ¶ 106 (italics added). This is the only time the Complaint mentions the Eighth Amendment and it includes no allegations whatsoever regarding any Eighth Amendment claim. And as the Defendants point out, the Plaintiffs' response briefs likewise do not make any reference to such a claim. The Defendants state that "Plaintiffs seemingly abandoned any Eighth Amendment" claim. The Court believes it is more likely that the inclusion of the word "Eighth" in paragraph 106 was merely a scrivener's error, and that the Plaintiffs never intended to state a claim under the Eighth Amendment. Either way, they don't.

[2] Relevant to their civil conspiracy claim, the Plaintiffs allege that "Defendants conspired and acted in concert to do whatever was necessary, lawful or not, to i) cause the arrest, prosecution, pretrial detention, conviction and imprisonment of Plaintiff Dr. Economan; ii) shut down EAFM; iii) strip Dr. Economan of his ability to practice medicine; and iv) seize Dr. Economan's and EAFM assets. . . . Throughout the period of the conspiracy, Defendants pursued their objectives with actual malice toward Plaintiffs, with utter and deliberate indifference to and disregard for the Plaintiffs' rights under the Constitution and laws of the United States, without probable or reasonable cause to believe Plaintiff guilty of the crimes and misconduct for which he was accused." Complaint, p. 24. These allegations of a conspiracy are the backbone of all of the Plaintiffs' claims.

Administration."

3) The Garrison Law Firm, LLC, "a law firm located in Indianapolis, Indiana and hired by the Grant County Prosecutor's Office to handle all forfeiture cases filed in Grant County, Indiana."

4) James Luttrull, who "served as the Grant County Prosecutor during all relevant times, representing the 48th Judicial Circuit in Indiana."

5) Jessica Krug, who "served as an employee of The Medicaid Fraud and Control Unit of the Indiana Office of the Attorney General."

6) "The Office of the Indiana Attorney General."

Complaint, pp. 3-4. The Plaintiffs also named the United States as a Defendant, alleging as follows:

> The United States is a party to this action, in part, pursuant to 28 U.S.C. § 1346(b) [the Federal Tort Claims Act], which makes it liable for the injuries to Dr. Economan and EAFM that were caused by the negligent or wrongful acts of its employees and jointly and severally for those caused by their co-conspirators.

*Id*., p. 5.

On June 16, 2020, this Court issued an Opinion and Order granting in part and denying in part motions to dismiss filed by the "State Defendants," that is, the Office of the Indiana Attorney General, the Office of the Grant County Prosecutor, Jessica Krug, and James Luttrull. The Court granted the motions as to the Indiana Attorney General and the Grant County Prosecutor's office[3], and denied the motions as to Krug and Luttrull. Opinion and Order (ECF No. 35). The

---

[3] As the Court pointed out in its previous order, the Plaintiffs did not actually name the Grant County Prosecutor's office as a defendant, nor was the office served with summons. Nevertheless, because the Plaintiffs' Complaint appeared to state claims against the Grant County Prosecutor's office, the Court addressed any such possible claims and dismissed them because "'[a]ny claims against the Office of the Indiana Attorney General and to the extent any claims can be read as to apply to the Grant County Prosecutor's Office must be dismissed as

"Federal Defendants," that is, the United States, Tonda Cockrell and Gary Whisenand, have now filed their own motions to dismiss.

## STANDARD OF REVIEW

The movants bring their motions pursuant to Federal Rule 12(b)(6). "A judge reviewing a complaint pursuant to Rule 12(b)(6) must construe the allegations in the complaint in the light most favorable to the non-moving party, accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the non-movant." *Knowles v. Hudson*, 2019 WL 4306364, at *2 (N.D. Ind. Sept. 11, 2019) (citing *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018)). Under the liberal notice-pleading requirements of the Federal Rules of Civil Procedure, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "While the federal pleading standard is quite forgiving, . . . the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (quoting *Ray v. City of Chicago*, 629 F.3d 660, 662-63 (7th Cir. 2011); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To meet this standard, a complaint does not need detailed factual allegations, but it must go beyond providing "labels and conclusions" and "be enough to raise a right to relief

---

those claims are barred either by Eleventh Amendment immunity or § 1983 is inapplicable as these agencies are not 'persons' for purposes of 42 U.S.C. § 1983.'" Opinion and Order (ECF No. 35), p. 8 (quoting State Defendants' Memorandum (ECF No. 14), p. 7). The Court stated in that order that "[i]f the Plaintiffs believe they have cognizable claims against the OAG or the Grant County Prosecutor's Office, they may file a motion to amend their Complaint to properly plead such claims." *Id*., p. 17. The Plaintiffs have not moved to amend their Complaint.

above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must give "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "Even if the truth of the facts alleged appears doubtful, and recovery remote or unlikely, the court cannot dismiss a complaint for failure to state a claim if, when the facts pleaded are taken as true, a plaintiff has 'nudged their claims across the line from conceivable to plausible.'" *Knowles*, 2019 WL 4306364, at *2 (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

### I. Plaintiffs' Application for Stay of Ruling Pending Discovery.

The Court begins by addressing the declaration submitted by Plaintiffs' counsel. In that affidavit counsel states as follows:

> I respectfully submit this declaration in support of Plaintiffs' application for a stay of its opposition to Defendants Tonda Cockrell, Gary L. Whisenand, and The United States' Motions to Dismiss (the "Motions") to the extent that the Court accepts the additional evidence outside the pleadings submitted in support of the Motions which may convert the Motions into Summary Judgment. . . . Plaintiffs make this application without waiving the right to oppose Defendants' Motions on any grounds pending the completion of additional discovery in this action pursuant to Federal Rule of Civil Procedure 56(d). . . . Plaintiffs request additional discovery pursuant to Rule 56(d) about the arguments, and the allegations of fact upon which such arguments the Defendants' Motions are premised.

Schmadeke Aff. (ECF No. 70), ¶¶ 3-5. Counsel further states:

> Although neither party in this case argues that the Court should treat the Motions as Motions for Summary Judgment . . . , the fact remains that Defendants have attached evidence in support of their Motions that fall outside the pleadings, such as affidavits, employment records, and deputization paperwork. These are not public records or documents that a trial court would ordinarily take judicial notice of or incorporate under the reference doctrine. . . . If the material is not excluded by this Court, then Rule 12(d) would oblige the Court to treat the matter as one for summary judgment. If that is indeed the case, then "all parties must be given a

8

reasonable opportunity to present all the material that is pertinent to the motion."
Fed.R.Civ.P. 12(b).

*Id*., ¶¶ 9-10. So, pursuant to Rule 56(d), Plaintiffs move the Court to stay any ruling on the

pending motions so further discovery can be conducted into the evidence submitted by the

Defendants in support of those motions–evidence that the Plaintiffs claim is "outside the

pleadings."

The documents attached to the Defendants' motions that the Plaintiffs claim are outside

the pleadings include the following:

1) Whisenand's Affidavit of Probable Cause, Sept. 13, 2016, filed in the Grant County Superior

Court in case number 27D02-1609-F5-112 (attached as exhibit to United States' Memorandum

in Support at ECF No. 42-1; Cockrell's Memorandum in Support at ECF No. 45-1; Whisenand's

Memorandum in Support at ECF No. 47-1);

2) Dr. Economan's Plea Agreement in Grant County Superior Court (attached as exhibit to

United States' Memorandum at ECF No. 42-2; Cockrell's Memorandum at ECF No. 45-2;

Whisenand Memorandum at ECF No. 47-2);

3) Medical Licensing Board of Indiana Order Accepting Retirement of Medical License and

Vacating Summary Suspension dated January 29, 2019 (attached as exhibit to United States'

Memorandum at ECF 42-3; Cockrell's Memorandum at ECF No. 45-3; Whisenand's

Memorandum at ECF No. 47-3);

4) Declaration of Marsha N. Tiersky, Associate Chief Counsel in the Office of Chief Counsel of

the U.S. Department of Justice, Drug Enforcement Division (pertaining to tort claim notice to

DEA, attached to United States' Memorandum at ECF No. 42-4); and

5) Tonda Cockrell DEA Deputization documents (attached to Cockrell's Memorandum in

Support at ECF No. 45-4).

      In their response in opposition to Plaintiffs' motion to stay, the Defendants argue that the

request is completely unfounded. The Defendants argue that the request "should be denied

because (1) Fed. R. Civ. P. 56(d), which applies to motions for summary judgment, is

inapplicable to the pending motions to dismiss, (2) there is no basis to convert the federal

defendants' motions to dismiss to motions for summary judgment, and (3) further discovery

would not cure Plaintiffs' failure to adequately plead their claims against the federal defendants."

Defendants' Memorandum in Opposition to Plaintiffs' Application for Stay (ECF No. 71), p. 1.

The Defendants further argue that:

> As the federal defendants explained in their motions to dismiss, their inclusion of
> exhibits does not necessitate converting the motions to dismiss to motions for
> summary judgment because each exhibit referenced is properly considered under
> the incorporation-by-reference doctrine or is admissible as a public record.
> Notably, Plaintiffs provide no explanation as to why the exhibits cannot be
> considered in conjunction with the pending motions to dismiss under the
> respective doctrines. Furthermore, the additional discovery sought by Plaintiffs is
> either readily available or entirely irrelevant, and provides no basis to stay ruling
> on the federal defendants' motions to dismiss.

*Id.*, pp. 1-2.

      Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for

specified reasons, it cannot present facts essential to justify its opposition, the court may: (1)

defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to

take discovery; or (3) issue any other appropriate order." Fed.R.Civ.P. 56(d). The Defendants are

correct, however, that the Rule does not apply to motions under Rule 12(b)(6). "Rule 56(d), upon

which plaintiff relies, does not apply to a motion to dismiss under Rule 12(b)(6)." *Ambeau v.*

*Jefferson Comprehensive Health Ctr. Inc*., 2013 WL 4519703, at *1 (S.D. Miss. Aug. 26, 2013);

*Humphrey v. Friar*, 2018 WL 8807154, at *5 (W.D. Tenn. Sept. 28, 2018) ("Rule 56 does not

apply to motions to dismiss"), reversed in part in other grounds, 792 F.App'x 395 (6th Cir.

2020);  *Holland v. City of Jackson, Miss*., 2013 WL 4039389, at *2 (S.D. Miss. Aug. 7, 2013)

("[A]pplying Rule 12(b)(6) moots [Plaintiff's] request for additional discovery under Rule

56(d)."); *Crumpley v. Associated Wholesale Grocers, Inc*., 2017 WL 1364839, at *1 (D. Kan.

Apr. 13, 2017) (granting plaintiff's Rule 56(d) motion only after denying defendant's motion to

dismiss and considering it as a motion for summary judgment).

