UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

DALE W. ECONOMAN, et al.,

    Plaintiffs,

    v.                                                          Case No. 1:20-CV-032-GSL

TONDA COCKRELL, et al.,

    Defendants.

## OPINION AND ORDER

Pending before the Court are six motions. Five of these are Motions for Summary Judgment against Plaintiffs' claims.

- Motion for Summary Judgment by Defendant Garrison Law Firm, LLC, [DE 160]
- Motion for Summary Judgment by the Defendant United States, [DE 170]
- Motion for Summary Judgment by Defendant Gary Whisenand, [DE 174]
- Motion for Summary Judgment by Defendant Tonda Cockrell, [DE 177]
- Motion for Summary Judgment by Defendants Jessica Krug and James Luttrull, [DE 180]

The final motion is a Cross-Motion for Partial Summary Judgment filed by Plaintiffs' against Defendant Tonda Cockrell, [DE 198]. For the reasons below, Motions for Summary Judgment [DE 160], [DE 170], [DE 174], [DE 177], and [DE 180] are each GRANTED in-part and DENIED in-part. Cross-Motion for Partial Summary Judgment against Defendant Tonda Cockrell, [DE 198], is GRANTED.

## BACKGROUND

In July of 2012, Plaintiff Dale W. Economan ("Economan"), a family practice physician, opened and began operating his solo medical practice, Plaintiff Economan and Associates Family Medicine ("EAFM"). [DE 187-3, Page 4:3-9]. Within eighteen months of EAFM's

opening, the Indiana Attorney's General Medicaid Fraud Control Unit received a consumer complaint from a patient's mother. [DE 182-4, Page 11:2-10].

Around the time the Medicaid Fraud Control Unit received that complaint, Defendant Cockrell received reports from a printing company that Plaintiff Economan was ordering large numbers of prescription pads for controlled substances. [DE 187-10, Page 5:2-11]. Defendant Cockrell was a Kokomo Police Department Supervisor on the Drug Taskforce, and, simultaneously, a federally deputized Department of Justice Drug Enforcement Administration Officer ("DEA"). [DE 187-10, Page 4:22-25]. After learning her colleagues made undercover buys of controlled substances from Plaintiff Economan's patients, she and Defendant Whisenand, a long-time DEA officer, interviewed the printing company who reported the large orders of prescription pads for controlled substances. [DE 187-10, Page 5:19-25, Page 6:17-22; DE 187-9, Page 8:11-13]. Defendants Cockrell and Whisenand also interviewed pharmacies who reported concerns about Plaintiffs' prescribing habits. [DE 187-10, Page 7:9-14].

After these interviews occurred, Defendants Whisenand and Cockrell formally initiated an investigation into Plaintiffs in February of 2014. [DE 187-10, Page 7:14-17]. The formal investigation into Plaintiffs uncovered evidence, according to the allegations in Defendant Whisenand's affidavit, that Plaintiffs' patients had (1) died of drug overdoses; and (2) sold the drugs prescribed to other drug seeking individuals. [DE 187-7]. Plaintiffs dispute the truth of the information contained in Defendant Whisenand's affidavit.

## I.     The Search Warrant

Defendant Whisenand's probable cause affidavit was presented to a Grant County judge on July 24, 2015, for a search warrant on Plaintiff Economan's home, car, person, and medical practice. The search warrant was granted, and on July 29, 2015, executed by the Attorney

General's Office, DEA, Kokomo Police Department, and the Joint Effort Against Narcotics

("JEAN Team"), which is comprised of officers from the Marion Police Department and the

Grant County Sheriff's Office, and members the Grant County Prosecutor's Office. [DE 187-22,

Page 16:9-15].

## II.    The Civil Forfeiture Proceeding

On the same day that the search warrant was executed, Defendant Garrison Law Firm

filed a Civil Forfeiture Complaint on behalf of the elected Prosecutor of Grant County, Indiana,

Defendant Luttrull. [DE 187-4]. Defendant Garrison Law Firm was retained by Defendant

Luttrull to prosecute civil racketeering and forfeiture cases on behalf of the state on an ongoing

basis. [DE 162-7, Page 7:18-23; DE 162-5, Page 2]. In return for the prosecution of forfeiture

actions on behalf of Defendant Luttrull and the county, Defendant Garrison Law Firm was to

receive 15-30% of the funds seized. [DE 187-12, Page 3]. Included in the contract was a clause

empowering the law firm to determine whether to enter a settlement agreement or proceed to

trial on any of the civil forfeiture matters they were handling without consulting Defendant

Luttrull. [DE 187-12, Page 2:5(b)].

The docket for the Civil Forfeiture Proceeding can be found under Cause No. 27D01-

1507-MI-000102. The Civil Forfeiture Complaint filed by Defendant Garrison Law Firm

accused Plaintiffs of racketeering, money laundering, Medicaid fraud, and drug dealing, among

other criminal offenses. [DE 187-4]. Defendant Whisenand's probable cause affidavit was

included with the Civil Forfeiture Complaint, as was Defendant Cockrell's affidavit, which

Defendant Garrison Law Firm drafted and Defendant Cockrell signed. [DE 187-10, Page 26:17-

23]. The truth of both documents is disputed by Plaintiffs, but these documents were the basis of

the Grant County Judge's decision to issue the Order granting the seizure of Plaintiffs' assets.

According to Plaintiffs' Complaint, more than one million dollars of property was seized and would remain seized for three years. [DE 1, Page 10:52-53].

### III.    The Medical Licensing Board Proceeding

A month later, on August 26, 2015, Defendant Krug sought an emergency suspension of Plaintiff Economan's medical license in front of the Indiana Medical Licensing Board. [DE 1, Page 10:54; DE 187-76]. Defendant Whisenand testified, under oath, that he spoke with Plaintiffs' former employees, pharmacists, local law enforcement, and family members of former patients. [DE 187-76, Page 8]. These interviews yielded allegations that Plaintiffs were an easy source to obtain controlled substances from and that Plaintiffs were prescribing to people who were addicted to and overdosing on controlled substances. [DE 187-76, Page 10]. Defendant Whisenand also alleged that Plaintiff Economan was ordering far more prescription pads than his colleagues, and was also prescribing four to five times more controlled substances than any other family practitioner in the state of Indiana. [DE 187-76, Page 11:8-25; Page 12:1-2, Page 20:17-25]. Plaintiff Economan's medical license was suspended effective August 27, 2015. [DE 1, Page 11].

### IV.    The Criminal Proceeding

The criminal case against Plaintiff was filed on September 13, 2016. *See State of Indiana v. Dale W. Economan*, Cause No. 27D02-1609-F5-112. Plaintiff Economan was charged with seven counts of dealing narcotics, one count of corrupt business influence, and one count of possession of marijuana. *Id.* Defendant Whisenand's and Defendant Cockrell's affidavits were filed as support for the charges. Three years later, on January 15, 2019, Plaintiff Economan pled guilty to possession of marijuana and had the other charges dismissed. [DE 187-75]. As part of his plea agreement, he was required to retire his medical license. [DE 187-75]. On February 1,

2019, the Civil Forfeiture Case was dismissed against Plaintiffs and the seized assets began to be returned. [DE 187-8].

