UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DALE W. ECONOMAN; AND ECONOMAN AND ASSOCIATES FAMILY MEDICINE, <br><br>  Plaintiffs, <br><br> -vs- <br><br> TONDA COCKRELL; GARY L. WHISENAND; THE GARRISON LAW FIRM L.L.C., JAMES LUTTRULL, JESSICA KRUG, AND THE UNITED STATES, <br><br>  Defendants. | CASE NO: 1:20-cv-00032-GSL |

**MOTION TO EXCLUDE OPINION TESTIMONY OF TIMOTHY KING, M.D.**

Plaintiffs submit this objection and Motion to Exclude opinion testimony offered by Timothy King, M.D.

**SUMMARY OF ARGUMENT**

**OPINIONS DISCLOSED BY TIMOTHY KING M.D.**

Dr. Timothy King's proffered testimony and report should be excluded. Dr. King, a medical doctor, was hired by Defendants Cockrell and Whisenand to issue a specific "expert medical opinion on probable cause". Dr. King is not qualified to render a legal opinion, nor would his 2021 legal opinion ever be relevant to this cause or admissible under the strictures of the Federal Rules of Evidence. Just as Plaintiffs

1

objected to and moved to strike any purported "expert testimony" of Dr. King in their responses to Defendants' statements of material fact and summary judgment briefing, Plaintiffs again object, move to strike, and to exclude Dr. King as a witness in this cause.[1]

Dr. King's introduction into this case occurred in 2016, when he was engaged by the Indiana Attorney General to give his medical opinion on the legitimacy of Dr. Economan's prescribing practices at EAFM. Dr. King had no role in the investigation, forfeiture proceedings, or medical licensing board proceedings that took place in 2015. Nor was Dr. King ever identified as a witness in those matters.

Dr. King's opinions, originally formed in 2016, that Dr. Economan was likely prescribing controlled substances without a legitimate medical purpose are not relevant to this case. Dr. King's opinion on that subject was purchased in 2016 by the Indiana Attorney General and Grant County prosecutors in order to bring charges against Dr. Economan. But Dr. King's opinion in the criminal case ultimately proved unfounded, and Dr. Economan was cleared of all wrongdoing when those charges were ultimately dismissed. This Court has already determined that malicious prosecution relating to the underlying criminal case will not be presented to the jury. For that reason, Dr. King's second opinion relating to Whisenand's 2016 Affidavit is

---

[1] Plaintiffs moved to strike the report of Dr. King in their *Responses to Whisenand's Statement of Material Fact* (ECF-187 at 29-33: ¶¶51-53, 56:¶101), *Responses to Cockrell's Statement of Material Fact* (ECF-188 at 29-33: ¶¶51-53, 56:¶101), *Responses to USA's Statement of Material Fact* (ECF-191 at 29-33: ¶¶51-53, 56:¶101), *Brief in Opposition to USA's Motion for Summary Judgment* (ECF-196 at 7), and *Brief in Opposition to Whisenand's Motion for Summary Judgment* (ECF-194 at 3).

2

not relevant to the instant action or matters to be submitted to the jury. It also contradicts this Court's previous rulings and findings on the sufficiency of Whisenand's affidavits. Admission of King's testimony on this subject will likely confuse the jury and could lead to incongruous results. Therefore, this brief will instead focus on Dr. King's opinion relating to the 2015 Whisenand Affidavit, which is the only Whisenand affidavit relevant to the issues triable to a jury.

Defendants offer no theory under which Dr. King's opinion would be admissible or relevant, other than to say it may be used to present evidence "under Federal Rules of Evidence 702, 703, 705". (Exhibit 1: *Expert Disclosure of Defendants United States of America, Tonda Cockrell, and Gary L. Whisenand* at 1).  Dr. King's own proffered report confirms that he is not a legal expert, and that he has no legal training. Even if King were a legal expert, his testimony would be fundamentally inadmissible and irrelevant as to the sufficiency – or insufficiency – of Whisenand's affidavit(s). It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence.