The Defendants' arguments that the Court can and should consider the evidence at issue

are also well taken because the challenged documents are either referenced in the Complaint,

incorporated therein by reference, or a matter of public record. "[W]hen a document is referenced

in the complaint and central to plaintiff's claims, the Court may consider it in ruling on a motion

to dismiss." *Fryman v. Atlas Fin. Holdings, Inc*., 462 F.Supp.3d 888, 894 (N.D. Ill. 2020) (citing

*Mueller v. Apple Leisure Corp*., 880 F.3d 890, 895 (7th Cir. 2018) ("This rule is a liberal

one–especially where . . . the plaintiff does not contest the validity or authenticity of the

extraneous materials.")). "In addition, the Court may 'take judicial notice of court filings and

other matters of public record when the accuracy of those documents reasonably cannot be

questioned.'" *Id*. (quoting *Parungao v. Cmty. Health Sys*., 858 F.3d 452, 457 (7th Cir. 2017)). As

the Seventh Circuit has explained:

> This court has been relatively liberal in its approach to the rule articulated in
> *Tierney* [*v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)] and other cases. *See, e.g.,*
> *Wright v. Associated Ins. Cos*., 29 F.3d 1244, 1248 (7th Cir.1994) (upholding
> consideration of an agreement quoted in the complaint and central to the question
> whether a property interest existed for purposes of 42 U.S.C. § 1983); *Venture*

11

> *Associates v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir.1992) (admitting
> letters, to which the complaint referred, that established the parties' contractual
> relationship); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc*., 805 F.2d 732, 739
> (7th Cir.1986) (permitting reference to a welfare plan referred to in the complaint
> in order to decide whether the plan qualifies under ERISA).

*Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).

The majority of the exhibits filed by the Defendants in the present case are public records from the underlying criminal, medical licensing board or forfeiture proceedings. They are also central to the claims presented in the Complaint and at least in some instances are directly referenced therein. The only obvious exception is Ms. Tiersky's declaration in which she states that the DEA did not receive a tort claim notice from the Plaintiffs, which supports one of the United States' arguments in support of dismissal. The Plaintiffs argue that they should have an opportunity to depose Ms. Tiersky. The Defendants argue that Tiersky's declaration is not outside of the pleadings because "Plaintiffs do not dispute that they alleged in their Complaint that they submitted an administrative tort claim notice[]" and because the Plaintiffs themselves, in their response brief, "submitted additional exhibits related to their purported administrative tort claim in their response . . . includ[ing] the affidavit of Plaintiffs' attorney that the notice was mailed[.]" Defendants' Memorandum in Opposition to Application to Stay Ruling, p. 4.

The Court agrees with the Defendants that the challenged documents can be considered without converting the motions to dismiss into motions for summary judgment, and so denies the Plaintiffs' Application for Stay. At the end of the day, though, this is largely academic, since the Court's rulings on the issues now before it would be the same if the documents were not considered. That is, while the Court considered the documents to the degree they were relevant, none of the evidence was integral to the Court's analysis or conclusions.

**II. Motion to dismiss by United States.**

The government "moves to dismiss Plaintiffs' complaint against the United States of America and dismiss the United States of America as a party for failure to state a claim on which relief can be granted based on the grounds that Plaintiffs failed to exhaust their administrative remedies and did not state a claim for which the United States has waived its sovereign immunity." Government's Motion to Dismiss (ECF No. 41), p. 1. The government also argues that "Plaintiffs have failed to state a claim for malicious prosecution arising from the state criminal and medical licensing board proceedings because these proceedings were not terminated in Plaintiffs' favor, but pursuant to a plea agreement." Government's Memorandum in Support, p. 2.

### A. Claims under 42 U.S.C. § 1985.

The United States argues for dismissal of the Plaintiffs' claims brought under § 1985. *Id.*, pp. 20-24. In their response, the Plaintiffs "concede that the United States, based on the facts now known today, may not be a proper Defendant under § 1985." Plaintiffs' Response in Opposition (ECF No. 56), pp. 4 and 23. Accordingly, the government's motion to dismiss is GRANTED as to the Plaintiffs' claims under this statute.[4]

### B. Tort claim notice under FTCA.

---

[4] The Plaintiffs conceded their § 1985 claims against Cockrell and Whisenand also. *See* Plaintiffs' Response in Opposition to Cockrell Motion to Dismiss (ECF No. 60), pp. 4 and 23 ("Plaintiffs concede that Defendant Cockrell, based on the facts now known today, may not be a proper party Defendant under § 1985."); Plaintiffs' Response in Opposition to Whisenand Motion to Dismiss (ECF No. 55), pp. 4 and 23 ("Plaintiffs concede that Defendant Whisenand, based on the facts now known today, may not be a proper party Defendant under § 1985."). Accordingly, all three of the federal Defendants' motions to dismiss are GRANTED as to the Plaintiffs' claims asserted under § 1985.

13

The United States argues for dismissal of the Plaintiffs' "claims of malicious prosecution and abuse of process brought pursuant to the FTCA against the United States because Plaintiffs did not exhaust their administrative remedies as required to pursue a claim under the FTCA." Government's Memorandum in Support, p. 8. The government correctly states the law in this regard, noting that "the procedural rules of the FTCA require that there be administrative exhaustion of the claim[s] before a claimant can bring an action in court." *Id*., p. 9 (citations omitted). The Defendants are also correct that a federal tort claim "must be specific and in detail in order to allow the federal agency, a 'legally sophisticated reader,' sufficient notice for the agency to investigate the claim before litigation." *Id*. (quoting *Charlton v. United States*, 743 F.2d 557, 559-60 (7th Cir. 1984)). Finally, the government notes that "[t]he purpose of the exhaustion requirement is to allow an agency whose alleged activity gave rise to the claim the opportunity to settle [a] meritorious claim more quickly without litigation." *Id*., pp. 9-10 (citations omitted).

The United States contends that in this case the "Plaintiffs failed to file an administrative tort claim notice with the appropriate federal agency, the DEA. . . . The DEA never received a Standard Form 95 . . . claim for damage, injury or death, or other written claim from Plaintiffs directed to the DEA setting forth sufficient facts and seeking a sum certain for the alleged damage to Plaintiffs." *Id*., p. 10. The United States insists that "Plaintiffs' failure to raise their claim with the DEA . . . prior to initiating the present lawsuit is fatal to their claim." *Id*. (citations omitted). It is to this issue that the government submitted the affidavit of Ms. Tiersky, in which she states as follows:

1. I am the Associate Chief Counsel, Civil Litigation Section, in the Office of

14

Chief Counsel of the United States Department of Justice, Drug Enforcement Administration (DEA).

2. As such, I am the custodian of agency records relating to the filing, evaluation, and disposition of administrative claims presented to DEA under the Federal Tort Claims Act (FTCA). Agency procedures require that all FTCA claims over $500.00 be submitted to this office for review.

3. As a routine business practice, this office maintains an electronic record of each such claim. FTCA claims are indexed by claimant. This system has been in effect for over ten years.

4. On or about July 8, 2020, I caused a thorough search to be made of the FTCA claim records of this office to determine whether a claim was presented to DEA by Dale W. Economan or Economan and Associates Family Medicine regarding the issues raised in the instant case.

5. My office has no record that any FTCA claim was presented to DEA by Dale W. Economan, or Economan and Associates Family Medicine, or anyone acting on their behalf.

Declaration of Marcia N. Tiersky (ECF No. 42-4).

At first blush, this would appear to be the end of the issue. If the Plaintiffs failed to provide the DEA with a tort claim notice as mandated by the FTCA, they cannot pursue their claims of abuse of process or malicious prosecution. But the Plaintiffs' response brief, and the affidavit of their counsel filed with it, show that the matter is not as cut and dried and the government represents. In that declaration, attorney Gillian DePrez Keiffner states as follows:

1. I am counsel of record for Plaintiffs[.]

. . .

3. On May 15, 2019, I personally mailed a twenty-two (22) page claim notice to all current defendants by way of certified mail-return receipt and signature required.

4. Prior to mailing the notices, I personally contacted the Indianapolis Division of the Drug Enforcement Administration ("DEA") by telephone to confirm the

correct mailing address for claim notices.

5. I was informed by a representative of the DEA's Indianapolis Division to mail the nticoe to: 575 N. Pennsylvania Street, #408, Indianapolis, Indiana 46204 and to include "c/o Shirley Ball."

6. Two identical notices were mailed separately–via certified mail–to the address provided by the DEA's Indianapolis Division on May 15, 2019 and per the given instructions.

7. Specifically, on notice was addressed on the outside envelope to "Gary Whisenand/DEA" and the other notice was addressed on the outside of the envelope to "Tonda Cockrell/DEA."

8. Both mailings were received, signed for, and accepted by the DEA Indianapolis Division on May 20, 2019.

. . .

11. Consistent with all other now named defendants, no response or communication of any kind was received from the DEA prior to the filing of the above-entitled cause of action on January 21, 2020.

Declaration of Gillian DePrez Keiffner (ECF No. 56-1), p. 3-4.

    The government insists that the Plaintiffs failed to file a proper tort claim notice with the

DEA and therefore are barred from bringing their claims for abuse of process or malicious

prosecution. The Plaintiffs retort by showing that they sent two separate copies of their very

detailed, 22-page tort claim notice to the address provided by the DEA's Indianapolis

Division–one addressed to "Gary Whisenand/DEA" and the second addressed to "Tonda

Cockrell/DEA," and that both were received by the agency.[5] As to Ms. Tiersky's declaration

stating that the DEA never received a tort claim notice from the Plaintiffs, the Plaintiffs maintain

that in light of their evidence that they *did* submit such notices, the United States cannot assert

_____

[5] A copy of the tort claim notice was attached to the government's Reply Brief at ECF No. 58-1).

16

this defense. The Plaintiffs insist that "[i]n this case, the correct agency–namely the DEA–was notified of and accepted service of Plaintiffs' claims *twice*. Plaintiffs can only surmise that internal procedures of the DEA failed in indexing the claims, as no other explanation holds given the sworn declaration [of Ms. Tiersky]. . . . Nevertheless, Plaintiffs have unequivocally satisfied their duty under the FTCA, and any internal failure on the part of the DEA cannot–and should not–serve as a defense to liability." Plaintiffs' Response, p. 10 (italics in original).