V.    **Plaintiffs' Complaint**

Plaintiffs filed suit against Defendants Luttrull, Krug, Whisenand, Cockrell, Garrison Law Firm, and the United States on January 21, 2020. [DE 1]. Plaintiffs alleged Defendants acted in concert to prosecute Plaintiffs and deprive them of their constitutional rights, and that by doing so, they themselves violated state and federal laws and the constitution. *Id.*

## LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A court must deny a summary judgment motion when the non-moving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

In reviewing a summary judgment motion, the court views the record and all reasonable inferences in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c). Taking the facts in the light most favorable to the non-moving party does not mean that the facts must come only from the non-moving party. *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021). Rather, the facts taken in the light most favorable to the non-moving party may come from the party moving for summary judgment, or from other sources like affidavits, video evidence, and deposition testimony. *Id.*

<u>**DISCUSSION**</u>

### I.  State Law Claims

###   a.  Abuse of Process

Plaintiffs allege that Defendants Luttrull, Krug, Whisenand, Cockrell, the USA, and Garrison Law Firm abused the legal process with the medical licensing board proceeding, the civil forfeiture proceeding, and the criminal proceeding against Plaintiffs. The elements of an abuse of process claim are: (1) an ulterior purpose or motives; and (2) a willful use of process not proper in the regular conduct of the proceedings. *Waterfield v. Waterfield*, 61 N.E.3d 314, 328 (Ind. Ct. App. 2016). Indiana courts have identified the gravamen of abuse of process as not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends. *Id.*

A party must first establish that the defendant employed improper "process" before the court examines the defendant's motivation. *Reichhart v. City of New Haven*, 674 N.E.2d 27, 31 (Ind. App. 1996) (citing *Comfax Corp. v. North American Van Lines*, 638 N.E.2d 476, 485 (Ind. Ct. App. 1994). "A party's intent is irrelevant where his acts are procedurally and substantively proper under the circumstances." *Reichhart v. City of New Haven*, 674 N.E.2d 27, 31 (Ind. App. 1996) (citing *Comfax Corp. v. North American Van Lines, Inc.*, 638 N.E.2d 476, 485 (Ind. Ct. App. 1994)). Relevant here, "a cause of action for abuse of process under Indiana law accrues when the complained of act is committed, and the applicable limitations period is two years." *Brooks v. Harding*, 2001 U.S. Dist. LEXIS 6777, *13 (S. D. Ind. Jan. 12, 2001); *see Strutz v. McNagny*, 558 N.E.2d 1103, 1106 (Ind. Ct. App. 1990); *Cassidy v. Cain*, 251 N.E.2d 852, 856 (Ind. Ct. App. 1969).

Plaintiffs filed their abuse of process claims on January 18, 2020. [DE 1]. This means their claims must have accrued no later than January 18, 2018, to be timely. The Medical Licensing

Board proceedings occurred on August 17, 2015, making the abuse of process claim relating to those proceedings time barred. [DE 1, Page 11:60]. The criminal case against Plaintiff was filed on September 13, 2016, making those abuse of process claims untimely as well. *See State of Indiana v. Dale W. Economan*, Cause No. 27D02-1609-F5-112.

Plaintiff's abuse of process claims relating to the civil forfeiture proceedings are also untimely. These proceedings occurred on July 29, 2015. [DE 187-4]. Plaintiffs, however, argue that the doctrine of continuing wrong applies here. It does not. The doctrine of continuing wrong applies when an entire course of conduct combines to produce an injury and results in the statutory limitations period not beginning until the end of the continuing wrongful act. *Serino v. Hensley*, 2012 U.S. Dist. LEXIS 171476, *14-16 (S.D. Ind. Dec. 4, 2012); *see Johnson v. Blackwell*, 885 N.E.2d 25, 31 (Ind. Ct. App. 2008)). Indiana courts have found the doctrine of continuing wrong to be appropriately applied in two different scenarios.

> The first includes cases in which the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred. In such cases, recovery may be had for all violations, on the theory that they are part of one, continuing violation. The second type of continuing violation is one in which an initial violation, outside the statute of limitations, is repeated later; in this case, each violation begins the limitation period anew, and recovery may be had for at least those violations that occurred within the period of limitations.

*State ex rel. Peterson v. State*, 888 N.E.2d 292, 299 (Ind. Ct. App. 2008) (citing *Parker v. Schilli Tramp.,* 686 N.E.2d 845, 849 (Ind. Ct. App. 1997), *trans. denied* 690 N.E.2d 1183 (Ind. 1997)). The doctrine of continuing wrong "does not prevent the statute of limitations from beginning to run when the plaintiff learns of facts that should lead to the discovery of his cause of action, even if the relationship with the tortfeasor continues beyond that point." *Johnson*, 885 N.E.2d 25, 31; *see Pain Ctr. of SE Ind. LLC v. Origin Healthcare Sols. LLC,* 893 F.3d 454, 463 (7th Cir. 2018).

The doctrine of continuing wrong does not apply here. First, there was only one forfeiture order and event where Plaintiffs' assets, including financial accounts, a vehicle, and other property, were seized on July 29, 2015. [DE 1, Page 9:49]. There are no additional forfeiture events that would tie this original violation to a later date, such that the statute of limitations could be tolled or inapplicable. Plaintiff even agreed that he was aware his assets had been seized on July 29, 2015. [DE 189, Page 24:61]. Plaintiff waited more than two years to bring suit. As a result, his abuse of process claim for the civil forfeiture proceeding is time-barred.

Plaintiffs' abuse of process claims do not survive summary judgment. Defendants Luttrull's, Krug's, Whisenand's, Cockrell's, the USA's, and Garrison Law Firm's respective Summary Judgment Motions on Plaintiff's abuse of process claims are GRANTED.

### b. Malicious Prosecution

Plaintiffs allege Defendants Lutrull, Krug, Whisenand, Cockrell, the USA, and the Garrison Law Firm maliciously prosecuted them when their assets were seized pursuant to the civil forfeiture proceedings. [DE 1]. Forfeiture actions have characteristics of both civil and criminal actions, however, a forfeiture is civil in nature. *Katner v. State*, 655 N.E.2d 345, 347 (Ind. 1995). Civil forfeitures authorize legal action against inanimate objects for participation in alleged criminal activity, regardless of whether the property's owner is proven guilty of a criminal offense—or even charged with one. *Serrano v. State*, 946 N.E.2d 1139, 1140 (Ind. 2011). A conviction on the underlying criminal activity is not a prerequisite for forfeiture, and instead, the State need only show that facts supporting forfeiture exist "by a preponderance of the evidence." *Katner v. State*, 655 N.E.2d 345, 347-348 (Ind. 1995).