As a general rule, an expert **may not** offer legal opinions. *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013)(emphasis added). Even actual legal experts should not be allowed to render opinions in civil rights actions to determine whether officers' conduct comported with Constitutional standards (where issues are limited to probable cause and qualified immunity) which are ultimately questions of law,

because it is for the jury to determine what facts were known to officers at the time of the conduct at issue. *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995).

Moreover, Dr. King admits in his written report that he was "asked to render an opinion … **to establish** that it is probable that Dr. Economan and EAFM prescribed opiates outside the usual course of medical practice and without legitimate medical purpose". (Exhibit 1(A) at 4). In other words, and despite having none of the qualifications of a legal expert, Dr. King was asked to render a specific opinion, that is: Whisenand's 2015 Affidavit did meet the probable cause threshold.

In their Statements of Material Facts, Defendants summarized Dr. King's "expert opinion" by stating: "Dr. King concluded that the Whisenand 2015 Affidavit **contained sufficient probable cause** to establish that Economan likely was prescribing opiate drugs to his patients outside the usual course of acceptable medical practice and without a legitimate medical purpose, and that evidence of inappropriate prescribing practice probably would be found in a search of EAFM's Office." (ECF-187/188/191 at ¶53). King places himself, at the request of counsel for the Defendants, in the position of a jurist to opine that Whisenand's 2015 Affidavit alone is sufficient evidence to support the probable cause determination in this case, and yet King holds no expertise in law, or probable cause.

Not only is Dr. King wholly unqualified to offer such an opinion, but he has also testified in other matters concerning illegal prescription allegations that "In all cases… a legitimate medical practice requires physicians to conduct an independent medical examination; establish a diagnosis; formulate a treatment plan; and monitor

the patient for effect. *State v. Sturman*, 56 N.E.3d 1187, 1207 (Ind. Ct. App. 2016). King's review of Whisenand's 2015 Affidavit in order to arrive at the requested conclusion that sufficient evidence existed to support a finding that Plaintiffs were prescribing controlled substances outside of legal bounds is irrelevant to what information Whisenand knowingly excluded and/or fabricated within the same affidavit(s). The 2015 Whisenand Affidavit is devoid of any evidence that would have given Dr. King any indication that Dr. Economan had fallen short of any of Dr. King's "must haves", as documented in his Sturman testimony, and without that information King lacked sufficient evidence or information to arrive at his purported legal conclusion – even if he were qualified to render the same.

## APPLICABLE LAW

### A.  Dr. King's proffered opinion is not admissible under Federal Rule of Evidence 702

FRE 702 embodies the U.S. Supreme Court's decisions in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), and their progeny. The rule's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. Assessing the admissibility of proposed opinion testimony is crucial because so-called "expert" testimony "can be both powerful and quite misleading." *Daubert*, 509 U.S. at 595.

Together, FRE 702 and *Daubert* articulate the trial court's mandatory gatekeeping role focused on the facts, reasoning, and methodology used by a witness to ensure that opinion testimony rests upon a "reliable foundation." *Daubert,* 509 U.S. at 597; *General Electric v. Joiner,* 522 U.S. 136, 146 (1997). This gatekeeping function is threefold: The trial court must determine whether the expert is qualified, whether his or her methodology is scientifically reliable, and whether his or her testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893-94 (7th Cir. 2011) (citing Fed. R. Evid. 702; *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)). Even "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*." *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999).

Another benchmark for reliability is whether the expert's testimony relates to "matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Allen,* 600 F.3d at 817 (quoting the 2000 Advisory Committee's Notes to FRE 702); *see also Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (*Daubert II*); *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007). Courts have long recognized that these "experts-for-hire" are "the mere paid advocates or partisans of those who employ and

6

pay them, so much so as the attorneys who conduct the suit. *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 382 (7th Cir. 1986).