In its reply brief, the government does not give up this bone entirely, but loosens its bite on it by conceding that the tort claim notices the Plaintiffs sent were indeed received *at* the DEA, but argues that they still don't qualify as valid notices to the agency *itself* since they were addressed and directed to individuals–i.e., Whisenand and Cockrell–rather than the agency itself. The United States argues that the "Plaintiffs attempt to bypass the FTCA notice requirements by arguing that they served notice to the DEA when they served Whisenand and Cockrell individually. . . . This falls woefully short of satisfying the notice requirements, and does not serve the intended purpose of putting the [DEA] on notice." Government's Reply, pp. 5-6. The government contends that the FTCA "regulations clearly distinguish between the Federal agency and its employees, and nowhere does it state that the FTCA requirements are fulfilled when an employee is individually provided notice." *Id*., p. 6. In short, according to the government, the Plaintiffs' tort claim notices addressed to "Gary Whisenand/DEA" and "Tonda Cockrell/DEA," sent to and received by the DEA's Indianapolis Division, are insufficient to provide notice of the Plaintiffs' claims to the DEA itself. The Court rejects the government's argument and its entreaty to dismiss the Plaintiffs' tort claims on the basis that the Plaintiffs failed to comply with the FTCA notice provisions because of the way they addressed their certified mail receipts. The

evidence submitted on this issue by both sides shows that the Plaintiffs sent detailed tort claim notices to all defendants more than six months prior to filing this suit. The Plaintiffs expressly alleged in their Complaint, as the government noted, that they "timely filed tort claim notices, no later than May 22, 2019, to each of the named Defendants prior to the filing of this Complaint" (Complaint, p. 3, ¶ 10) and Plaintiffs' counsel submitted a declaration (and evidence) to support that allegation.

For the reasons discussed above, the government's motion to dismiss the Plaintiffs' state tort claims on grounds of failure to exhaust administrative remedies is denied.

### C. Sovereign immunity.

The United States also argues that "Plaintiffs have further failed to state a claim against the United States under the FTCA arising from the alleged actions of Diversion Investigator Whisenand because the FTCA does not waive sovereign immunity for claims of malicious prosecution or abuse of process for persons other than 'investigative or law enforcement officers of the United States government,' which he was not." Government's Memorandum, p. 11. The government acknowledges that pursuant to 28 U.S.C. § 2680(h), "if a United States employee who is not an 'investigative or law enforcement officer commits one of the intentional torts named in § 2680(h), his conduct is typically excepted from the waiver of immunity and thus the United States cannot be sued. However, if he is an 'investigative or law enforcement officer' he is excepted from the exception and sovereign immunity is waived." *Id*.[6] The United States insists

---

[6] 28 U.S.C. § 2680(h) provides as follows:

The provisions of this chapter and section 1346(b) of this title shall not apply to–

(h) Any claim arising out of assault, battery, false imprisonment, false

18

that Whisenand "is not a sworn police officer and did not have arrest powers." *Id*. The United

States argues that "Whisenand set forth his duties in his probable cause affidavit. . . . He

described his duties and responsibilities to include conducting investigations of the actual and

potential diversion of legally manufactured controlled substances into other than legitimate

medical, scientific, and industrial channels. . . . None of his duties and responsibilities included

the traditional law enforcement activities of executing searches, seizing evidence, or making

arrests for violations of Federal law set forth in § 2680(h). Thus, Plaintiffs have failed to plead

facts to support that the exception to sovereign immunity arising from the actions of investigative

or law enforcement officers applies to Whisenand." *Id*., p. 12. The government cites several cases

from other jurisdictions that it claims supports its argument. *Id*., pp. 13-16 (citing *Metz v. United*

*States*, 788 F.2d 1528 (11th Cir. 1986) (holding that marine personnel who allegedly falsely

arrested plaintiff were not law enforcement personnel within the meaning of § 2680(h)); *Wilson*

*v. United States*, 959 F.2d 12 (2nd Cir. 1992) (parole officers are not investigative or law

enforcement personnel); *Equal Employment Opportunity Comm'n v. First Nat. Bank of Jackson*

(EEOC personnel are not investigative or law enforcement personnel); *In Employers Ins. of*

---

arrest, *malicious prosecution*, *abuse of process*, libel, slander,
misrepresentation, deceit, or interference with contract rights: Provided,
That, with regard to acts or omissions of investigative or law enforcement
officers of the United States Government, the provisions of this chapter and
section 1346(b) of this title shall apply to any claim arising, on or after the
date of the enactment of this proviso, out of assault, battery, false
imprisonment, false arrest, *abuse of process*, or *malicious prosecution*. For
the purpose of this subsection, "investigative or law enforcement officer"
means any officer of the United States who is empowered by law to execute
searches, seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h) (italics added).

*Wausau v. United States*, 815 F.Supp. 255 (N.D. Ill. 1993) (EPA agents not law enforcement

personnel for purposes of § 2680(h)); *Hernandez v. United States*, 34 F.Supp.3d 1168 (D. Colo.

2014) (TSA screeners not investigative or law enforcement personnel under § 2680(h))).

Extrapolating from these holdings, the government argues that "Whisenand lacked the traditional

investigative or law enforcement authority[]" and so the United States cannot be sued in tort for

Whisenand's alleged conduct. *Id.*, p. 16.

The Plaintiffs respond by arguing that Whisenand *was* functioning in an investigative or

law enforcement capacity for the United States and that one district court, addressing "[t]his

exact issue," held that "'even a [DEA] Diversion investigator is an 'investigative or law

enforcement officer' under the FTCA.'" Plaintiffs' Response, pp. 12-14 (quoting and discussing

*Andrew Nguyen, M.D. PA v. Estate of Carlisle*, 2006 WL 1653371 (N.D. Fla. June 9, 2006)[7]).

The underlying facts in *Nguyen* are very similar to those in this case. The plaintiff, a doctor, was

investigated by the DEA and a county sheriff's department and, following a months long

investigation, was charged with six felonies for allegedly illegally dispensing a controlled

substance. The charges were ultimately found to be baseless and were dismissed. In the

meantime, Dr. Nguyen was forced to close his medical practice. He brought suit in federal court

against two county law enforcement officers and the United States, contending that the latter

could be sued in tort because the underlying investigation was headed by a DEA agent. The

United States argued in that case, as it does here, that since the DEA agent in question was a

"Diversion investigator," he was not an "investigative or law enforcement officer" for purposes

---

[7] *Rev'd sub nom. Nguyen v. United States*, 545 F.3d 1282 (11th Cir. 2008), *opinion superseded on reconsideration*, 556 F.3d 1244 (11th Cir. 2009), and *rev'd sub nom. Nguyen v. United States*, 556 F.3d 1244 (11th Cir. 2009).

of the FTCA and the United States therefore could not be sued. The district judge, after a lengthy

discussion of § 1346(b) and § 2680, concluded that "even a Diversion investigator is a[n]

'investigative or law enforcement officer' under the FTCA." *Id*. at * 4. The Eleventh Circuit

expressly agreed with that conclusion: "Dr. Nguyen has brought claims for false imprisonment,

false arrest, and malicious prosecution arising out of the acts or omissions of Agent Yakubec. At

the time of the acts in question, Agent Yakubec was a federal investigative or law enforcement

officer, defined in the statute as one 'empowered by law to execute searches, to seize evidence,

or to make arrests for violations of Federal law.' *See* 28 U.S.C. § 2680(h). Under the facts and

circumstances as alleged, Dr. Nguyen's claims against the United States are expressly permitted

by the plain language of the proviso to § 2680(h)." *Nguyen v. United States*, 556 F.3d 1244, 1260

(11th Cir. 2009). This Court was able to find one other case on point. In *Karkalas v. Marks*,

another instance where the plaintiff physician sued the United States under the FTCA for claims

arising out of his indictment for distributing controlled substances, the government argued that

because the DEA agent who investigated the case was, like Whisenand, a "diversion

investigator," the United States could not be sued for the agent's alleged torts. The district court

held as follows:

> Only one court [has] decided whether a Drug Enforcement Agency diversion
> investigator is an "investigative or law enforcement officer" under the Federal
> Tort Claims Act. . . . In *Nguyen v. Estate of Carlisle*, the District Court for the
> Northern District of Florida held diversion investigators are "investigative or law
> enforcement officers" because they "are empowered to seize property" under the
> Agency's regulations, and one of the three alternative characteristics of an
> "investigative or law enforcement officer" in Section 2680(h) is the ability to
> seize evidence. . . . We agree. The Agency authorizes diversion investigators to
> seize evidence. Investigator Brill is an "investigative or law enforcement officer"
> under the Federal Tort Claims Act.

*Karkalas v. Marks*, 2019 WL 3492232, at *21 (E.D. Pa. July 31, 2019). The Plaintiffs further argue that "it is clear that Whisenand conducted a multi-agency criminal investigation of Plaintiffs that lasted for well over a year–to include his ultimate request for a search warrant, his receipt of a search warrant, and his execution of a search warrant. . . . Whisenand also conducted the interrogation of Economan during the execution of the search warrant he personally attested to and secured. . . . In each and every traditional way Whisenand conducted himself as a criminal investigator in a criminal case." *Id*., p. 15. The Plaintiffs maintain that "[i]n this case, Whisenand was part of a 'tactical diversion squad' that exclusively conducted criminal investigations." *Id.*

The United States does not address the *Nguyen* case in its reply brief (and neither side cites or discusses *Karkalas*). Instead, it concedes that it is "ask[ing] this Court to hold for the first time that DEA Diversion Investigators are not investigative or law enforcement officers under the FTCA because this issue has never been brought to this Court before." Government's Reply, p. 9. The Court declines that invitation. While neither *Nguyen* nor *Karkalas* is controlling, both are on point and support the Plaintiffs' argument in this case: that they have sufficiently pleaded claims against the United States under the FTCA based on the actions of DEA Diversion investigator Whisenand.

The Court concludes that the United States has not carried its burden under Rule 12(b)(6) of showing that the Plaintiffs have failed to state claims against it under the FTCA. Under the standard of review for Rule 12(b)(6) motions to dismiss,"[a] judge reviewing a complaint pursuant to Rule 12(b)(6) must construe the allegations in the complaint in the light most favorable to the non-moving party, accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the non-movant." *Knowles v. Hudson*, 2019 WL 4306364, at *2 (N.D. Ind.

Sept. 11, 2019). In this case, the Plaintiffs have pleaded facts and allegations about their tort claims that are sufficient to "'nudge[] their claims across the line from conceivable to plausible.'" *Knowles*, 2019 WL 4306364, at *2 (quoting *Twombly*, 550 U.S. at 570). For these reasons, the United States' motion to dismiss the Plaintiffs' claims under the FTCA on the basis of sovereign immunity is DENIED.

### D. Malicious prosecution claims.

The government also argues, as do Cockrell and Whisenand in their motions to dismiss, that even if the Court finds that the Plaintiffs' complied with the notice requirements of the FTCA, they still fail to state claims for malicious prosecution because they cannot establish the necessary elements of such a claim–namely that the underlying state court proceedings terminated in the Plaintiffs' favor. Government's Memorandum, p. 16; Cockrell Memorandum, p. 2; Whisenand Memorandum, p. 2.