Here, Plaintiff's property was seized under the Indiana civil forfeiture statute, § 34-24-2-1, which states:

> The prosecuting attorney in a county in which the violation occurs may bring an action under this section to enjoin a violation of IC 35-45-6-2 (corrupt business influence). An action under this section may be brought in any circuit or superior court in a county in which the violation occurs. If the court finds by a preponderance of the evidence that a violation of IC 35-45-6-2 has occurred, the court may…

IC 32-24-2-1. Defendants were only permitted to seize Plaintiff's property if they had a preponderance of the evidence that Plaintiff had violated IC 35-45-6-2 by committing one of the defined acts. "A person…

> (1) who has knowingly or intentionally received any proceeds directly or indirectly derived from a pattern of racketeering activity, and who uses or invests those proceeds or the proceeds derived from them to acquire an interest in property or to establish or to operate an enterprise;
> (2) who through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an enterprise; or
> (3) who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity;

commits corrupt business influence…under IC 35-45-6-2." IC 35-45-6-2. A "preponderance of the evidence" is evidence that "convinces you most strongly of its truthfulness," is of "greater weight," or is "more probably true than not true…" *Gambill v. State*, 675 N.E.2d 668, 676 (Ind. 1996).

Plaintiff's claim is more appropriately analyzed as a claim alleging the wrongful use of civil proceedings, not malicious prosecution, because malicious prosecution refers to the wrongful prosecution of a criminal action. *Willsey v. People's Federal Sav. & Loan Ass'n.*, 529 N.E.2d 1199, n.4 (Ind. Ct. App. 1988); *Wong v. Tabor*, 422 N.E.2d 1279, 1281, n.2 (Ind. Ct. App. 1981). To succeed on a claim for the wrongful use of civil proceedings, a plaintiff must show (1) the defendant instituted, or caused to be instituted, an action against the plaintiff; (2) the

defendant acted maliciously in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor. *Willsey v. Peoples Federal Savings & Loan Ass'n of East Chicago*, 529 N.E.2d 1199, 1205 (Ind. Ct. App. 1988).

Here, Defendants Luttrull and the Garrison Law Firm filed the proceeding in court, and Defendants Whisenand, Cockrell, and Krug investigated Plaintiffs and drafted the affidavits used in the proceedings. This satisfies the first element, requiring that Defendants instituted the civil forfeiture proceeding. [DE 187-4]. And, because Defendant's Whisenand's and Cockrell's probable cause affidavits were used in support of the forfeiture complaint, the United States has conceded it did in-fact have a role in instituting the proceedings. [DE 171, Page 8-9]. Plaintiffs also easily satisfy the fourth element, because the civil forfeiture proceedings against Plaintiffs' were dismissed with prejudice on February 1, 2019. [187-8; DE 72, Page 28]. This leaves only two elements for Plaintiffs to show: that Defendants acted maliciously, and that Defendants lacked probable cause in instituting civil forfeiture proceedings against Plaintiffs.

Malice may be inferred from a total lack of probable cause necessary to bring suit. *Ingram v. Diamond Equip., Inc.,* 118 N.E.3d 1, 8 (Ind. Ct. App. 2018) (citing *Kroger Food Stores, Inc. v. Clark*, 598 N.E.2d 1084, 1087 (Ind. Ct. App. 1992)), *trans. denied*. Personal hatred or a desire for revenge is not necessary to establish malice, though neither is such evidence precluded from consideration. *Ingram v. Diamond Equip., Inc.,* 118 N.E.3d 1, 8 (Ind. Ct. App. 2018) (citing *Satz v. Koplow*, 397 N.E.2d 1082, 1085 (Ind. Ct. App. 1995)). The failure of the defendant, in the original suit giving rise to the action for malicious prosecution, to make a suitable and reasonable inquiry into the underlying facts is not enough in itself to sustain an action for malicious prosecution. *Ingram v. Diamond Equip., Inc.,* 118 N.E.3d 1, 8 (Ind. Ct. App.

2018) (citing *Mirka v. Fairfield of Am., Inc.*, 627 N.E.2d 449, 451-452 (Ind. Ct. App. 1994), *trans denied*).

To determine if Defendants had a preponderance of evidence that Plaintiff committed the statutory offense of corrupt business influence, the Court will now turn to Defendants' Complaint for Civil Forfeiture, which was written and filed by Garrison Law Firm. [DE 187-4]. The Civil Forfeiture Complaint alleged that Plaintiff Economan constructed and operated a corrupt business enterprise through a pattern of racketeering, committed the offenses of corrupt business influence, Medicaid fraud and money laundering, and violated IC 35-45-2-1, and that Defendants Whisenand's and Cockrell's affidavits, attached to the Complaint, contained "detailed proof" of this. [DE 187-4]. Again, Plaintiffs allege both affidavits contain lies and untruthful information. [DE 1, Page 11:64-65].

Beginning with Defendant Whisenand's affidavit, his was written with Defendant Krug's assistance and reviewed by Defendant Luttrull. [DE 187-9, Page 105:1-12; DE 182-1, Page 25:12-22, Page 28:21-24; DE 182-4, Page 49:2-25; DE 187-13, Page 16:21-25]. In his deposition, Defendant Whisenand admitted he had no evidence, let alone probable cause, that Plaintiffs committed the criminal offense of corrupt business influence, despite the allegations and conclusory statements in his affidavit. [DE 187-21, Page 36:8-17]. Defendant Whisenand also admitted he had absolutely no evidence that Plaintiff committed Medicaid fraud when he swore and affirmed to the same. [DE 187-21, Pages 45:7-46:1-6, Page 131:3-16]. Finally, Defendant Whisenand admitted he had no evidence that Plaintiff Economan was involved in money laundering. [DE 187-21, Pages 37:23-38:3]. Defendant Whisenand also included "INSPECT" data in his affidavit, despite his and Defendant Cockrell's joint knowledge that

"INSPECT" data was not permissibly used as evidence. [DE 187-9, Page 113:7-9, 149:10-12, Page 165:23-25; DE 187-21, Pages 19:1–21:17; DE 187-22, Page 32:19-24].

Defendant Cockrell's affidavit fares no better. Although her affidavit was prepared by Defendant Garrison Law Firm, Defendant Cockrell still signed it, affirming the truthfulness of its contents. [DE 187-10, Page 26:15-20]. Her affidavit is focused entirely on the bank accounts that allegedly contained proceeds from Plaintiffs' criminal enterprise. However, Defendant Cockrell has too since admitted her affidavit was inaccurate in stating she had good cause to believe that the accounts seized from Plaintiff contained significant funds from a criminal enterprise. [DE 187-10, Page 64:12-23]. Of the eight accounts seized from Plaintiff, Defendant Cockrell, admittedly, had good cause to believe that *at most* two of the accounts contained significant proceeds of a criminal enterprise. [DE 187-10, Page 72].

The evidence demonstrates that Defendants did not have probable cause, let alone a preponderance of evidence, that Plaintiffs committed the offense of corrupt business influence, or any other crime, which would make a civil forfeiture proceeding appropriate. [DE 187-9, 149:10-12, Page 165:23-25; DE 187-10, Page 64:12-23; DE 187-21, Pages 19:1-21:17; Page 36:8-17, Page 37:3-16, Pages 37:23-38:3; Pages 45:7-46:1-6; DE 187-22, Page 32:19-24]. Because Defendants lacked probable cause when instituting the civil forfeiture proceedings, and because malice can be inferred from "a total lack of probable cause" to bring suit, Plaintiffs have satisfied both remaining elements of their wrongful use of civil proceedings claim. *See Ingram v. Diamond Equip., Inc.,* 118 N.E.3d 1, 8 (Ind. Ct. App. 2018).