As for the helpfulness of the expert's opinions, an opinion is helpful to the jury only if the witness explains his or her process of reasoning. *United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (citing *Mid-State Fertilizer*, 877 F.2d 1333, 1339 (7th Cir. 1989)). This is because an expert's opinion is meaningful only if he or she substantiates the opinion with analysis. *Clark*, 192 F.3d at 757 (quoting *Huey v. United Parcel Serv., Inc.*, 165 F.3d 1084, 1087 (7th Cir. 1999)). An expert who gives "no basis whatsoever for her conclusion" does not help the jury understand the evidence or determine a fact in issue; instead, "an expert's opinion that lacks proper substantiation [is] worthless." *Noel*, 581 F.3d at 497 (internal quotation marks omitted). An expert's failure to "bridge the analytical gap between . . . basic principles and his complex conclusions" can be an indicia of unreliable methodology. *Fuesting I*, 421 F.3d at 536. In sum, "an expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *See, e.g.*, *Zenith Elecs. Corp.v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) (quoting *Mid-State Fertilizer*, 877 F.2d at 1339).

Dr. King is not qualified to render an expert legal opinion, nor are his opinions reliable or helpful. Dr. King was hired to render a specific opinion, as he admits freely in his report, and is nothing more than an expert-for-hire. Dr. King's testimony and report are not admissible under Rule 702.

4939-1900-0067, v. 1

**B.    Dr. King's proffered opinion is not admissible under Federal Rule of Evidence 703**

Trial courts assessing a proffer of opinion testimony also must be mindful of the requirements of Rule 703. "If the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded." *In re Paoli RR. Yard PCB Litig.*, 35 F.3d 717, 748 (3d. Cir. 1994); *see also Cummins v. Lyle Indus.*, 93 F.3d 362, 371-72 (7th Cir. 1996). Opinion testimony based on materials or summaries supplied solely by counsel—without independent verification—subjects that testimony to exclusion. *MDG Int'l, Inc. v. Australian Gold, Inc.*, No. 1:07-cv-1096-SEB-TAB, 2009 U.S. Dist. LEXIS 55652, at *13-14 (S.D. Ind. June 29, 2009). "[A]n expert opinion based on facts prepared in anticipation of litigation may be deemed unreliable." *Sommerfield v. City of Chicago,* 254 F.R.D. 317, 323 (N.D. Ill. 2008) (citing *Soden v. Freightliner Corp.,* 714 F.2d 498, 503-04 (5th Cir. 1983)). Accordingly, an expert's testimony generally will be excluded if it "merely parrots information provided to him by a party." *King-Ind. Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07-cv-00341-SEBDML, 2009 U.S. Dist. LEXIS 96131, at *4 (S.D. Ind. Sep. 29, 2009).

Dr. King's report merely parrots Whisenand's affidavit and contradicts Whisenand's subsequent admissions under oath that he had no evidence of any crimes on July 29, 2015. Dr. King's testimony and report are not admissible under Rule 703.

4939-1900-0067, v. 1

## ARGUMENT

### A. King's unreliable methods and the consequences

Dr. King gives a blanket conclusory opinion without any real explanation of how he arrives there. His only basis for the opinion on the 2015 Whisenand Affidavit is a "careful review" of it. [Exh. 1(A). at 4]. This Court already knows that Whisenand's 2015 Affidavit was carefully concocted to give the appearance of overwhelming evidence of criminal activity by, *inter alia*, omitting relevant facts, citing inadmissible evidence, and making conclusory false statements. Dr. King does not create a hypothesis, test a hypothesis, and/or draw conclusions—he simply accepts everything that Whisenand says at face value—then vouches for it. By doing so, King thumbed his nose at the elements of FRE 702 and 703 which condition admissibility of opinion testimony on a witness's use of sufficient data, reliable methods, and reliable application.