"Under Indiana law, 'the elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor.'" *Owens v. Downey*, 150 F.Supp.3d 1008, 1027-28 (S.D. Ind. 2015) (quoting *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014)). The government argues that the Plaintiffs cannot establish the fourth element–that the underlying criminal and medical licensing proceedings terminated in their favor–since those proceedings were concluded pursuant to a plea agreement. The government argues as follows:

> In both the civil and criminal context, "where the original proceeding was ended, without regard to the merits, by agreement or settlement of the parties, no such termination may be availed of for the purpose of an action for malicious

prosecution." *Duvall v. Kroger Co.*, 549 N.E.2d 403, 406 (Ind. App. 1990) (citing *Wong v. Taber*, 422 N.E.2d 1279 (Ind. App. 1981)). The termination must be "inconsistent with guilt" and cannot be terminated pursuant to a compromise or entered voluntarily by the accused. *Id*. "[A]ny condition attached to dismissal of criminal charges and agreed to by the accused, is not a favorable termination for purposes of a later malicious prosecution claim." *Id*. Simply put, a plea agreement is not a favorable resolution. *See id.* (holding that plea agreement was not a termination favorable to plaintiff).

Plaintiffs' allegations arising from the criminal and Indiana medical licensing board proceedings were both terminated pursuant to a plea agreement as clearly documented in Exhibit 2. As Economan acknowledged, he entered this agreement voluntarily. See Ex. 2. As such, the termination of these proceedings was not reflective of the merits or inconsistent with guilt. Rather, it was pursuant to a bargained for agreement that cannot form the basis of a claim for malicious prosecution. For these reasons, Plaintiffs are unable to prevail on an essential element of their claim, and have failed to state a claim for malicious prosecution arising from the Indiana Medical Licensing Board and criminal proceedings. As such, these claims must be dismissed.

Government's Memorandum, p. 17.

The Plaintiffs respond by arguing that the resolution of the underlying proceedings,

notwithstanding that they ended pursuant to a plea agreement, were in fact terminated in the

Plaintiffs' favor. The Plaintiffs' argument goes like this:

Defendant is correct that after having all assets seized for almost four (4) years, the original 2016 criminal case was ultimately dismissed when Economan agreed to plead guilty to an added count of possession of marijuana as a b misdemeanor in 2019[8]. . . . Defendant is also correct that Economan retired his medical license at almost seventy (70) years of age in 2019. . . . Having had any prospects of future employment or insurability ruined by the baseless and public allegations, Economan submitted a letter of resignation stating that he wished to retire his license, and did not intend to seek reinstatement. Plaintiffs did not enter into any agreement regarding the original 2015 licensure proceedings. Rather, the Board accepted his resignation and vacated their own summary suspension order, but did

_____

[8] The Plaintiffs also point out that "Economan was never charged with Possession of Marijuana, nor was it the basis for any forfeiture action, but agreed to an amended count outside of the statute of limitations in 2019." *Id*., p. 20, n. 10.

24

not dismiss the disciplinary proceedings. Defendant provides no authority to suggest that a retirement of one's license given similar circumstances reflects any inference of guilt.

So, while Plaintiffs dispute that either of these terminations are anything other than "inconsistent with guilt," they have brought their claim of malicious prosecution arising from the medical licensing board proceeding and forfeiture proceeding. . . . Defendants–to include Cockrell and Whisenand–purposefully conspired to hamstring any potential defense, relevant to any of the three proceedings, and now propose that the complete and total dismissal of any and all pill mill allegations is somehow not inconsistent with guilt. Such a claim is erroneous and ignores the nature of the conspiracy as alleged. In any event, there can be no doubt that the forfeiture proceeding resolved in Plaintiffs' favor as the same was voluntarily dismissed with prejudice. In fact, the forfeiture proceeding was dismissed even after Plaintiffs refused to waive any potential claims against all state and/or federal actors responsible for the illegal forfeiture–despite a request for the same.

Plaintiffs' Response (ECF No. 56), pp. 19-21.

The Plaintiffs cite no authority for their argument, which is that the underlying criminal and licensing proceedings were *effectively* or *essentially* terminated in their favor, since the felony "pill-mill" charges were all dismissed when Dr. Economan agreed to plead guilty to a misdemeanor marijuana offense and to retire his medical license. To be sure, the outcome of the state proceedings was *favorable* to the Plaintiffs given that all of the serious charges were dismissed. Still, the United States argues that the Plaintiffs' argument "completely brushes over the fact that both the criminal proceedings and the state licensing board emergency suspension proceedings were terminated pursuant to a plea agreement." Government's Memorandum, p. 12. It is irrelevant, argues the government, that the result of the state proceedings *could have been* worse for the Plaintiffs, because "dismissal pursuant to a plea agreement is not a favorable termination on the merits." *Id*. (citing *Duvall v. Kroger Co*., 549 N.E.2d 403, 406 (Ind. App. 1990)). The government insists that the plea agreement "is the type of bargained for agreement

25

that cannot give rise to a cause of action for malicious prosecution. Even if Plaintiff[s] disagreed with the merits of the underlying actions, the termination of both were the result of a bargained for agreement that cannot serve [as] the basis of a malicious prosecution claim. Because the record is undisputed that the proceedings subject of the complaint [sic]–the criminal and medical licensing board suspension proceedings–were terminated pursuant to a plea agreement, the proceedings were not terminated in a manner favorable to Plaintiffs. As such, these claims must be dismissed." *Id.*, pp. 13-14. Still, the Defendants insist that the "Plaintiffs cite no case where the Court looked beyond the plea agreement and into the merits of the underlying action as that is simply not the standard for evaluating such claims. Plaintiffs argue that Economan retired his medical license independent of the plea agreement, but that is simply not true. Plaintiffs' plea agreement explicitly made the permanent retirement of his license a condition. . . . Thus, it was a bargained for agreement, and cannot be the subject of a malicious prosecution claim." Cockrell Reply, pp. 14-15; Whisenand Reply, p. 15.

The Plaintiffs' argument is unavailing, at least as to the criminal and licensing proceedings, since those proceedings were terminated pursuant to a plea agreement in which Dr. Economan agreed to plead guilty to a misdemeanor charge and retire his license. As the Eleventh Circuit explained in a case in which the plaintiffs pressed the same argument: "Here, the district court did not err in concluding that the plaintiffs failed to establish the element of a [favorable] termination. . . . [T]he plaintiffs contend that the court failed to recognize that two of her charges were dismissed. But these charges were dismissed as part of a plea agreement with the state prosecutors, under which she agreed to plead guilty to misdemeanor petit theft. Because the proceeding against Hoffman ended due to bargaining that resulted in a guilty plea to a

26

lesser-included offense, she cannot establish the element of 'bona fide termination' in her favor."

*Hoffman v. Office of State Attorney, Fourth Judicial Circuit*, 793 F.App'x 945, 955 (11th Cir.

2019) (citations omitted). And as the Indiana Court of Appeals explained in *Duvall*:

> [T]he prevailing view from other jurisdictions is any condition attached to
> dismissal of criminal charges and agreed to by the accused, is not a favorable
> termination for purposes of a later malicious prosecution claim. *See Davis v.
> Chubb/Pacific Indemnity Group, et al.* (E.D.Pa.1980), 493 F.Supp. 89, 91;
> *Singleton v. City of New York* (N.Y.1980), 632 F.2d 185, 193, *cert. denied* (1981),
> 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347. A favorable termination exists if it
> is "inconsistent with guilt." *Davis*, *supra*; Restatement of Torts (2d) § 660.
> Further, if the prosecution is terminated pursuant to a compromise or entered
> voluntarily by the accused, the termination is not favorable. W. Page Keeton,
> Prosser and Keeton On The Law Of Torts (5th Ed.) (1984) § 119.

*Duvall v. Kroger Co.*, 549 N.E.2d 403, 406 (Ind.Ct.App. 1990).

Again, in the present case, the Plaintiffs argue that the underlying criminal and licensing

board proceedings were terminated in the Plaintiffs' favor when Dr. Economan agreed to plead

guilty to a subsequent misdemeanor charge and retire his medical license. But as the Defendants

point out, this was a classic "bargained for" exchange–Dr. Economan agreed to plead guilty to a

misdemeanor marijuana charge in exchange for dismissal of the more serious felony "pill mill"

charges. As part of that plea agreement, Dr. Economan also agreed to retire his medical license.

The law is clear, though, that simply because a plea agreement results in a much more favorable

outcome for a defendant–which is one of the very purposes of such agreements–does not mean

that the underlying prosecution terminated in the defendant's favor. Accordingly, the Plaintiffs'

malicious prosecution claim arising out of the underlying criminal proceeding and medical

licensing proceeding must be dismissed since the Plaintiffs fail to establish a necessary element

of such a claim.

The result is different as to the Plaintiffs' malicious prosecution claim arising out of the state forfeiture proceeding. It is undisputed, as the Plaintiffs argue, that the forfeiture proceeding was terminated in the Plaintiffs' favor since that proceeding was dismissed with prejudice and the Plaintiffs' assets returned to them. Accordingly, the Plaintiffs have stated a viable claim for malicious prosecution arising out of the forfeiture proceeding.

For the foregoing reasons, the Defendants' motions to dismiss the Plaintiffs' malicious prosecution claims are GRANTED in part and DENIED in part. The motions are granted as to the Plaintiffs' claims for malicious prosecution arising out of the underlying criminal and medical licensing proceedings, and denied as to the Plaintiffs' claim arising out of the forfeiture proceeding.

### E. Abuse of process claims.

The Plaintiffs allege in their Complaint that Cockrell and Whisenand "knowingly or intentionally abused the process through which forfeitures are allowed in the State of Indiana." Complaint, ¶¶ 94, 97. While the Defendants argued–partly successfully–that the Plaintiffs failed to establish the elements of a malicious prosecution claim, they present no such argument as to the Plaintiffs' abuse of process claim.[9] The Defendants only argue that the Plaintiffs cannot maintain such a claim because they failed to "exhaust their administrative remedies as required to

---

[9] Under Indiana law, "[a]n action for abuse of process has two elements: (1) ulterior purpose or motives, and (2) a willful act in the use of process not proper in the regular conduct of the proceeding." *E. Point Bus. Park, LLC v. Private Real Estate Holdings, LLC*, 49 N.E.3d 589, 604-05 (Ind. Ct. App. 2015) (citing *Watson v. Auto Advisors, Inc*., 822 N.E.2d 1017, 1029 (Ind.Ct.App.2005)). The tort does not require a showing that the underlying proceeding terminated in the tort claimant's favor.

pursue a claim under the FTCA." Government's Memorandum, p. 8. The Court has already

rejected that argument. As the Plaintiffs note, the "Defendant[s] make[] no argument that

Plaintiffs have failed to allege facts sufficient to state a claim for malicious prosecution or abuse

of process *arising from the forfeiture proceedings*." Plaintiffs' Response to Whisenand, p. 3, n.