Defendants Luttrull's, Krug's, Whisenand's, Cockrell's, the USA's, and the Garrison Law Firm's respective Summary Judgment Motions on the Wrongful Use of Civil Proceedings Claim are all DENIED, and instead are GRANTED in favor of Plaintiffs. Additionally,

Plaintiffs' Cross-Motion for Partial Summary Judgment against Defendant Tonda Cockrell for malicious prosecution (the wrongful use of civil proceeding claim) [DE 198], is GRANTED, which is duplicative of the relief granted above.

## II.  42 U.S.C. Section 1983 Claims and State Actors

42 U.S.C. Section 1983 provides a vehicle to sue those who abuse state authority in a way that violates federal law. *See* 42 U.S.C. § 1983. An action under Section 1983 "requires a showing that the plaintiff was deprived of a right secured by the Constitution or federal law, [and] ... the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). The statute "does not provide a remedy for abuses that do not violate federal law" nor does it create substantive rights. *Padula v. Leimbach,* 656 F.3d 595, 600 (7th Cir. 2011) (quoting *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997)).

"Section 1983 addresses only *state* action." *L.P. v. Marian Catholic High School*, 852 F.3d 690, 697 (2017) (emphasis in original). The statute expressly includes a requirement that the defendant act under color of law. *See* 42 U.S.C. § 1983; *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001); *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 930-35, (1982). To qualify as "under color of law," an action must be "fairly attributable to the State." *Lugar*, 457 U.S. 922, 937. "What is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity," and courts may consider any relevant factual matter. *Brentwood Acad.*, 531 U.S. 288, 295 (citation omitted). If there is such a close nexus between the state and the challenged action that seemingly private behavior reasonably may be treated as that of the state itself, then the actor will be found to have been acting under color of state law. *Hallinan v. FOP*, 570 F.3d 811, 816 (7th Cir. 2019) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

13

### A.  State Defendants Luttrull and Krug as State Actors

Defendant Luttrull, as the former Grant County Prosecutor employed by the state of Indiana and carrying out official duties on the state's behalf, is a state actor. Defendant Krug, the former Deputy Director of the Medicaid Fraud and Control Unit of the Office of the Indiana Attorney General, similarly employed by the state of Indiana and carrying out official duties on the state's behalf, is also a state actor. Because Defendants Luttrull and Krug are both state actors, both may be liable for Plaintiffs' Section 1983 claims.

### B.  Private Defendant Garrison Law Firm as a State Actor

The Seventh Circuit has recognized two circumstances in which private citizens may act under color of state law. *Loubser v. United States*, 606 F. Supp. 2d 897, 912 (N. D. Ind. 2009) (citing *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003)). First, a private citizen may act under color of state law when the state cloaks him in authority through employment or another agency relationship. *Loubser*, 606 F. Supp. 2d at 912 (citing *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003)). Second, a private citizen may act under color of state law when he conspires or acts in concert with state officials to deprive another person of his or her civil rights. *Loubser*, 606 F. Supp. 2d at 912 (citing *Case*, 327 F.3d at 567). "State action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad.*, 531 U.S. 288, 295 (citation omitted).

Relevant to this case, the Supreme Court has held that private conduct takes on the color of law when the state delegates a public function to a private entity. *Hallinan v. FOP*, 570 F.3d 811, 815-816 (7th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 56-57 (1988)). Applying this in *Camm*, the Seventh Circuit found private investigators were acting under color of state law after

14

the elected prosecutor hired them to investigate a crime scene, because the prosecutor delegated a public function to private entities. *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019).

Defendant Garrison Law Firm was founded by Mr. James Garrison and his brother in 2005. [DE 162-5, Page 1]. After its formation, the law firm began handling racketeering and forfeiture cases for prosecutor's offices across Indiana, including Grant County. [DE 162-5, Pages 1-2]. Mr. James Garrison estimated that on average 25-40% of his practice were civil forfeiture cases on behalf of Indiana prosecutors, with Defendant Garrison Law Firm under contract as independent counsel for the prosecutor in each case. [DE 162-7, Page 7:18-23; DE 162-5, Page 2]. Specifically, Defendant Garrison Law Firm agreed to "provide consulting and legal assistance to local police and other law enforcement authorities in furtherance of criminal investigations against persons and other legal entities engaged in racketeering activity, as defined by I.C. 35-45-6-1 et seq., and shall prosecute civil racketeering actions pursuant to I.C. 34-24-2, et seq." [DE 162-5, Page 2].

For the purposes of these proceedings, this Court finds Defendant Garrison Law Firm to be a state actor. First, Defendant Garrison Law Firm acted under color of state law by drafting legal documents for official legal proceedings on the state's behalf using information provided by state actors. Josh Taylor, an employee of Garrison Law Firm who was involved in the investigation wrote in his affidavit, "In initiating and prosecuting the civil racketeering action against Economan, Garrison Law was acting on behalf of its client James Luttrull as the Prosecutor who approved the filing of the action." [DE 162-6, Page 3]. This emphasizes the firm's significant involvement in the investigation against Plaintiff, and that the firm was responsible for initiation of the civil forfeiture proceeding.

There is also evidence of "a concerted effort between a state actor and that individual," because Defendant Garrison Law Firm signed a contract outlining their participation in the state's prosecution of the civil forfeiture proceedings. [DE 162-5, Page 1-2; DE 187-12]. Further, civil forfeiture proceedings against private citizens are a "traditionally public function" that Defendant Luttrull delegated to a "private entity." *Hallinan*, 570 F.3d at 815-816 (citing *West*, 487 U.S. at 56-57; *See Camm*, 937 F.3d at 1105. For these reasons, Defendant Garrison Law Firm was a state actor and may be liable under Section 1983.

### C.  Federal Defendants Whisenand and Cockrell as State Actors

Typically, claims against federal officers may not proceed under Section 1983, because the statute applies only to persons acting under color of *state* law. *Clinkenbeard v. Auten*, 2024 U.S. App. LEXIS 14670, *3 (7th Cir. 2024). Federal agents may be liable in an individual capacity for violations of constitutionally protected rights, as discussed in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In this case, Judge Lee dismissed the *Bivens* claims against Defendants Whisenand and Cockrell explaining "Plaintiffs' arguments are an attempt to fit a square peg into a round hole and permitting them to proceed against Cockrell and Whisenand for alleged constitutional torts under the facts alleged would result in an improper expansion of *Bivens*." [DE 72, Page 46].