Moreover, Dr. King is either unaware or he completely disregards the fact that Whisenand has repeatedly admitted that he (Whisenand) had absolutely no evidence that Plaintiffs had committed Medicaid Fraud, money laundering, or corrupt business influence, and no evidence that any prescriptions were written without a legitimate medical purpose as no patient records had been reviewed by a medical expert. (ECF-225 at 12, 23; ECF-187 at 29-33:¶¶51-53, 56:¶101). As a consequence, King's unqualified and baseless opinion and report should be excluded. *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009).

### B. Dr. King is not a reliable witness on the subject of Probable Cause.

In assessing reliability, "the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)). Dr. King possesses no specialized training or knowledge that would qualify him as an expert on probable cause or what may be found in a search warrant. In order to come to his opinion, Dr. King must also assess the credibility of the witnesses and veracity of the allegations documented by Whisenand, which he is not qualified or trained to do.

#### 1. Insufficient facts or data

Dr. King's opinion on Whisenand's 2015 Affidavit is based solely on Whisenand's 2015 Affidavit. Nothing else identified in his materials was available to law enforcement on July 29, 2015. In his report, Dr. King identifies the documents he reviewed in reaching his conclusions and issuing his opinion that probable cause existed. [Dkt 179-10, pp. 1-3]. He does not identify a methodology for this conclusion and provides no reliable basis for his conclusion other than his subjective intuition, which will not assist the trier of fact. Since his opinion is unsupported by a reliable methodology or adequate foundation, it is inadmissible.

The only document listed in Dr. King's Report which existed on July 29, 2015 is the Affidavit for Probable Cause signed by Gary L Whisenand and filed on July 29, 2015. INSPECT data may have existed at that time, but as the Court has already

concluded, it cannot and should not be used as evidence. Kings only stated methodology is his claim that he did "a careful review" of the 2015 Whisenand Affidavit. [Exh. 1(A) at 4]. His opinion contains no other foundation. This Court has similarly undertaken a careful review of Whisenand's affidavits and concluded that the same were insufficient. Dr. King is not an attorney; Dr. King is not a trained investigator, or law enforcement officer; and Dr. King has no experience, education, or training on the legal standards applicable to probable cause or sufficiency of the evidence. (See Dr. King CV as attached to Exhibit 1). Moreover, what Dr. King believes may have existed on July 29, 2015 is irrelevant to this cause. Dr. King had no role in the forfeiture cause against Plaintiffs and had nothing whatsoever to do with the investigation against Plaintiffs in 2015.

Additionally, an expert must rely on "'facts or data' as opposed to subjective impressions." *Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765 at 772 (quoting Fed. R. Evid 703). Furthermore, "an expert must do more than just state that she is applying a respected methodology; she must follow through with it." *Id.* at 773. That is, rather than merely telling the trier of fact what results to reach based on the evidence, the expert must explain why the evidence leads to such conclusions using a reliable methodology. Without such an explanation, the expert does little more than state his familiarity with a topic and provide his subjective opinion, which does not meet the standards of admissible evidence. See *United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009).

Dr. King never even bothers to substantiate—or even try to explain—his unilateral characterization that there was probable cause to conclude that Dr. Economan was issuing illegal prescriptions. Every single bullet point Dr. King bases his opinion on from the 2015 Whisenand Affidavit contain categorical hearsay. [Exh. 1(A) at 4-5].

Another recognized benchmark for gauging reliability is whether the proffered testimony is grounded in independent research. *Allen*, 600 F.3d at 817. Opinion testimony is meaningful only if the witness shows the work performed and the path followed to reach the conclusion advanced. *Clark*, 192 F.3d at 757. A witness whose methods allow him to testify based solely on the review of a written document—without performing further analysis or explaining how the analysis was performed, wears a red badge of unreliability. Dr. King did no independent research. The information and data occupying the bulk of King's report is not sufficiently reliable to pass muster under FRE 702 or 703 and must therefore be excluded.