1; Plaintiffs' Response to Cockrell, p. 3, n. 1 (italics added). The Plaintiffs also argue that "[t]o

be sure, Plaintiffs have brought claims of abuse of process for all three proceedings. However,

Whisenand seeks dismissal only on the claims of malicious prosecution and only as they relate to

the medical licensing board and criminal proceedings." Plaintiffs' Response to Whisenand, p. 21,

n. 6; Plaintiffs' Response to Cockrell, p. 21, n. 7 (same). The Plaintiffs are correct that the

Defendants do not present any argument for dismissal of the abuse of process claims other than

their argument that those claims are barred for lack of a proper tort claim notice, which the Court

has already rejected. Accordingly, the Defendants' motions to dismiss are DENIED as to the

Plaintiffs' claims for abuse of process arising out of the underlying proceedings.

### F. Claims under § 1983.

The government also argues that the Plaintiffs' claims brought under § 1983 must be

dismissed because the United States "has not waived its sovereign immunity by consenting to

suit under 42 U.S.C. § 1983, and therefore it, and derivatively, federal employees sued in their

official capacities . . . are not subject to suit under [the statute]." Government's Memorandum, p.

17. The government argues that it, along with Cockrell and Whisenand, are federal actors, not

state actors, and therefore cannot be sued under the statute. *Id*., pp. 18-19 (quoting, *inter alia*,

*Sisk v. United States*, 756 F.2d 497, 500, n. 4 (7th Cir. 1985) ("'Since federal agents do not act

under color of state law, federal civil rights acts cannot normally be involved to remedy their

29

misconduct.'"); *Mufti v. Lynch*, 190 F.Supp.3d 827, 831 (N.D. Ind. 2016) ("explaining that where

the 'Complaint does not pertain to state actors–only to federal actors–§ 1983 relief is

unavailable.'")). The government insists that "there simply is no cognizable action under § 1983

against the United States. Moreover, Plaintiffs' § 1983 claim for violations of their

[constitutional] rights against the United States arises from the alleged conduct of federal agents,

DEA Diversion Investigator Whisenand and Joint Task Force Officer Cockrell, for their part in

an investigation conducted by the DEA. As such, both acted under the color of federal law and

were not state actors." *Id*., pp. 19-20. The government argues that "'[r]elief from misconduct by

federal agents may be obtained either by a suit against the agent for a constitutional tort under the

theory set forth in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 [1971] . . . or by a suit

against the United States for torts under state law under the Federal Tort Claims Act.'" *Id*., p. 19

(quoting *Sisk v. United States*, 756 F.2d 497, 500, n. 4 (7th Cir. 1985)); *also citing Rhodes v.*

*Fed. Bureau of Investigation*, 2017 WL 1021314, * 3, n. 2 (N.D. Ind. March 16, 2017) (*Bivens*

claims cannot be brought against a federal agency, and the FTCA does not waive sovereign

immunity for constitutional torts). Accordingly, insists the government, "there simply is no

cognizable action under § 1983 against the United States." *Id*. Thus, while the Plaintiffs can

assert claims against the United States under the FTCA for alleged state law tort claims, or

*Bivens* claims against Whisenand and Cockrell individually, they cannot sue the United States

under § 1983 since the United States is not a state actor. Accordingly, argues the government, the

Plaintiffs state no viable claim against the United States under § 1983.

 The Plaintiffs respond by noting that they alleged in their Complaint that both Cockrell

and Whisenand "'acted under color of federal law and/or Indiana law.'" Plaintiffs' Response, p.

21 (quoting Complaint, ¶¶ 19-20). The Plaintiffs state that "[s]ection 1983 provides a cause of action for constitutional violations committed 'under color of' state law. That language has been interpreted broadly to include not only state actors but private persons and federal officers as well." Plaintiffs' Response, p. 22. The Plaintiffs cite several cases they say support this contention. *Id.*, n. 13; p. 23, n. 14. It is true that under certain circumstances federal officers can be found to be acting under color of state law for purposes of § 1983, and the Court discusses that very issue below in the context of Whisenand's and Cockrell's motions to dismiss. But even if Whisenand and Cockrell could be deemed to have acted under color of state law due to their participation in a joint DEA/state investigation, that does not mean that the Plaintiffs can sue the United States under § 1983 based on vicarious liability or *respondeat superior*. In its reply brief, the government argues as follows:

> As the United States discussed at length in its opening memorandum, "section 1983 does not waive the federal government's sovereign immunity." *Rhodes v. Fed. Bureau of Investigation*, 2017 WL 1021314, * 2 (N.D. Ind. March 16, 2017) (citing *Hampton v. Hanrahan*, 522 F.Supp. 140, 147 (N.D. Ill. 1981) ("[P]laintiffs cite no case, and we find none, in which *Monell* has been extended to governmental bodies other than local governments. We thus reject plaintiffs' argument that we have jurisdiction over the United States under s[ection] 1983 on the basis of *Monell* . . . .")); *Kaufmann v. United States*, 840 F.Supp. 641, 648 (E.D. Wis. 1993) (explaining that the United States has not waived its sovereign immunity under the civil rights statutes). Plaintiffs devote the majority of their argument to whether Whisenand and Cockrell were state actors, which they were not, but fail to even address the crucial threshold for establishing liability on behalf of the United States: the authority under which the United States waived immunity for such claims. That is because there is no authority.

Government's Reply, p. 14. The government is correct. The Plaintiffs' argument in support of their claim against the United States under § 1983 is based on the theory that if Whisenand and Cockrell could be found to have acted under color of state law, then the United States can be

sued under that act because the government (the DEA) employed them. The Plaintiffs' theory is

also based on their assertion that:

> The intermingling of state and federal law enforcement officers through the rising
> use of joint state-federal police task forces places victims of constitutional
> violations in a nearly impossible position when stating their claims–that is, they
> must guess as to the future capacity of each actor and determine whether to bring
> their claims under § 1983 (for constitutional violations committed under color of
> state law); *Bivens* . . . (for constitutional violations committed under color of
> federal law); the FTCA (for torts committed by federal employees); or some
> combination thereof.

Plaintiffs' Response, pp. 21-22. But even assuming this is true, it does not address how this

"intermingling" of federal officers with state officers would render the federal government liable

to suit under § 1983. In other words, while this issue of intermingling is relevant with regard to

the Plaintiffs' § 1983 claims against Whisenand and Cockrell individually, it does nothing to

support the Plaintiffs' argument that it renders the federal government itself amendable to suit

under a theory of vicarious liability or *respondeat superior*. *See Johnson v. Overall*, 2020 WL

1235653, at *4 (S.D. Ill. Mar. 13, 2020) (quoting *Lennon v. City of Carmel, Indiana*, 865 F.3d

503, 507-08 (7th Cir. 2017) ("[T]here is no vicarious liability in a suit under section 1983."); *T.E.*

*v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) ("[T]here is no theory of *respondeat superior* for

constitutional torts.")). Accordingly, the government's motion to dismiss is GRANTED as to the

Plaintiffs' claims against the United States brought pursuant to § 1983.

### III. Motions to Dismiss by Tonda Cockrell and Gary Whisenand.

Cockrell and Whisenand present identical arguments in support of their respective

motions to dismiss. Cockrell "moves to dismiss Plaintiffs' complaint and dismiss Cockrell as a

party for failure to state a claim on which relief can be granted based on the grounds that (1) there

is no cognizable action against Cockrell under 42 U.S.C. § 1983 because she acted under color of federal law; (2) Plaintiffs' allegations are not based on a racist or class-based discriminatory animus as required to state a claim under 42 U.S.C. § 1985; (3) there is no cognizable damage action against Cockrell under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971) and its progeny for the alleged Constitutional violations; and (4) Plaintiffs failed to state a claim for malicious prosecution arising from the state criminal and medical licensing board proceedings because these proceedings were not terminated in Plaintiffs' favor." Cockrell Motion to Dismiss (ECF No. 44), pp. 1-2.

Like Cockrell, Whisenand "moves to dismiss Plaintiffs' complaint and dismiss Whisenand as a party for failure to state a claim on which relief can be granted based on the grounds that (1) there is no cognizable action against Whisenand under 42 U.S.C. § 1983 because he acted under color of federal law; (2) Plaintiffs' allegations are not based on a racist or class-based discriminatory animus as required to state a claim under 42 U.S.C. § 1985; (3) there is no cognizable damage action against Whisenand under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971) and its progeny for the alleged Constitutional violations; and (4) Plaintiffs failed to state a claim for malicious prosecution arising from the state criminal and medical licensing board proceedings because these proceedings were not terminated in Plaintiffs' favor." Whisenand Motion to Dismiss (ECF No. 46), pp. 1-2.

The Plaintiffs have conceded their § 1985 claims and the Court has already concluded that their malicious prosecution claim survives the motions to dismiss (at least as to the underlying forfeiture proceeding). Accordingly, the Court addresses the first and third grounds

for dismissal presented by Cockrell and Whisenand–that they cannot be sued under § 1983 or

under a *Bivens* theory.

### A. Section 1983 claims.

Cockrell and Whisenand contend that they cannot be sued under § 1983 because they

were both acting under color of federal law, not state law. Cockrell argues that "there is no

cognizable action against Cockrell under 42 U.S.C. § 1983 because she acted under color of

federal law, and was not a state actor[.]" Cockrell Memorandum in Support of Motion to Dismiss

(ECF No. 54), pp. 1-2. Whisenand likewise claims that "he acted under color of federal law, and

was not a state actor." Whisenand Memorandum in Support of Motion to Dismiss (ECF No. 55),

p. 1. Both Defendants cite the case of *Seber v. Unger*, 881 F.Supp. 323, 327 (N.D. Ill. 1995) in

support of their arguments. That case states the well-established principle that "'[b]y its terms, §

1983 provides aggrieved individuals an ability to redress deprivations of Constitutional rights

where the deprivation occurs **under color of state law**.'" Cockrell Memorandum, p. 7;

Whisenand Memorandum, p. 7 (quoting *Seber*, emphasis in originals). The Defendants note that

the court in *Seber* expressly states that "'***actions of the Federal Government and its officers are***

***beyond the purview' of both the fourteenth amendment . . . and § 1983***.'" Cockrell

Memorandum, *id*.; Whisenand Memorandum, *id*. (quoting *Seber*, emphasis in originals).

Cockrell insists that she "was a deputized Joint Task Force Officer of the DEA. Hence, for

purposes of § 1983, she was a federal actor." Cockrell Memorandum, *id*. Similarly, Whisenand

argues that "[b]ecause [he] was a DEA Investigator and Plaintiffs' allegations arise from

Whisenand's duties performed in conjunction with the DEA investigation of Plaintiffs, he was a

federal officer to whom § 1983 does not apply." Whisenand Memorandum, p. 8.