The Seventh Circuit has recognized, however, "it is assumed that a § 1983 action can lie against federal employees—as it can against private individuals—if they conspire or act in concert with state officials to deprive a person of h[is] civil rights under color of state law." *Hill v. Hornback*, 2023 U.S. Dist. LEXIS 24521, *5 (S. D. Ind. Feb. 14, 2023) (citing *Case v. Milewski*, 327 F.3d 564, 567 (7th Cir. 2003)); *see Alexander v. Freeman*, 2011 U.S. Dist. LEXIS 39995, *14 (S. D. Ind. Apr. 12, 2011); *Beechwood Restorative Care Cent. v. Leeds*, 436 F.3d

147, 154 (2nd Cir. 2006). To establish a conspiracy under Section 1983, the plaintiff must show (1) that there was an express or implied agreement among defendants to deprive plaintiff of constitutional rights and (2) that there were actual deprivations of those rights in the form of overt acts in furtherance of the agreement. *Fields v. Rozzi*, 2020 U.S. Dist. LEXIS 158546, *7 (N. D. Ind. Aug. 31, 2020) (quoting *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015)). Because conspiracies are often carried out clandestinely and direct evidence is rarely available, plaintiffs may use circumstantial evidence—but such evidence cannot be speculative. *Beaman*, 776 F.3d at 511 (citing *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003)). Summary judgment should not be granted if there is evidence from which a reasonable jury could infer the existence of a conspiracy. *Beaman*, 776 F.3d 500, 510.

Defendant Whisenand began meeting with representatives from the Grant County Prosecutor's Office about the case involving Plaintiffs in early 2015. [DE 187-21, Page 4:10-20]. During at least one of these meetings, Defendant Krug and Defendant Whisenand discussed the contents of probable cause affidavit, and at another point, Defendant Krug left line-by-line edits and feedback in his affidavit. [DE 182-4, Pages 120-184, Page 28:21-24, Page 49:2-25; DE 187-9, Page 105:1-12; DE 182-1, Page 25:12-22]. In fact, at the July of 2015 meeting, Defendant Whisenand offered his affidavit up for comments, asserting, "…I gave you guys a copy of that affidavit. If you kind of go through it, and think that I need to add something in there, as far as to help you guys…" [DE 187-84, Page 16]. Defendant Whisenand's probable cause affidavit was also reviewed by Defendant Luttrull. [DE 187-13, Page 16:21-25]. Defendant Whisenand has since admitted he had no evidence or probable cause that Plaintiffs committed the criminal offenses of corrupt business influence, Medicaid fraud, or money laundering, despite the

allegations and conclusory statements in his affidavit. [DE 187-21, Page 37:3-16, Page 45:7–46:6].

Defendant Cockrell also began meeting with Defendant Whisenand and the Grant County Prosecutor's Office in early 2015. [DE 187-21, Page 4:10-20]. Her affidavit was prepared by Defendant Garrison Law Firm, but she still affirmed the truthfulness of the information by signing it under oath. [DE 187-10, Page 26:15-20]. Defendant Cockrell reported that Defendant Garrison Law Firm employee Josh Taylor brought the affidavit to the execution of the search warrant at EAFM, and that she spent a "few minutes" speaking with that employee and reading the affidavit before signing it. [DE 187-22, Pages 17-23]. Defendant Cockrell has since admitted it was inaccurate to state she had good cause to believe that each of the accounts seized from Plaintiff contained significant funds from a criminal enterprise. [DE 187-10, Page 64:12-23].

Because the Defendants met several times to discuss the case against Plaintiffs, and because they jointly wrote the untruthful affidavits which were provided to the Grant County Judge in support of Defendant's request that Plaintiffs' assets be seized, there is sufficient evidence of a conspiracy between Defendants Luttrull, Krug, Garrison Law Firm, Whisenand and Cockrell. Defendants Luttrull, Krug, and Garrison Law Firm, who have all been found to be state actors, may be liable for Plaintiffs' Section 1983 claims because they were acting under color of state law. Defendants Whisenand and Cockrell may be liable for Plaintiffs' Section 1983 claims under a theory of conspiracy.

### III. 42 U.S.C. Section 1983 Claims

#### A. Violations of the 4th Amendment

Plaintiffs allege that Defendants Whisenand's and Cockrell's affidavits, which Defendants Krug, Luttrull, and Garrison Law Firm helped to prepare, were devoid of any real probable cause, contained untruthful information, and omitted material facts.

The Fourth Amendment requires that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before commencing a search or seizure. *United States v. Mullins*, 803 F.3d 858, 861 (7th Cir. 2015). No warrant shall issue unless there is probable cause, as typically set forth in a warrant affidavit. *See* U.S. Const. Amend. IV. Probable cause is established when, considering the totality of the circumstances, the issuing judge can make a practical, common-sense determination that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). "In determining the sufficiency of a warrant affidavit," a court must "focus on the totality the information presented to the" judge who issued it. *Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1056-57 (7th Cir. 2018).

"A warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012) (quoting *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003)). To determine whether the false statements are material to the probable cause finding, the alleged false statements are eliminated from the affidavit, and the resulting affidavit is reviewed for probable cause. *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019) (citing *Betker v. Gomez*, 692 F.3d 854, 862 (7th Cir. 2012)). While an officer must have

"some evidence" of intent to satisfy probable cause, *BeVier v. Hucal*, 806 F.2d 123, 126 (7th Cir. 1986), an officer need not have "the same time of specific evidence of each element of the offense as would be needed to support a conviction." *Dollard v. Whisenand*, 946 F.3d 342, 355 (7th Cir. 2019) (quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)).

The Court begins its analysis with Defendant Whisenand's affidavit used for the civil forfeiture order and search warrant. It was written with the assistance of Defendant Krug and was reviewed by Defendant Luttrull. [DE 187-9, Page 105:1-12; DE 182-1, Page 25:12-22; DE 182-4, Pages 120-184, Page 28:21-24, Page 49:2-25; DE 187-13, Page 16:21-25]. Defendant Whisenand has since admitted he had no evidence, let alone probable cause, Plaintiffs had committed the criminal offenses of corrupt business influence, Medicaid fraud, or money laundering, despite the allegations and conclusory statements in his affidavit. [DE 187-21, Pages 45:7-46:6, Page 37:3-16, Pages 37:23-38:3]. Removing the allegations of corrupt business influence, Medicaid fraud, money laundering, leaves only allegations involving "INSPECT" data, and summaries of interviews of Plaintiffs' former colleagues and patients, and family members of former patients. [DE 187-7].

"INSPECT" data, as discussed above, is not appropriate to use as evidence. The interview summaries of Plaintiffs' former colleagues and patients, and family members of former patients, are nothing more than allegations, which does not put forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. *See United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003). Eliminating the statements Defendant Whisenand admitted he had no evidence to support, and removing the "INSPECT" data, strips his affidavit of details essential to the finding of probable cause.

Defendant Whisenand has a second affidavit, [DE 187-77], which is almost identical to the first affidavit, [DE 187-6], with the addition of few paragraphs citing case law, and was used in the criminal case. Defendant Luttrull also reviewed and approved the final draft of this affidavit. [DE 187-13, Page 17:2-6]. Because the contents of this affidavit are largely the same as the first, this affidavit suffers the same defects, and eliminating the statements Defendant Whisenand admitted he had no evidence for, and removing the "INSPECT" data, strips this affidavit of details essential to the finding of probable cause, as well.