**2. Dr. King's opinion on probable cause usurps the duty of the fact-finder and is inadmissible**.

"As a general rule . . . an expert may not offer legal opinions." *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013). "When an expert offers an opinion relevant to applying a legal standard such as probable cause, the expert's role is 'limited to describing sound professional standards and identifying departures from them.'" *Id.* (quoting *West v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997)). Therefore, an expert may not "offer an opinion regarding whether the police had probable cause

to arrest" a suspect. *Jimenez*, 732 F.3d at 722; see also *United States v. Washington*, No. 16-CR-477, 2017 WL 3642112, at *9 (N.D. Ill. Aug. 24, 2017) ("Experts under Rule 702 are routinely excluded from offering opinions about the existence of probable cause."), aff'd, 962 F.3d 901 (7th Cir. 2020); *Sanders*, 2016 WL 2866097, at *6 (police practices expert "cannot testify that there was probable cause to arrest" and "cannot testify as to the legal standards of what constitutes probable cause, including the 'totality of the circumstances' test'"). Dr. King may not explain the legal standard of probable cause, because that would invade the Court's role of explaining the law to the factfinder. *Rainsberger v. Benner*, 2019 WL 6131086, at *5 (S.D. Ind. Nov. 18, 2019).

Dr. King's proffered opinion as to whether there was probable cause to believe that Dr. Economan was committing a crime—be it in 2015 or 2016— should likewise be stricken, because to do so, he would invade the province of the factfinder by assessing the credibility of witnesses and other evidence. *Carter v. J.C. Penny Cor*p., 2009 WL 3045465 * 2 (D. Kan. September 21, 2009) (testimony regarding probable cause does not assist the jury, but pertains to the ultimate issue to be decided and therefore usurps the function of the jury).

For these reasons, Dr. King's opinion(s) on the affidavits written by Gary Whisenand are inadmissible and should be excluded.

## CONCLUSION

The Opinions advanced by Dr. King are not relevant or admissible. Dr. King lacks any qualifications necessary to render a legal opinion and attempts to invade upon the province of the fact-finder and the Court. King's alleged "expert opinions" on legal issues – as a medical doctor – do not satisfy the criteria imposed by FRE 702, 703, or 705. He relies largely on *ipse dixit,* and wholly ignores the fact that Whisenand himself has repeatedly admitted under oath to *not* having probable cause on July 29, 2015. Dr. King was hired to render a specific opinion that he was unqualified to render – but did so anyway. What Dr. King believes about the existence of probable cause in 2015 or 2016 is absolutely irrelevant, even if he were qualified to render such an opinion. His testimony should be excluded.

Respectfully Submitted,
DENSBORN BLACHLY LLP

/s/ *Eric D. Schmadeke*
Eric D. Schmadeke, Atty No. 27329-49
Gillian D. Keiffner, Atty No. 26804-49
DENSBORN BLACHLY LLP
500 East 96th Street, Suite 100
Indianapolis, IN  46240
gkeiffner@dblaw.com
eschmadeke@dblaw.com
*Attorneys for Plaintiffs Dale W. Economan and Economan and Associates Family Medicine*

4939-1900-0067, v. 1

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of December, 2024, the foregoing pleading was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dirk De Lor
Dirk.DeLor@usdoj.gov

Jennifer Cook
Jennifer.Cook2@usdoj.gov

Wayne T. Ault
Wayne.Ault@usdoj.gov

Madison Lo Dolce
Madison.lodolce@usdoj.gov

Michael E. Brown
Mbrown@k-glaw.com

Betsy M. DeNardi
Betsy.DeNardi@atg.in.gov

Cory C. Voight
Cory.Voight@atg.in.gov

Carly A. Brandenburg
cbrandenburg@eichhorn-law.com

I also certify that on December 5, 2024, a copy of the foregoing document was served by United States First Class mail, postage prepaid on:

Betsy M. DeNardi
Cory C. Voight
Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770

/s/ *Eric D. Schmadeke*
Eric D. Schmadeke

16

4939-1900-0067, v. 1