34

In response, the Plaintiffs argue that both Cockrell and Whisenand are amenable to suit under § 1983 because they acted in concert with state actors, i.e., that their conduct and actions were "intermingled" with state actors and therefore they can be sued under § 1983. The Plaintiffs argue that "[i]n applying this reasoning to joint task forces, the Seventh and Third Circuits–and a number of district courts[]–look beyond the label of an officer's authority and consider the circumstances surrounding his or her acts to determine whether they were taken under color of state law, federal law, or both." Plaintiffs' Response to Whisenand Motion to Dismiss (ECF No. 59), p. 11; Plaintiffs' Response to Cockrell Motion to Dismiss (ECF No. 60), p. 11 (both citing *Askew v. Bloemker*, 548 F.2d 673, 677 (7th Cir. 1976): *Couden v. Duffy*, 446 F.3d 483, 499 3d Cir. 1986)). The Plaintiffs also cite numerous district court cases from other jurisdictions that they claim support their argument. *Id.*, p. 11, n. 3; *id.*, p. 11, n. 3.

As to Cockrell, the Plaintiffs argue that she "engaged in an investigation that was pursuing state criminal charges, a state forfeiture action, a state medical licensing board action, and a state seizure." Plaintiffs' Response to Cockrell, pp. 11-12. Furthermore, the Plaintiffs point out that "Cockrell may fairly be said to be a state actor in that she *is* actually a state official, she acted together with and obtained significant aid from state officials, and because her conduct may be otherwise fairly chargeable to the State." *id.*, p. 13. It is not disputed, of course, that Cockrell was a sworn officer of the Kokomo Police Department as well as a member of the DEA task force. As to Whisenand, the Plaintiffs argue that even though he was employed as a federal agent "[m]any circuit courts, including the Seventh Circuit, have specifically held that federal officers, just like private persons, can act 'under color of state law.'" Plaintiffs' Response to Whisenand, p. 14 (citing *Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979)). The Plaintiffs insist that

they "have specifically alleged that Whisenand engaged in a conspiracy to violate their constitutional rights. . . . Moreover, Plaintiffs have alleged that Whisenand engaged in said conspiracy with a variety of other actors who acted under color of state law[.]" *Id.*, p. 15. The Plaintiffs insist that they have pleaded facts sufficient to establish that both Cockrell and Whisenand were acting in concert with state actors to pursue a state criminal proceeding, a state licensing proceeding and a state forfeiture proceeding, and are therefore amenable to suit under § 1983.

In their reply briefs, Cockrell and Whisenand insist that the entire investigation involving the Plaintiffs "was conducted by the DEA[]" and, accordingly, both of them were acting under color of federal law, not state law. Whisenand Memorandum, p. 6; Cockrell Memorandum, p. 6.

It is true, as Cockrell and Whisenand argue, that many courts have held that federal officers, as well as state officers who are deputized to serve on joint task forces with a federal agency (like Cockrell), are federal officers for purposes of § 1983. As one district court explained:

> To establish § 1983 claim, a plaintiff must show that a state actor committed an act that deprived the claimant of his rights, privileges or immunities secured by the Constitution. . . . Section 1983 provides no remedy for a deprivation of rights by federal officials acting under color of federal law. *Fluellen v. U.S. Dep't of Justice Drug Enforcement Admin.*, 816 F. Supp. 1206, 1210 (E.D. Mich. 1993) . . . . Instead, federal agents are subject to liability, in an individual capacity, for violations of constitutionally protected rights under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). State law enforcement officials who serve as deputized federal agents are considered to be acting under color of federal, not state law. *See generally Ellis v. Ficano*, 73 F.3d 361, 1995 WL 764127 (6th Cir. 1995) (dismissing § 1983 claim against all defendants who were state and federal law enforcement agents on a joint task force); *see also Adams v. Springmeyer*, 17 F.Supp.3d 478, 506 (W.D. Pa. 2014) ("local law enforcement officials working [as federally deputized agents] are generally regarded as federal agents[.]").

*Jacobs v. Alam*, 2015 WL 13876759, at *2 (E.D. Mich. Nov. 13, 2015). It is also true, as the

Plaintiffs argue, that many courts have concluded the opposite: that federal officers can be

considered state actors for purposes of § 1983 if they act in concert with state officials. The

Plaintiffs state that "[t]he Seventh Circuit has even explicitly held that 'when federal officials are

engaged in a conspiracy with state officials to deprive constitutional rights, the state officials

provide the requisite state action to make the entire conspiracy actionable under section 1983.'"

Plaintiffs' Memorandum (ECF No. 60), p. 15; Plaintiffs' Memorandum (ECF No. 59), p. 15

(quoting *Hampton v. Hanrahan*, 600 F.2d 600, 623 (7th Cir. 1979)). The Plaintiffs also cite the

case of *Kletschka v. Driver* in support of their argument. In *Kletschka*, the Second Circuit held as

follows:

> Plaintiff's basis for suit under § 1983 against the federal defendants is that in
> depriving plaintiff of a federal right they acted 'under color of state law' by virtue
> of their conspiracy with the state defendants and by virtue of the fact that their
> actions were partially the product of the influence of the state defendants.
>
> Several cases have held that action technically taken by private individuals was
> 'state action' violative of the Fourteenth Amendment because of the interaction of
> the private actors with state officials or policies. *E.g., Burton v. Wilmington
> Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); *Lombard v.
> Louisiana*, 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963); *Smith v.
> Hampton Training School for Nurses*, 360 F.2d 577, 580 (4th Cir. 1966). The
> Supreme Court has not resolved whether the action of federal officials may
> likewise be the subject of § 1983 suit if there is proof of a conspiracy with state
> officials. *See Dombrowski v. Eastland*, 387 U.S. 82, 84, 87 S.Ct. 1425, 18 L.Ed.2d
> 577 (1967).
>
> We can see no reason why a joint conspiracy between federal and state officials
> should not carry the same consequences under § 1983 as does joint action by state
> officials and private persons. It was the evident purpose of § 1983 to provide a
> remedy when federal rights have been violated through the use or misuse of a
> power derived from  a State. *Monroe v. Pape*, 365 U.S. 167, 184, 81 S.Ct. 473, 5
> L.Ed.2d 492 (1961). When the violation is the joint product of the exercise of a

> State power and of a non-State power then the test under the Fourteenth
> Amendment and § 1983 is whether the state or its officials played a 'significant'
> role in the result. *See Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722,
> 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

*Kletschka v. Driver*, 411 F.2d 436, 448-49 (2d Cir. 1969). Another district court, nearly 50 years

after *Kletschka*, cited the case and explained as follows:

> "[F]ederal officials acting under federal authority are generally not considered to
> be state actors[.]" *Cabrera v. Martin*, 973 F.2d 735, 742 (9th Cir. 1992) (citations
> omitted). "Federal officials do not become 'state actors' unless '[t]he State has so
> far insinuated itself into a position of interdependence with ... [the federal
> officials] that it must be recognized as a joint participant in the challenged
> activity.'" *Id.* (quoting *Kletschka v. Driver*, 411 F.2d 436, 449 (2d Cir. 1969)).
> Rather, there must be a "sufficiently close nexus between the State and the
> challenged action of the [federal actors] so that the action of the latter may be
> fairly treated as that of the State itself." *Ibrahim v. Dep't of Homeland Sec.*, 538
> F.3d 1250, 1257 (9th Cir. 2008)[.]

*Paul v. Redwood Nat'l & State Parks Dep't*, 2018 WL 4859317, at *6 (N.D. Cal. Oct. 5, 2018).

"To transform a federal official into a state actor, the [plaintiff] must show that there is a

'symbiotic relationship' between the [federal defendants] and the state such that the challenged

action can 'fairly be attributed to the state.'" *Alexander v. Hedback*, 2012 WL 2004103, at *6 (D.

Minn. June 5, 2012), aff'd, 718 F.3d 762 (8th Cir. 2013) (quoting *Cabrera v. Martin*, 973 F.2d

735, 742-43 (9th Cir.1992)). Yet another district court addressing this issue explained as follows:

> Plaintiffs cite three cases from other circuits in support of the proposition that
> Defendant . . .  may be held liable under section 1983 "as a joint participant" with
> the state actors involved in the alleged violations of Plaintiffs' Fourth Amendment
> rights. . . . In each of these cases, the respective courts state that a federal officer
> or official may be held liable under section 1983 if a joint conspiracy, not joint
> participation, exists between the federal and state actors. *See Kletschka v. Driver*,
> 411 F.2d 436, 448-49 (2d Cir.1969) (holding that there was "no reason why a joint
> conspiracy between federal and state officials should not carry the same
> consequences under § 1983 as does joint action by state officials and private
> persons"); *Davis v. United States*, 2004 U.S. Dist. LEXIS 2551, 2004 WL
> 324880, at *11 (S.D.N.Y. Feb.19, 2004) (stating, "A federal officer may be held

> liable for conspiring with state officials who violate § 1983") (citing *Kletschka*,
> 411 F.2d at 448-49); *Peck v. United States*, 470 F.Supp. 1003, 1007
> (S.D.N.Y.1979) (stating, "[A]ctions of federal officers may be the subject of a §
> 1983 suit if there is proof of a joint conspiracy with state officials") (citing
> *Kletschka*, 411 F.2d at 448).

*Adams v. Springmeyer*, 2012 WL 1865736, at *6 (W.D. Pa. May 22, 2012).

In their reply briefs, Cockrell and Whisenand stick to their guns, arguing that they were

acting only as federal officers. Both sides cite cases from other jurisdictions that support their

respective arguments, and the issue of when or if federal officers (or joint officers, such as

Cockrell) can be deemed to have acted under color of state law for purposes of liability under §

1983 is unsettled. That said, the Court concludes that there is support for the Plaintiffs' position,

and they have pleaded sufficient facts to state viable claims against Cockrell and Whisenand

under § 1983 based on their alleged actions and conduct in concert with state officers in state

proceedings. The Court must "construe the allegations in the complaint in the light most

favorable to the [Plaintiffs], accept all well-pleaded facts as true, and draw all reasonable

inferences in favor of the non-movant." *Knowles v. Hudson*, 2019 WL 4306364, at *2.

Accordingly, Cockrell's motion to dismiss and Whisenand's motion to dismiss are both DENIED

as to the Plaintiffs' claims against them under § 1983.