Moving to Defendant Cockrell's affidavit, hers was prepared by Defendant Garrison Law Firm but still signed by Defendant Cockrell. [DE 187-10, Page 26:15-20]. Defendant Cockrell has since admitted that even though she knew it was going to be presented to a court, it was inaccurate to state she had good cause to believe each of the accounts seized from Plaintiff contained significant funds from a criminal enterprise. [DE 187-10, Page 64:12-23, Page 72, Page 53:4-7]. Here, removing the allegations that Defendant Cockrell admits she did not have good cause to assert or affirm leaves almost nothing. [DE 187-6]. Defendant Cockrell's untruthful statements were material to the probable cause finding, and her affidavit would not have established probable cause without those statements.

Plaintiffs' Motion for Summary Judgment on the Fourth Amendment Claims is GRANTED. Defendants Luttrull, Krug, and Whisenand are liable under Section 1983 for violating Plaintiffs' Fourth Amendment rights by drafting, reviewing, and ultimately submitting an affidavit to a court which they knew they did not have evidence to support. Defendants Garrison Law Firm and Cockrell are also liable under Section 1983 for violating Plaintiffs' Fourth Amendment rights by drafting, reviewing, and ultimately submitting an affidavit to a court which they knew they did not have evidence to support.

### B. Violations of the 5th Amendment

Plaintiffs' sparse briefing on the matter seems to allege that the fabrication of evidence in the affidavits resulted in an unlawful seizure of Plaintiffs. [DE 195, Pages 14-15]. Plaintiffs do not elucidate on or provide any additional detail for their claim, nor do they clarify whether they bring a substantive or procedural due process claim.

A substantive due process claim may proceed where the plaintiff establishes a deprivation of a right that is "so rooted in the traditions and conscience of our people as to be ranked fundamental." *Smith v. Garland*, 103 F.4th 1244, 1256 (7th Cir. 2024) (citing *Reno v. Flores*, 507 U.S. 292, 303 (1993)) (citation and quotation marks omitted). Plaintiffs must provide a "'careful description' of the asserted fundamental liberty interest." *Smith*, 103 F.4th 1244, 1256 (citing *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal citations omitted)). Anything less than a careful description is insufficient, because "extending constitutional protection to an asserted right or liberty interest ... place[s] the matter outside the arena of public debate and legislative action." *Washington*, 521 U.S. 702, 720. Here, because Plaintiffs have not provided a "careful description" of the "asserted fundamental liberty interest," they have not established a substantive due process claim.

For a procedural due process claim to survive summary judgment, a plaintiff must first establish (1) a deprivation of a protected liberty or property interest, and then establish (2) the deprivation occurred without due process. *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773 (7th Cir. 2021) (citing *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)). The Seventh Circuit has repeatedly held that a defendant's due process rights are violated by the creation of fabricated evidence by state officials which is later used to deprive the defendant of liberty in some way. *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014);

*Dominguez v. Hendley,* 545 F.3d 585, 589 (7th Cir. 2008). Fabricated testimony is testimony that is made up; it is false. *Fields,* 740 F.3d at 1110. A prosecutor who engages in the preindictment fabrication of evidence is not protected by absolute immunity, nor are they entitled to qualified immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 272; *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012).

Here, Plaintiffs allege that Defendants fabricated evidence which resulted in their unlawful seizure. In Defendant Whisenand's deposition, he admitted to including conclusory statements in his affidavit that were not supported by evidence and which did not create probable cause. [DE 187-21, Page 36:8-17]. Defendant Whisenand also admitted he had absolutely no evidence that Plaintiff had committed Medicaid fraud when he swore and affirmed to the same in his affidavit. [DE 187-21, Pages 45:7–46:6]. Finally, Defendant Whisenand admitted he had no evidence that Plaintiffs were involved in money laundering. [DE 187-21, Pages 37:23-38:3]. Each of these statements, without any evidence to back them up, are fabricated statements. Under *Fields*, these are violations of the Fifth Amendment. *Fields*, 740 F.3d at 1114.

Similarly, Defendant Cockrell has admitted she did not have good cause to believe that each of the accounts seized from Plaintiff contained significant funds from a criminal enterprise, and it was untrue to say she did in her affidavit. [DE 187-10, Page 64:12-23, Page 72; DE 187-22, Page 27:3-24]. Defendant Cockrell's affidavit was prepared by Defendant Garrison, but Defendant Cockrell still signed it. [DE 187-10, Page 26:15-20]. Here again, these are violations of the Fifth Amendment. *Fields*, 740 F.3d at 1114.

Plaintiffs' Motion for Summary Judgment on the Fifth Amendment Claims is GRANTED. Defendants Luttrull, Krug, and Whisenand are liable under Section 1983 for violating Plaintiffs' Fifth Amendment rights by drafting, reviewing, and ultimately submitting an

affidavit to a court containing unsupported information which was then used to deprive Plaintiffs of their property. Defendants Garrison Law Firm and Cockrell are also liable under Section 1983 for violating Plaintiffs' Fifth Amendment rights by drafting, reviewing, and ultimately submitting an affidavit to a court containing unsupported information which was then used to deprive Plaintiffs of their property.

### C. Violations of the 8th Amendment

The parties rarely, if at all, reference the Eighth Amendment claim in their briefs. [DE 199, Page 17, f.4]. During the motion to dismiss briefing, Judge Lee found Plaintiffs failed to state an Eighth Amendment claim against Defendants Whisenand, Cockrell, and the USA.

> … Plaintiffs state that they are seeking redress for "violations of their Fourth, Fifth and Fourteenth Amendment rights." Complaint, p. 3, ¶ 8; p. 16, ¶¶ 90, 91. In one paragraph of the Complaint (out of a total of 146), the Plaintiffs state that the Defendants "deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, Eighth, and Fourteenth Amendments[.]" Id., p. 20, ¶ 106 (italics added). This is the only time the Complaint mentions the Eighth Amendment and it includes no allegations whatsoever regarding any Eighth Amendment claim. And as the Defendants point out, the Plaintiffs' response briefs likewise do not make any reference to such a claim. The Defendants state that "Plaintiffs seemingly abandoned any Eighth Amendment" claim. The Court believes it is more likely that the inclusion of the word "Eighth" in paragraph 106 was merely a scrivener's error, and that the Plaintiffs never intended to state a claim under the Eighth Amendment. Either way, they don't.

[DE 72, Page 5, n.1]. This Court agrees; Plaintiffs' bare allegations were insufficient to state an Eighth Amendment claim against Defendants Whisenand, Cockrell, and the USA. This leaves only Defendants Luttrull, Krug, and Garrison Law Firm.

It is well-established that the "primary purpose" of the Cruel and Unusual Punishment Clause of the Eighth Amendment "has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes ...." *Powell v.*

*Texas*, 392 U.S. 514, 531-32 (1968). Here, a medical doctor with the ability to prescribe narcotics was charged with dealing a controlled substance and corrupt business influence. [DE 187-75]. These charges were dismissed only because he voluntarily pled guilty to possessing marijuana and, as punishment, had to retire his medical license. *Id.* This is simply not the type of situation that implicates the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Hamilton v. Floyd Cty. Ind.*, 2018 U.S. Dist. LEXIS 167577, *32-33 (S. D. Ind. Sept. 28, 2018). Defendants Whisenand's, Cockrell's, Luttrull's, Krug's, and Garrison Law Firm's Motions for Summary Judgment are GRANTED on Plaintiffs' Eighth Amendment claims.