**B. *Bivens* claims.**

The Plaintiffs allege that Cockrell and Whisenand, in their individual capacities as federal

agents or officers, violated their Fourth and Fifth Amendment rights and have asserted claims

against them pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of*

*Narcotics*, 403 U.S. 388 (1971). *Bivens* "'authorizes the filing of constitutional tort suits against

federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state

39

officers. . . .'" *Prucha v. Watson*, 2020 WL 6274840, at *4 (S.D. Ind. Oct. 26, 2020) (quoting

*King v. Federal Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005)). "Since federal agents do

not act under color of state law, federal civil rights acts cannot normally be invoked to remedy

their misconduct." *Sisk v. United States*, 756 F.2d 497, 500 (7th Cir. 1985) (citing *Meiners v.

Moriarity*, 563 F.2d 343, 348 (7th Cir. 1977); *Askew v. Bloemker*, 548 F.2d 673, 678 (7th Cir.

1976)). "Relief from misconduct by federal agents may be obtained either by a suit against the

agent for a constitutional tort under the theory set forth in *Bivens v. Six Unknown Named Agents*,

403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), or by a suit against the United States under

the Federal Tort Claims Act." *Id*.

The Plaintiffs' Complaint, as the Defendants note "does not assert a separate count for the

alleged Constitutional violations of Defendants under *Bivens*" and includes only a few assertions

or allegations that, taken together, arguably could be construed as *Bivens* claims. The Complaint

includes the following relevant statements and allegations:

1) In a section titled "Jurisdiction, Venue and Cause of Action," the Plaintiffs state that

the "bring this action, in part, pursuant to *Bivens v. Six Unknown Named Agents of Federal

Bureau of Narcotics*, 403 U.S. 388 (1971)." Complaint, p. 2, ¶ 6;

2) In a section titled "Legal Claims," the Plaintiffs allege that "[t]he Defendants' actions

violated Plaintiffs' rights guaranteed under the Fourth, Fifth and Fourteenth Amendments to the

U.S. Constitution." *Id*., p. 16, ¶ 90;

3) The Complaint alleges that "[t]he Defendants conspired with one another to deprive

the Plaintiffs of their rights guaranteed under the Fourth, Fifth and Fourteenth Amendments to

the U.S. Constitution." *Id*., p. 16, ¶ 91;

40

4) The Plaintiffs allege "that Cockrell, acting in her individual capacity and under color of Indiana and federal law, violated their 4th Amendment right to be free from unlawful search and seizure when she deliberately or recklessly manufactured and/or submitted false and material information in the Cockrell Affidavit[]" and that she "failed to intervene in a knowing violation of the Plaintiffs' constitutional rights, conspired with state and federal officials to deprive Plaintiffs of their property without probable cause, engaged in a malicious prosecution of the Plaintiffs, violated the Plaintiffs' right to due process, and knowingly or intentionally abused the process through which forfeitures are allowed in the state of Indiana." *Id.*, p. 17, ¶ 93-94.

5) The Complaint's allegations against Whisenand are identical to those asserted against Cockrell, i.e., that he violated the Plaintiffs' Fourth Amendment rights when he "deliberately or recklessly submitted false and material information in a warrant affidavit[]" and that he "failed to intervene in a knowing violation of the Plaintiffs' constitutional rights, conspired with state and federal officials to deprive Plaintiffs of their property without probable cause, engaged in a malicious prosecution of the Plaintiffs, violated the Plaintiffs' right to due process, and knowingly or intentionally abused the process through which forfeitures are allowed in the state of Indiana." *Id.*, pp. 17-18, ¶ 96-97.

The conclusory statements and generalized allegations are not much to go on, but coupled with the Plaintiffs' factual recitation, they imply causes of action under *Bivens* for violation of the Plaintiffs' Fourth Amendment rights on the basis that Cockrell and Whisenand submitted knowingly false and fabricated evidence for the purpose of seizing the Plaintiffs' assets; and violation of the Plaintiffs' Fifth Amendment rights on the basis that Cockrell and Whisenand's actions deprived the Plaintiffs of their property without due process.

Cockrell and Whisenand move for dismissal of the Plaintiffs' *Bivens* claims. They discuss

the history of *Bivens* and its progeny at length in their briefs, correctly noting that *Bivens*

provides a remedy only in very limited circumstances. They contend that the Plaintiffs'

constitutional claims are not cognizable because they are not the type for which *Bivens* provides a

remedy, and that allowing them to proceed would improperly expand *Bivens* to a "new context or

new category of defendants"–something Cockrell and Whisenand insist "[t]he Supreme Court

has consistently refused to [do] . . . for 40 years." Cockrell Memorandum in Support, p. 12;

Whisenand Memorandum in Support, p. 12. The Defendants argue as follows:

> In *Bivens*, the Supreme Court recognized a damage action against federal officers
> individually for alleged violations of plaintiffs' rights under the Fourth
> Amendment of the United States Constitution. *Bivens*, 403 U.S. at 397. *Bivens*
> involved a warrantless entry into an individual's residence followed by a visual
> strip search performed by a Federal Bureau of Narcotics agent. *Bivens*, 403 U.S.
> 388, 91 S. Ct. 1999. Since 1971, the Supreme Court has extended the *Bivens*
> remedy only twice. *See Davis v. Passman*, 442 U.S. 228 (1979) (holding an
> administrative assistant fired by a congressman had a *Bivens* remedy for her Fifth
> Amendment gender discrimination claim); *Carlson v. Green*, 446 U.S. 14 (1980)
> (holding a prisoner's estate had a *Bivens* remedy against federal jailers for
> deliberate indifference to necessary medical care where they failed to provide an
> inhaler for a serious asthma condition resulting in his death). The Supreme Court
> has consistently refused to extend *Bivens* to any new context or new category of
> defendants for 40 years. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). In fact,
> the Supreme Court "has reversed more than a dozen appellate decisions"
> extending *Bivens*. *Vance v. Rumsfeld*, 701 F.3d 193, 198 (7th Cir. 2012) (en banc).
> In *Abbasi*, the Court emphasized that expanding the *Bivens* remedy is now
> considered "a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting
> *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S.Ct. 1937 (2009)). The Court has even
> suggested that *Bivens* and its progeny were wrongly decided stating, "in light of
> the changes to the Court's general approach to recognizing implied damages
> remedies, it is possible that the analysis in the Court's three *Bivens* cases might
> have been different if they were decided today." *Abbasi*, 137 S. Ct. at 1856.
>
> The Court provided a demanding two-step inquiry that must be performed when
> determining whether to allow a claim asserted under *Bivens* to proceed.
> *Hernandez v. Mesa*, 140 S. Ct. 735, 743, 206 L. Ed. 2d 29 (2020). First, the Court

42

must determine if the case "involves a claim that arises in a new context or involves a new category of defendants." *Id*. (internal quotations omitted). If it does, "the Constitution's separation of powers requires [courts] to exercise caution" before allowing a *Bivens* remedy to proceed. *Hernandez* at 739. Second, the Court must ask if there are any "special factors counseling hesitation" in expanding the *Bivens* remedy. *Abbasi* at 1848 (quoting *Carlson*, 446 U.S. at 18, 100 S.Ct. 1468, in turn quoting *Bivens*, 403 U.S. at 396, 91 S.Ct. 1999). This "special factors" analysis "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages remedy to proceed." *Id*. at 1857-58. If "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the court must refrain from creating [a *Bivens*] remedy." *Id*. at 1858.

Cockrell Memorandum, pp. 12-13; Whisenand Memorandum, pp. 11-12. The Defendants insist that "Plaintiffs' *Bivens* claim . . . must be dismissed because each alleged constitutional violation [asserted by Plaintiffs] seeks to extend *Bivens* into a new context, and each with several meaningful differences from the three previous *Bivens* cases." *Id*., p. 14; *id*., p. 14. They argue that "there is no recognized damage remedy under *Bivens* and its progeny for Plaintiffs' alleged Constitutional violations, and no basis for implying such a remedy. To reiterate, expanding *Bivens* is strongly disfavored, and each of the special factors counsels against the expansion in [the] context [of this case]." *Id*., p. 18; *id*., p. 19.

In response, the Plaintiffs argue that their allegations do not present "a new or novel *Bivens* context." Plaintiffs' Response to Whisenand, p. 16; Plaintiffs' Response to Cockrell, p. 17. The Plaintiffs argue as follows:

This case is in large part about the unlawful seizure of the Plaintiffs' property, and illegality of the 'search-and-seizure' context in which it arose. "*Bivens* does vindicate the Constitution by allowing some redress for injuries, and it provides instruction and guidance to federal law enforcement officers going forward. The settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856-57

(2017). A *Bivens* action may also be based on a violation of the Fifth Amendment when the plaintiff alleges the existence of a protected property or liberty interest and a deprivation of that interest without due process of law. § 3:40. Actions under the Fifth Amendment; procedural due process, 1 Civ. Actions Against the U.S. § 3:40 (citing *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1210 (5th Cir. 1989)). The *Bivens* claims in this case are seeking to redress constitutional violations of property and due process interests by law enforcement officials. In other words–classic *Bivens*. Defendant's urging of this Court to proceed with caution is both transparent and without merit.

*Id*., pp. 16-17; *id*., p. 17. In sum, the Plaintiffs argue that they "have properly plead a *Bivens* claim against Whisenand for a knowing presentation of a false affidavit submitted for the purpose of achieving an illegal seizure of their assets and for the knowing presentation of the same false information to the Indiana Medical Licensing Board." Plaintiffs' Response to Whisenand, p. 16. They argue that they "have properly plead a *Bivens* claim against Cockrell for a knowing presentation of a false affidavit submitted for the purpose of achieving an illegal seizure of their assets." Plaintiffs' Response to Cockrell, p. 16. The Plaintiffs then insist that since *Bivens* itself expressly provided a remedy for a Fourth Amendment violation, they too should be able to pursue a *Bivens* claim based on the same constitutional tort. Likewise, the Plaintiffs insist that because the Supreme Court in *Passman* held that *Bivens* provided a remedy for a Fifth Amendment due process claim in a discrimination suit, they too should be able to pursue a *Bivens* claim based on their allegations that their due process rights were infringed.

In reply, Whisenand and Cockrell contend that the Plaintiffs' argument is flawed because it applies *Bivens* too broadly and ignores the recent holdings in *Abbasi* and *Hernandez* (and the Supreme Court's admonitions against expanding the reach of *Bivens*). The Defendants argue as follows:

[The Plaintiffs] argue that their Fourth and Fifth Amendment Claims are not a

new extension of *Bivens*. Plaintiffs' application of *Bivens* and its progeny, however, is too broad.

. . .

As to their Fourth Amendment claims, Plaintiffs sole argument is that *Bivens* found a viable claim for violations of a citizen's rights under the Fourth Amendment. This similarity alone is not enough. *See Abbasi*, 137 S. Ct. at 1859-60. (explaining that the Constitutional right at issue is one factor, among many, used to determine if *Bivens* will be extended to a new context). As Cockrell set forth in her brief . . . , the "new context" does not need to be an immense difference; it only needs to be different in a meaningful way. The Court did not state that the alleged violation of the same Constitutional amendment alone was enough. Rather, it engaged in analysis of numerous factors, none of which Plaintiffs' response considers.