### D.  Violations of the 14th Amendment

#### a.  Class-of-One Claim under the Fourteenth Amendment

Plaintiffs bring a class-of-one claim under the Fourteenth Amendment Equal Protection Clause alleging they were singled out and suffered violations of constitutionally protected rights, embarrassment, severe emotional distress, loss of employment and medical licensing, incurred legal expenses, asset forfeiture, and diminished reputation. [DE 1, Page 20:106-107]. Under the Fourteenth Amendment's Equal Protection Clause, a plaintiff who is not a member of a "protected class" may nonetheless bring a claim under the "so-called 'class-of one' theory." *Fares Pawn, LLC v. Ind. Dep't. of Fin. Insts.*, 755 F.3d 839, 841 (7th Cir. 2014). To succeed under this theory, a plaintiff must show (1) that he has been "intentionally treated differently from others similarly situated" and (2) that there is "no rational basis for the difference in treatment." *Fares Pawn, LLC v. Ind. Dep't. of Fin. Insts.*, 755 F.3d 839, 845 (citing *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

To be similarly situated, plaintiff and "his comparators must be prima facie identical in all relevant respects or directly comparable … in all material respects." *U.S. v. Moore*, 543 F.3d

891, 896 (7th Cir. 2008) (internal quotations and citations omitted). For the second criteria, Courts consider whether "a conceivable rational basis for the difference in treatment" exists. *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 770-771 (7th Cir. 2021) (citing *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013)). The rational basis need not even be "the actual justification." *145 Fisk*, 986 F.3d at 770-771 (citing *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir. 2013)). "[A]ny reasonably conceivable state of facts that could provide a rational basis" will suffice. *145 Fisk*, 986 F.3d at 770-771 (7th Cir. 2021); *see Scherr v. City of Chicago*, 757 F.3d 593, 598 (7th Cir. 2014). "It is only when courts can hypothesize no rational basis for the action that allegations of animus come into play." *145 Fisk*, 986 F.3d at 770-771 (citing *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 547 (7th Cir. 2008)).

In this matter, Defendants clearly had a rational basis for instigating the criminal investigation of Plaintiffs. As early as 2013, Defendant Krug became aware of consumer complaint from a patient's mother about Plaintiffs. [DE 182-4, Page 11:2-10]. In December of 2013, Defendant Cockrell received reports that Plaintiffs were ordering large numbers of prescriptions for controlled substances. [DE 187-10, Page 5:2-11]. Around this same time, Defendant Cockrell's colleagues made controlled buys of narcotics from Plaintiffs' patients. [DE 187-10, Pages 5:19-6:1]. In February of 2014, Defendants Cockrell and Whisenand interviewed the printing company who reported the significant orders for controlled substances. [DE 187-10, Page 6:17-22]. Defendants Cockrell and Whisenand also interviewed pharmacies who had reported concerns about Plaintiffs' prescribing habits. [DE 187-10, Page 7:9-14]. It was only after these interviews with the printing company and the pharmacies occurred that the criminal investigation and case were initiated. [DE 187-10, Page 7:14-17]. Furthermore, Plaintiffs have

not identified a similarly situated individual who was treated differently for the same alleged violation.

Plaintiffs cannot succeed on their class-of-one claim because they have failed to establish the elements. Defendants Whisenand's, Cockrell's, Luttrull's, Krug's, and Garrison Law Firm's Motions for Summary Judgment are GRANTED on Plaintiffs' Fourteenth Amendment Class-of-One claims.

### E. The Doctrines of Absolute and Qualified Immunity

#### a. Absolute Immunity

"A prosecutor is absolutely immune from suit for all actions and decisions undertaken in furtherance of his prosecutorial duties." *Dobbie v. City of Bremen Police Dep't*, 2018 U.S. Dist. LEXIS 164243, *10 (N. D. Ind. Jul. 18, 2018) (quoting *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012) (citing *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976)). "To decide whether absolute immunity attaches to a particular kind of prosecutorial activity, one must take account of the 'functional' considerations discussed above." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)). "The analysis hinges on whether the prosecutor is, at the time, acting as an officer of the court, as well as on his action's relatedness to the judicial phase of the criminal process." *Fields*, 672 F.3d at 510 (citing *Imbler*, 424 U.S. at 430, 431 n. 33). The immunity recognizes "a difference between the advocate's role in evaluating evidence and interviewing witnesses" while preparing for trial, "and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested[.]" *Buckley*, 509 U.S. at 273. Relevant here, "a prosecutor does not enjoy absolute immunity before he has probable cause." *Whitlock v. Brueggemann*, 682 F.3d 567, 579 (7th Cir. 2012).

Here, the only prosecutor was Defendant Luttrull. In his deposition when asked when he became involved in the investigation against Plaintiffs, he responded, "before the July 2015 meeting," and explained that there had been at least one meeting prior to that. [DE 182-3, Page 16:18-25, Page 17:9-18]. Defendant Whisenand describes a meeting "before search warrants have been requested" or executed, still within the investigation stage of the case, where Defendant Luttrull was present. [DE 182-1, Page 25:16-25, Page 26:8-25]. Defendant Whisenand asked him if anything needed to be added to his affidavit. [DE 182-1, Page 25:16-25].

The July 2015 meeting was recorded, and Plaintiffs provided a transcript of that meeting. [DE 187-84]. The discussion at this meeting makes it clear that at this point the investigation was still ongoing. In fact, Defendant Luttrull was still unsure how to proceed with the case and asked Defendant Whisenand how he should charge the Plaintiffs' behavior.

> I've talked to prosecutors who have had these cases. I've not had one of these cases, to make a criminal charge, the aggregate is simply corroboration that there's a problem here. I can't charge him with a crime for ordering an astounding number of prescription pads, or dispensing more medicine than those hospitals. So, how do I ... What are you thinking about in terms of the discreet facts that I can take that information and support this charge, this violation, this crime?

[DE 187-84, Page 9]. After the search warrant had been executed and the civil forfeiture had been filed, but still before criminal charges were filed, Defendant Luttrull specifically instructed Defendants Whisenand and Cockrell to conduct certain additional interviews and investigate other specific items. [DE 187-10, Page 32:15-33:1]. Defendant Luttrull does not appear, to this Court, to have been acting in a purely prosecutorial manner. He seems to have been intimately involved in the investigation from early-on, even going so far as to direct it at certain points.

Under both *Buckley* and *Whitley*, Defendant Luttrell cannot be afforded absolute immunity. *See Buckley*, 509 U.S. at 273; *Whitlock*, 682 F.3d at 579.