As Cockrell previously explained, consideration of the relevant factors shows that here *Bivens* would be extended to a new context. Indeed, *Bivens* differs dramatically from the facts and circumstances here, as Cockrell [and Whisenand are] not alleged to have engaged in the search and detention of Plaintiffs, but in information and case-building. In a nearly identical situation, the Eighth Circuit, in determining the claim would extend *Bivens*, recognized, "[t]hese information-gathering and casebuilding activities are a different part of police work than the apprehension, detention, and physical searches in *Bivens*." *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019).

Cockrell Reply Brief (ECF No. 67), pp. 10-11; Whisenand Reply Brief (ECF No. 69), pp. 11-12.

To reiterate, the Plaintiffs allege in their Complaint, and argue in their briefs, that

Cockrell and Whisenand presented false evidence for the purpose of seizing the Plaintiffs' assets,

in violation of the Plaintiffs' Fourth Amendment right to be free from unreasonable search and

seizure; and they allege and argue that Cockrell and Whisenand's conduct violated their due

process rights under the Fifth Amendment. The Plaintiffs argue that *Bivens* provides them with a

remedy for their Fourth Amendment claim for unconstitutional seizure of their assets since

*Bivens* itself involved an illegal search and seizure; and that *Davis v. Passman* provides them

with a remedy for their Fifth Amendment claim because *Davis* extended *Bivens* to a Fifth

45

Amendment due process claim. But as the Defendants correctly state, "[t]his similarity alone is not enough" to state *Bivens* claims. The Court agrees with the Defendants that the Plaintiffs' factual assertions and allegations do not state valid claims against Cockrell and Whisenand pursuant to *Bivens*. The Plaintiffs' arguments are an attempt to fit a square peg into a round hole and permitting them to proceed against Cockrell and Whisenand for alleged constitutional torts under the facts alleged would result in an improper expansion of *Bivens*. As another district court recently noted, even "'[a] modest extension [of Bivens] is still an extension[,]'" and would run afoul of *Abbasi*. *Dancy v. Watson*, 2020 WL 1139422, at *3 (S.D. Ind. Mar. 9, 2020) (quoting *Abbasi*, 137 S. Ct. 1864)). In *Dancy*, the district court refused to extend *Bivens* to an Eighth Amendment claim brought by a federal prisoner, notwithstanding that *Bivens* was held to provide a remedy for an Eighth Amendment violation in *Carlson*. The district court reasoned as follows:

> [I]t is clear that Mr. Dancy seeks to create a new *Bivens* context. Neither *Bivens*, *Davis*, nor *Carlson* involved allegations of unsanitary food services in a federal prison. The fact that *Carlson* involved a conditions of confinement claim alleging violations of the Eighth Amendment is not dispositive. "A claim may arise in a new context even if it is based on the same constitutional provision as a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743; *see also Abbasi*, 137 S. Ct. 1864 ("[A] modest extension [of *Bivens*] is still an extension."). Since *Carlson* was decided, the [Supreme] Court has rejected attempts to extend *Bivens* to other contexts involving conditions of confinement under both the Eighth and Fourteenth Amendments. *E.g. Malesko*, 534 U.S. at 74 (action against private prison operator); *Minneci*, 565 U.S. at 125 (action against private prison operator's employees); *Abbasi*, 137 S. Ct. at 1860 (action by undocumented immigrants previously detained pending national security investigations following the terrorist attacks on September 11, 2001). In light of these decisions, the food services claim in this case is a different context than the medical services claim in *Carlson*.

*Dancy v. Watson*, 2020 WL 1139422, at *3 (S.D. Ind. Mar. 9, 2020). In the present case, the Plaintiffs allege that Cockrell and Whisenand submitted false affidavits in an effort to seize the

Plaintiffs' assets by way of the underlying state court proceeding. In *Bivens*, however, six federal law enforcement agents of the Federal Bureau of Narcotics forced their way into Mr. Bivens' home without a warrant and searched the premises. The agents handcuffed Bivens in front of his wife and children and arrested him on narcotics charges. Later, the agents interrogated Bivens and subjected him to a visual strip search. As Cockrell and Whisenand argue, "*Bivens* differs dramatically from the facts and circumstances here, as Whisenand is not alleged to have engaged in the search and detention of Plaintiffs, but in information-gathering and case-building." Whisenand Reply, p. 11; Cockrell Reply, p. 11 (same).

The Defendants insist, and the Court agrees, that the Plaintiffs' allegations of Fifth Amendment violations fail for the same reason. In *Davis v. Passman*, the Supreme Court extended the *Bivens* remedy to a Fifth Amendment claim in a gender discrimination suit brought by a female employee of a U.S. Congressman who alleged that she was illegally terminated without due process. After noting that the plaintiff had no other basis on which to redress her discrimination claim, the Court extended the *Bivens* remedy to her claim. In the present case, the Plaintiffs argue that since they, too, have alleged a Fifth Amendment violation, *Bivens* should provide them with a remedy against Cockrell and Whisenand.

As the Defendants also point out, the Plaintiffs present no authority to support their position. The cases they do cite, as the Defendants also note, "pre-date[] *Abassi*[]" and their arguments ignore–and ask this Court to ignore–the Supreme Court's very clear caution against expanding *Bivens*. The Supreme Court has steadfastly refused to extend *Bivens*, even in cases brought under the auspices of the Fourth, Fifth or Eighth Amendments. As the Court explained in *Abbasi*:

Given the notable change in the Court's approach to recognizing implied causes of action, however, the Court has made clear that expanding the *Bivens* remedy is now a "disfavored" judicial activity. *Iqbal*, 556 U.S., at 675, 129 S.Ct. 1937. This is in accord with the Court's observation that it has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). Indeed, the Court has refused to do so for the past 30 years.

For example, the Court declined to create an implied damages remedy in the following cases: a First Amendment suit against a federal employer, *Bush v. Lucas*, 462 U.S. 367, 390, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); a race-discrimination suit against military officers, *Chappell v. Wallace*, 462 U.S. 296, 297, 304-305, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); a substantive due process suit against military officers, *United States v. Stanley*, 483 U.S. 669, 671-672, 683-684, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987); a procedural due process suit against Social Security officials, *Schweiker v. Chilicky*, 487 U.S. 412, 414, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); a procedural due process suit against a federal agency for wrongful termination, *FDIC v. Meyer*, 510 U.S. 471, 473-474, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); an Eighth Amendment suit against a private prison operator, *Malesko*, *supra*, at 63, 122 S.Ct. 515; a due process suit against officials from the Bureau of Land Management, *Wilkie v. Robbins*, 551 U.S. 537, 547-548, 562, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007); and an Eighth Amendment suit against prison guards at a private prison, *Minneci v. Pollard*, 565 U.S. 118, 120, 132 S.Ct. 617, 181 L.Ed.2d 606 (2012).

*Ziglar v. Abbasi*, 137 S.Ct. at 1857. Even more recently, a district court dismissed a plaintiff's Fifth Amendment due process claim asserted under *Bivens* against the U.S. Secretary of Education, Betsy DeVos, alleging that the Secretary "collaborat[ed] on creating the discriminatory policies[]" that deprived plaintiff from participating in an online college course program while in prison due to his age (the program having been restricted to inmates under the age of 35). *Henderson v. Devos*, 2020 WL 1442965 (W.D. Wis. Mar. 24, 2020). The court, citing and discussing *Abbasi*, concluded that "the limited scope of *Bivens* should not be extended to this type of age-discrimination claim[.]" *Id*. at * 3. The court explained that "[t]he closest of the three approved *Bivens* actions is the *Davis* case, a sex-based employment discrimination case. But the

48

Supreme Court has considered even the expansion of equal protection cases to be a new context, and the Court has rejected expanding *Bivens* to cover new equal protection contexts." *Id*. at * 4 (citing *Abbasi*, 137 S. Ct. at 1863). *See also*, *Harris v. Dunbar*, 2018 WL 3574736, at *3 (S.D. Ind. July 25, 2018) ("The Supreme Court has declined to extend a *Bivens* remedy to due process claims in a number of contexts. Indeed, in *Abbasi*, the Court declined to allow a *Bivens* remedy to aliens who were in the United States without legal authorization but were allegedly held without bail for three to eight months in extremely harsh and physically abusive conditions. *Abbasi*, 137 S.Ct. at 1852-53. The claims disallowed in *Abbasi* itself were brought under the substantive due process and equal protection components of the Fifth Amendment, as well as the Fourth Amendment. *Id*. at 1853-54. Applying these authorities and considerations, the Court concludes that [plaintiff's] First Amendment interference with mail claim and Fifth Amendment due process claims arise in a new *Bivens* context.").

For the foregoing reasons, the Court concludes that the Plaintiffs' allegations fail to state *Bivens* claims against Cockrell or Whisenand and that the Defendants' motions to dismiss should be GRANTED as to those claims.

## CONCLUSION

For the reasons explained above, the Motions to Dismiss are GRANTED in part and DENIED in part as follows:

1) The United States' motion to dismiss (ECF No. 41) is GRANTED as to the Plaintiffs' claims against the United States brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985; GRANTED in part and DENIED in part as to the Plaintiffs' claims against the United States pursuant to the Federal Tort Claims Act (the motion is granted as to the Plaintiffs' claims for

malicious prosecution arising out of the underlying criminal and medical licensing board proceedings, denied as to the underlying forfeiture proceeding, and denied as to the Plaintiffs' claims for abuse of process);

2) Cockrell's motion to dismiss (ECF No. 44) is GRANTED as to the Plaintiffs' claims under § 1985; DENIED as to the Plaintiffs' claims under § 1983; GRANTED in part and DENIED in part as to the Plaintiffs' claims for malicious prosecution; DENIED as to the Plaintiffs' claims for abuse of process; and GRANTED as to the Plaintiffs' claims brought pursuant to *Bivens v. Six Unknown Named Agents*; and

3) Whisenand's motion to dismiss (ECF No. 46) is GRANTED as to the Plaintiffs' claims under § 1985; DENIED as to the Plaintiffs' claims under § 1983; GRANTED in part and DENIED in part as to the Plaintiffs' claims for malicious prosecution; DENIED as to the Plaintiffs' claims for abuse of process; and GRANTED as to the Plaintiffs' claims brought pursuant to *Bivens v. Six Unknown Named Agents*.

The Plaintiffs' Application to Stay (ECF No. 70) is DENIED.


Date: November 23, 2020.


   /s/   William C. Lee   
William C. Lee, Judge
U.S. District Court
Northern District of Indiana