### b. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ridener v. Ind. Dep't of Child. Servs*., 2023 U.S. Dist. LEXIS 146024, *22-24 (S. D. Ind. Aug. 21, 2023) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). State actors "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Pierner-Lytge v. Hobbs*, 60 F.4th 1039, 1044 (7th Cir. 2023). "If either inquiry is answered in the negative, the defendant official is entitled to summary judgment." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) (emphasis omitted). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

"To counter the defense of qualified immunity, a plaintiff must show that the constitutional right at issue was clearly established at the time of the alleged violation." *Greene v. Teslik*, 2023 U.S. App. LEXIS 5082, 2023 WL 2320767, at *3 (7th Cir. Mar. 2, 2023) (internal quotations and citation omitted). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ridener v. Ind. Dep't of Child. Servs*., 2023 U.S. Dist. LEXIS 146024, *22-24 (S. D. Ind. Aug. 21, 2023) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Ridener v.*

*Ind. Dep't of Child. Servs*., 2023 U.S. Dist. LEXIS 146024, *22-24 (S. D. Ind. Aug. 21, 2023) (quoting *District of Columbia v. Wesby*, 583 U.S. 48 (2018)). The Seventh Circuit is clear, there is "no disputing that such conduct [as fabricating evidence] violates clearly established constitutional rights." *Whitlock*, 682 F.3d at 580-58 (citing *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008)). And, as discussed above, a prosecutor who manufactures evidence when acting in an investigatory role can cause a due process violation just as easily as a police officer. *Whitlock*, 682 F.3d at 580-58.

Here, Plaintiffs' allege their constitutional rights were violated when Defendants Whisenand, Cockrell, Luttrull, Krug and Garrison Law Firm fabricated evidence in affidavits which were then submitted to a court and used to deprive Plaintiffs of their rights. This Court, applying Seventh Circuit caselaw, finds that Defendants Whisenand, Cockrell, Luttrull, Krug and Garrison Law Firm are not eligible for qualified immunity, since it has long been established that it is a constitutional violation to fabricate evidence in an affidavit. *Whitlock*, 682 F.3d at 580-58 (citing *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008)).

### IV. Indiana Code § 34-24-2-1 et. seq. and the Fourteenth Amendment

Plaintiffs allege Indiana's Civil Forfeiture Statute, I.C. § 34-24-2-1, violates the Fourteenth Amendment by failing to provide appropriate procedural safeguards against the arbitrary seizure of citizens' property. [DE 1, Page 25-29]. Indiana's Civil Forfeiture Statute, I.C. § 34-24-2-1, lays out the specific process for a civil forfeiture to occur. The prosecutor bringing a civil forfeiture claim must a make showing to a judicial officer that he has a preponderance of evidence the owner of the assets property was a participant in the criminal offense of corrupt criminal influence. As discussed earlier, a "preponderance of the evidence" is evidence that

"convinces you most strongly of its truthfulness," is of "greater weight," or is "more probably true than not true…" *Gambill v. State*, 675 N.E.2d 668, 676 (Ind. 1996).

Plaintiffs argue the Fifth and Fourteenth Amendments mandate that an individual receive an opportunity for a hearing before he is deprived of the property unless there is an extraordinary circumstance, and that civil forfeiture orders in Indiana are routinely requested and granted ex parte in violation of this principal. [DE 1, Page 26]. This argument falls flat. Search warrants and arrest warrants, both serious deprivations of liberty, are issued after a judicial officer reviews an affidavit for probable case and issues an ex parte order, like the process laid out in the Indiana Civil Forfeiture Statute. *See* I.C. § 34-24-2-1. While it is true that Plaintiffs' property remained seized for several years, that is not a failure of due process or of Indiana's statute, nor does it violate the Fourteenth Amendment. Rather, the blame may only be placed on the state and federal investigators who wrote, reviewed, or submitted affidavits containing fabricated information. Defendants Whisenand's, Cockrell's, Luttrull's, Krug's, and Garrison Law Firm's Motions for Summary Judgment are GRANTED on Plaintiffs' Fourteenth Amendment claims.

### V. Section 1985 Conspiracy

It is unclear to this Court which subsection of Section 1985 Plaintiffs' attempt to bring a conspiracy claim under, referencing "§ 1985" only twice in their complaint and making broad assertions about Defendants working together throughout their briefing. Because the first two subsections of Section 1985 discuss preventing a person from either holding office or executing official duties under that office, or preventing a party from attending or participating in court, this Court will assume Plaintiffs bring their claim under Section 1985(3).

The function of Section 1985(3) is to "permit recovery from a private actor who has conspired with state actors." *Florance v. Barnett*, 2023 U.S. App. LEXIS 28382, *6 (7th Cir.

Oct. 25, 2023) (quoting *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)). When Section 1985 claims brought against state defendants, who can be sued directly under Section 1983, the Section 1985 claims are "superfluous." *Florance v. Barnett*, 2023 U.S. App. LEXIS 28382, *6 (7th Cir. Oct. 25, 2023); *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009).

Judge Lee dismissed the Section 1985 claims against Defendants Cockrell, Whisenand, and the USA. [DE 72, page 50]. This leaves only Defendants Luttrull, Krug, and Garrison Law Firm. All three actors have been found to be state actors, making relief under Section 1985 duplicative of the relief available under Section 1983. *See Dewar v. Felmon*, 847 Fed. Appx. 356, 357 (7th Cir. 2021) (affirming dismissal of Section 1985 claims when Section 1983 claims are brought against state actors). As a result, Defendants' Luttrull's, Krug's, and Garrison Law Firm's Motions Summary Judgment on Plaintiffs' Section 1985(3) conspiracy claim are GRANTED.

## **CONCLUSION**

This Court has persevered through mountains of briefing and hundreds, perhaps thousands, of "material" facts identified by both parties as relevant to resolve the six Motions for Summary Judgment at hand. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.") Accordingly, the Court finds as follows, which disposes of the following motions.

- Motion for Summary Judgment by Defendant Garrison Law Firm, LLC, [DE 160]
- Motion for Summary Judgment by the Defendant United States, [DE 170]
- Motion for Summary Judgment by Defendant Gary Whisenand, [DE 174]
- Motion for Summary Judgment by Defendant Tonda Cockrell, [DE 177]
- Motion for Summary Judgment by Defendants Jessica Krug and James Luttrull, [DE 180]
- Cross-Motion for Partial Summary Judgment by Plaintiffs against Defendant Tonda Cockrell for malicious prosecution (the wrongful use of civil proceeding), [DE 198]

Defendants' Motions for Summary Judgment on Plaintiffs' abuse of process, Eighth Amendment, Fourteenth Amendment class-of-one, Fourteenth Amendment and Indiana Code § 34-24-2-1, and Section 1985 Conspiracy claims are GRANTED. Plaintiff takes nothing by way of these claims. Defendants Motions for Summary Judgment on Plaintiffs' malicious prosecution (wrongful use of civil proceedings), Fourth Amendment, and Fifth Amendment claims are DENIED, and instead, Summary Judgment is GRANTED in favor of Plaintiffs on these claims.

The last motion is Plaintiffs' Cross-Motion for Partial Summary Judgment against Defendant Tonda Cockrell for malicious prosecution (the wrongful use of civil proceeding claim) [DE 198], which is GRANTED, although it is duplicative of the relief granted above.

SO ORDERED:  September 30, 2024.


/s/ GRETCHEN S. LUND
Judge
United States District Court