UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

DALE W. ECONOMAN, et al.,

    Plaintiffs,

    v.

TONDA COCKRELL, et al.,

    Defendants.

Case No. 1:20-CV-32-GSL

## OPINION AND ORDER

*Background*

After the Seventh Circuit issued their Mandate, at [DE 303], this Court held a Status Conference, at [DE 310], to evaluate the state of the case. During this Conference, the parties disagreed on various aspects of the case, including the pending claims, remaining Defendants, and whether substitution of Defendant United States for Defendant Tonda Cockrell under the Westfall Act was appropriate and in-effect. Given these disagreements, the Court ordered the parties to file trial briefs on these issues. Plaintiffs filed their brief at [DE 311]. Defendant Garrison Law Firm filed their brief at [DE 312]. Defendants United States and Cockrell filed their brief at [DE 313].

The Court has reviewed all three briefs, in addition to its Order resolving the Motions for Summary Judgment, [DE 225], Plaintiffs' and Defendants' Motions for Reconsideration, [DE 227-28; DE 229-30; DE 238], the transcript of the hearing on Defendants' Motions for Reconsideration on the record, [DE 239], the written Order resolving Plaintiffs' Motion for Reconsideration, [DE 242], and the Seventh Circuit's Mandate following the interlocutory

appeal, [DE 303]. Having considered those materials, and the arguments contained therein, the Court is ready to rule.

I.      Substitution under the Westfall Act

On October 29, 2024, Defendant United States filed a Notice of Substitution. [DE 233]. On November 19, 2024, Plaintiffs filed their Objection to the Notice of Substitution. [DE 248]. On December 3, 2024, Defendant United States responded to Plaintiffs' Objections. [DE 258].[1] This issue was also addressed in the parties' recently filed briefs. [DE 311- 13]. Each have been considered and reviewed.

*Legal Standard*

"The Westfall Act . . . amended several provisions of the Federal Tort Claims Act to extend immunity to federal employees from liability for tortious conduct occurring within the scope of employment." *Reedus v. McDonough*, 2024 U.S. Dist. LEXIS 230603, at *4-5 (N.D. Ind. Dec. 18, 2024) (citing *Taboas v. Mlynczak*, 149 F.3d 576, 579 n.1 (7th Cir. 1998)). "When a tort action is brought against a federal employee, the Attorney General may certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Reedus*, 2024 U.S. Dist. LEXIS 230603, at *4-5 (citing *Taboas*, 149 F.3d at 579 n.1). *See* 28 U.S.C. § 2679(d)(1)); *see also Evans v. United States*, 132 F.4th 473, 476-477 (7th Cir. 2025). "This 'scope certification' by the Attorney General serves to substitute the United States as the sole defendant." *Reedus*, 2024 U.S. Dist. LEXIS 230603, at *4-5 (citing *Taboas*, 149 F.3d at 579 n.1) (citation omitted).

---

[1] Because the parties filed interlocutory appeals beginning on December 10, 2024, this Court refrained from ruling on the Objection to the Notice of Substitution until the Mandate resolving those appeals was issued on March 6, 2026. [DE 303].

The certification creates a rebuttable presumption that the federal employee was acting within the scope of his or her employment, but a plaintiff may challenge the presumption. *Reedus v. McDonough*, 2023 U.S. Dist. LEXIS 19293, at \*5-6 (N.D. Ind. Feb. 6, 2023) (citing *Ezekiel v. Michel*, 66 F.3d 894, 896 (7th Cir. 1995)). "[O]nce the Attorney General certifies that a defendant employee was acting within the scope of his federal employment, the plaintiff bears the burden of demonstrating otherwise." *Ezekiel v. Michel*, 66 F.3d 894, 896 (7th Cir. 1995). "To meet this burden of proof, the plaintiff must articulate specific facts." *Reedus,* 2023 U.S. Dist. LEXIS 19293, at \*5–6 (citations omitted); *see also Hasbun v. U.S.*, 2010 U.S. Dist. LEXIS 131591, at \*6–7 (N.D. Ill. Dec. 10, 2010) ("Ultimately, the party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification.") (citations and quotations omitted).

*Discussion*

While objections to a notice of substitution typically require a plaintiff to "articulate specific facts" showing the certification that a defendant employee was acting within the scope of his or her federal employment was erroneous, here, Plaintiffs' arguments largely focus on other factors. First, Plaintiffs argue that the Notice is untimely because it "comes more than 1700 days after the Plaintiffs filed the Complaint." [DE 248, Page 4]. Plaintiffs argue that a notice for substitution may be decided on the face of the complaint or in reference to affidavits or other evidence outside of the pleadings. [*Id.*]. However, Plaintiffs claim that because Defendant United States filed its Notice long after discovery closed, they did not conduct discovery on the question of whether Defendants Whisenand and Cockrell were acting within the scope of their employment. [*Id.* at 4-5].

3

As an initial matter, the Westfall Act provides no time limitation on substitution. *See* 28 U.S.C. § 2679(d). Furthermore, Plaintiffs cannot assert that a "[notice] for substitution may be decided on the face of the complaint," while simultaneously complaining that they did not conduct discovery on the topic. If the notice would have been decided on the "face of the complaint," then no discovery would have been conducted. Additionally, both Defendants Whisenand and Cockrell asserted immunity under the Westfall Act in their Answers to the Complaint. [DE 77, Page 72; DE 78, Page 71]. Plaintiffs could have conducted discovery on the topic, but by Plaintiffs' own assertion, they did not. Regardless, Defendant United States' Notice is not untimely.

Additionally, Plaintiffs appear to argue that Defendant Cockrell's time as a task force officer, (hereafter, TFO), began in 2014 and ended in February of 2017. [DE 248, Pages 6-7]. The Westfall Act states that the certification is based on whether the defendant employee was acting within the scope of his or her employment *at the time of the incident out of which the claim arose*. 28 U.S.C. § 2679(d) (emphasis added). Here, the tort, or claim, at issue is malicious prosecution, which Judge Lee found was premised only on the civil forfeiture proceeding. [DE 72, Pages 2-3]. Defendant Cockrell's involvement in the civil forfeiture action was based on her signing of the affidavit attached to the civil forfeiture complaint, filed on July 29, 2015. By Plaintiffs' own evidence and arguments, Defendant Cockrell was still a TFO at that point. Therefore, whether Defendant Cockrell was a TFO after 2017 is of no relevance and does nothing to advance Plaintiffs' objection to the Notice of Substitution.

Plaintiffs next argue that the Notice would in effect grant Defendants Whisenand and Cockrell "personal immunity" from the second and third claims for relief, and that those immunity arguments are waived by "failing to raise it in the district court." [DE 248, Page 7].

4

But, as discussed above, Defendants Whisenand and Cockrell did assert immunity under the Westfall Act in their Answers to the Complaint. [DE 77, Page 72; DE 78, Page 71].

Finally, Plaintiffs argue that they will be prejudiced by the substitution of Defendant United States for Defendant Cockrell, because those claims would then proceed under the Federal Tort Claims Act, which does not permit a trial by jury, lacks fee-shifting, and makes punitive damages unavailable. [DE 248, Page 9]. Plaintiffs also argue that permitting substitution would create judgment bar issues. [*Id.* at 10].

Defendant United States responds that Plaintiffs have provided no caselaw that the potential operation of the judgment bar is an appropriate ground to deny or reverse a notice of substitution. [DE 258, Pages 18-21]. The Court, having reviewed the caselaw, agrees with Defendant United States. The caselaw indicates that Plaintiffs' burden is to "articulate specific facts" showing that the certification that a defendant employee was acting within the scope of his or her federal employment was erroneous. *Reedus,* 2023 U.S. Dist. LEXIS 19293, at *5–6. Whether or not the Notice of Substitution creates prejudice does not appear to be relevant to the analysis. Moreover, Defendant United States argues that the judgment bar issue has existed since the origination of this lawsuit as Plaintiffs chose to assert claims against Defendant United States *and* individual federal actors for claims based on the *same* underlying facts. [*Id.*].

28 U.S.C. § 2679(d)(1) provides for the automatic substitution of the United States as the party defendant in any civil action or proceeding based upon the filing of a claim for injury or loss of property, or personal injury or death, arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. 28 U.S.C. §§ 2679(b)(1); 2679(d)(1). Furthermore, § 2679(b)(1) explicitly states that the remedy against the United States under the Federal Tort Claims Act is exclusive

of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim. Therefore, any other civil action or proceeding for money damages arising out of or relating to the same subject matter is precluded without regard to when the act or omission occurred. § 2679(b)(1).

Plaintiffs sued Defendant United States under the Federal Tort Claims Act. Plaintiffs also sued Defendants Whisenand and Cockrell, who were federal employees, for claims made up of the same underlying facts. Accordingly, Defendant United States is correct that the judgment bar issue exists regardless of the Notice of Substitution, because the Federal Tort Claims Act controls Plaintiffs' tort claim.

*Conclusion*

Plaintiffs have failed to meet their burden to "articulate specific facts" demonstrating that the Attorney General's certification was erroneous. Therefore, their objections to Defendant United States' Notice of Substitution are overruled and the Notice of Substitution will remain in effect. Hereinafter, Defendant United States is substituted for Defendant Cockrell and her liability on the malicious prosecution claim.

II.    Remaining Claims

a.  Malicious Prosecution[2]

In ruling on the Defendants' Motions for Summary Judgment, the Court, *inter alia*, denied summary judgment in favor of Defendants Garrison Law Firm and Cockrell as to Plaintiff's claim for malicious prosecution, and instead, granted summary judgment in favor of Plaintiffs. [DE 225]. Defendants, including Garrison Law Firm and Cockrell, filed Motions to Reconsider that ruling.

---

[2] The malicious prosecution claim is based only on civil forfeiture proceedings. [DE 72, Pages 2, 28].

[DE 227-28; DE 229-30].  The Court held a hearing on the various motions to reconsider on November 5, 2024. [DE 234; DE 239].

As to Defendant Cockrell, the Court held, in pertinent part, as follows:

> Plaintiff filed a motion for partial summary judgment against [D]efendant Cockrell on the malicious prosecution claim, which was also granted. The federal defendants have moved for this Court to reconsider that decision. The Court has reviewed the reconsideration motion, and on that basis specifically as it relates to defendant Cockrell, the Court denies that motion for reconsideration. So the malicious prosecution claim against defendant Cockrell at this time will also not proceed to trial.

[DE 239, Page 6]. Immediately following, the Court addressed its misapplication of Rule 56(f):

> The basis for the reconsiderations, for the most part, were under Rule 56(f), which the rule does note that the Court should provide notice and opportunity to respond if, in fact, the Court is going to grant summary judgment on behalf of a nonmoving party. I understand that the defendants have filed motions to reconsider, again, primarily -- notwithstanding what I have already indicated about defendant Cockrell, have filed motions to reconsider primarily on that basis.
>
> …
>
> So on the basis of the reconsideration motions, I am granting the relief that's requested. By doing so, there are a number of claims then that remain outstanding. They don't change the Court's decision on the motions for summary judgment that were briefed and responded to, which we have noted would not proceed to trial, but as we see the terrain now having granted the motions to reconsider under Rule 56(f), these are the claims that we believe remain outstanding and ripe for trial. So to begin with, that would include the malicious prosecution or wrongful use of civil proceeding under Indiana state law; that would include the Fourth Amendment claim under 42 U.S.C. § 1983; that would include the Fifth Amendment claim under 42 U.S.C. § 1983.

[DE 239, Pages 6-8].

In reconsidering its findings on the motions for summary judgment, the Court addressed its incorrect decision, and vacated its finding of liability on the claims that Plaintiffs *did not* move

for summary judgment on, including the malicious prosecution claim against Defendant Garrison Law Firm. Defendant Cockrell's liability on the malicious prosecution claim, however, was reaffirmed on reconsideration. Pursuant to the Westfall Act, Defendant United States has now been substituted in place of Defendant Cockrell. Accordingly, Defendant Cockrell's individual liability on the malicious prosecution claim has been imputed to Defendant United States, and the question of Defendant Garrison Law Firm's liability remains and will proceed to a jury trial.

Turning to the issue of damages, the FTCA requires that claims brought against the United States "be tried to the Court without a jury." 28 U.S.C. § 2402; *Osborn v. Haley*, 549 U.S. 225, 252 (2007). Unrelated to the FTCA requirements, also relevant is Indiana's Comparative Fault statute. Ind. Code § 34-51-2. Under the statute, the finder of fact: (1) determines whether or not each defendant has some fault for causing plaintiffs' economic loss; (2) if so, then determines the total amount of damages the claimant is entitled to recover; (3) determines the percentage of fault of each defendant and plaintiff if applicable; and (4) multiplies the total amount of damages by the percentage of fault of each defendant to determine the amount of the verdict against each defendant.

The FTCA requires that claims against the United States be tried to the bench. 28 U.S.C. § 2402; *Osborn,* 549 U.S. at 252. Accordingly, based on the plain text of the statute, the Court understands this to mean that district courts must be the fact-finders on all issues of fact in FTCA cases involving the United States, including damages. 28 U.S.C. § 2402. Therefore, it stands to reason that if Defendant Garrison Law Firm is found liable on the malicious prosecution claim by a jury, because the Defendant United States is already liable for this tort, in accordance with both the FTCA and Indiana's Comparative Fault statute, this Court will need to itself hold a damages hearing to determine and apportion damages between Defendants Garrison Law Firm and United

States.[3] If Defendant Garrison Law Firm is not found liable for malicious prosecution, the Court will hold a damages hearing as it relates to Defendant United States only.

      b.   Plaintiff's Fourth Amendment Claim under 28 U.S.C. § 1983

The mandate of the Seventh Circuit found that Plaintiffs' Fourth Amendment claim under 28 U.S.C. § 1983 was "based solely on the civil forfeiture proceeding." [DE 303-1 at 4-5]. Defendants Krug and Luttrull received absolute immunity from the Seventh Circuit. Defendant Whisenand received qualified immunity for his acts allegedly violating the Fourth Amendment. [DE 303-1, Page 15]. This leaves the claim live against only Defendants Garrison Law Firm and Cockrell.[4]

"Section 1983 addresses only state action." *L.P. v. Marian Catholic High School*, 852 F.3d 690, 697 (2017) (emphasis in original). When partially granting the Defendants' Motions for Reconsideration, the Court stated that the question of whether Defendants were state actors would be decided by a jury. Upon further consideration, however, the Court must now correct course.

In light of the Seventh Circuit's Mandate in this case, and precedent, it is clear whether an individual or entity is acting under color of state law, while fact-specific, is a judicial determination. *See Didonato v. Panatera*, 24 F.4th 1156, 1161 (7th Cir. 2022) (finding that the district court applied the appropriate test for whether an individual is a state actor and reaching the same conclusion); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2009)

---

[3] This Court relied on the plain text of the FTCA, as it could find no analogous caselaw where a state law tort claim proceeded simultaneously against a private defendant and against the United States via the FTCA. If the Court were to permit a jury to determine and apportion damages for Defendant Garrison Law Firm, the jury would, as a result, be making a finding of fact as to how liable Defendant United States is, which is not permitted under the FTCA. 28 U.S.C. § 2402; *Osborn*, 549 U.S. at 252.

[4] For the sake of completeness, the Court notes that the § 1983 claim brought against Defendant United States was dismissed. *See* [DE 72 at 30] (holding that "[Plaintiffs] cannot sue the United States under § 1983 since the United States is not a state actor").

(citing *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295 (2001) (asserting that the Supreme Court has set forth several tests for courts to employ in "evaluating the 'range of circumstances' that might constitute state action.")); *Air Line Pilots Ass'n, Int'l v. Department of Aviation*, 45 F.3d 1144, 1149 (7th Cir. 1995) (*Courts will find state action* despite the presence of a private party in four discernible situations.) (emphasis added). *See also Eslinger v. Silence*, 2026 U.S. Dist. LEXIS 77133, at *3 (C.D. Ill. Apr. 6, 2026) (citing *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) ("… there is no basis in the Complaint upon which *the Court could conclude* that these private citizen Defendants could be considered state actors for purposes of § 1983.") (emphasis added)); *Boyko v. Parkview Hosp., Inc.*, 2012 U.S. Dist. LEXIS 114384, at *8 (N.D. Ind. Aug. 14, 2012) ("Accordingly, the *court must consider* each of [Defendant's] allegedly improper acts and determine whether it was functioning as a state actor or a private actor when it committed each act.") (emphasis added); *Johnson v. LaRabida Children's Hosp. & Research Ctr.*, 2002 U.S. Dist. LEXIS 18173, at *7 (N.D. Ill. Sept. 27, 2002) ("While the determination of whether an individual has become a state actor is a fact-specific inquiry, *the judicial methodology* for assessing those facts is well-established and compatible with the purpose of § 1983.") (emphasis added).

For Plaintiff's Fourth Amendment claim to be viable, Plaintiffs "must show that the alleged deprivation was committed by a person acting under color of state law." *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). A private person acts under color of state law when she is a "willful participant in joint action with the State or its agents." *L.P.*, 852 F.3d at 696 (citing *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). This requires "evidence of a *concerted effort* between a state actor and that individual." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152

10

(1970)). *See Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000) (requiring a showing of "a concerted effort between" a private actor and state actor and that a state actor and private actor "reached an understanding to deprive the plaintiff of her constitutional rights"). The plaintiff must identify a sufficient nexus between the state and the private actor to support a finding that the deprivation committed by the private actor is "fairly attributable to the state." *L.P.*, 852 F.3d at 696 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

1. Defendant Cockrell

As stated above, Plaintiffs' Fourth Amendment claim under § 1983 is "based solely on the civil forfeiture proceeding." [DE 303-1 at 4-5]. Also based on the civil forfeiture proceeding is Plaintiffs malicious prosecution claim, which Defendant United States by way of substitution has been found liable for.[5]

A judgment for or against the United States, in an action under the FTCA, "shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676; *see Martin v. United States*, 654 Fed. Appx. 235, 238 (7th Cir. 2016). This district has held that:

> "The judgment in an action under [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. The bar operates regardless of whether the FTCA judgment is in favor of or against the claimant. *Hoosier Bancorp of Ind., Inc. v. Rasmussen*, 90 F.3d 180, 185 (7th Cir. 1996). The bar applies equally to situations where the government and the employee are sued in separate actions as it does to cases where the claims are brought in the same suit. *Manning v. United States*, 546 F.3d 430, 438 (7th Cir. 2008). The bar even applies retroactively to claims resolved before

---

[5] In the Order resolving the Motions to Dismiss, Judge Lee found that Plaintiffs' malicious prosecution claim against Defendant Cockrell was premised only on the civil forfeiture action. [DE 72, Pages 2-3]. The mandate of the Seventh Circuit, which this Court will follow, found that Plaintiffs' Fourth Amendment claim under § 1983, also against Defendant Cockrell, was "based solely on the civil forfeiture proceeding." [DE 303-1 at 4-5].

11

> an FTCA claim. *Id.* In short, the judgment bar in the FTCA is broad
> and almost uniformly applied.

*Bennett v. Crane*, 2020 U.S. Dist. LEXIS 170034, at *1-2 (N.D. Ind. Sept. 16, 2020).

Since Defendant United States now has a finding of liability against it for malicious prosecution, which is based on the civil forfeiture proceeding, Plaintiffs are barred, pursuant to 28 U.S.C. § 2676, from pursuing *any* claims based on the civil forfeiture proceeding against any federal actor. This includes pursuing their Fourth Amendment claim against Defendant Cockrell. 28 U.S.C. § 2676.

Notwithstanding the clear judgment bar under § 2676, given the longevity of this matter, and the amount of voluminous briefing throughout the pendency of this case, the Court finds it necessary to detail how even if the judgment bar did not apply, Plaintiffs' Fourth Amendment claim would still fail against Defendant Cockrell because they simply did not meet their burden to show that she was a state actor. Specifically, Plaintiffs had ample opportunities to address Defendant Cockrell's status as a state actor, including in their Memorandum in Opposition to Defendant United States of America's Motion to Dismiss at [DE 56], their Memorandum in Opposition to Defendant Cockrell's Motion to Dismiss at [DE 60], their Brief in Opposition of the Motion for Summary Judgment at [DE 197], their Response to Defendant Cockrell's Statement of Material Facts in Support of their Cross-Motion for Summary Judgment at [DE 188], their Objection and Response to Defendants' Motions to Reconsider at [DE 238], their Objection to the Notice of Substitution at [DE 248], and their Position Regarding Claims Remaining Pending at [DE 311].

Starting first with Plaintiffs' Response to Defendant United States' Motion to Dismiss, Plaintiffs state:

12

Candidly, Plaintiffs cannot begin to know at this stage of litigation whether two members of a yet undefined "joint task force" and/or "tactical diversion squad" conducting and pursuing a state investigation of potential state criminal violations – and ultimately seeking and filing a state forfeiture action, state licensure action, and state criminal charges – will be found to be acting under the color of state law, federal law, or both.

[DE 56, Page 21]. Plaintiffs then go on to cite caselaw, largely outside of the Seventh Circuit, and argue that they have "specifically ple[d] that both [Defendants Cockrell and Whisenand] were acting under color of state and/or federal law and any ultimate decision as to their capacity is inappropriate at this time." [DE 56, Page 24]. Instead of pointing the Court to the specific allegations that would address the above factors, Plaintiffs continue to repeat that they simply cannot know at this juncture whether Defendant Cockrell was a state actor. *See generally* [DE 56].

Moving to Plaintiffs' Response to Defendant Cockrell's Motion to Dismiss: Plaintiffs assert that they alleged Defendant Cockrell acted under color of state and/or federal law at [DE 1, ¶¶ 20, 89, 91-95, 99, 104-107, 108-130]. [DE 60, Page 4]. Citing the same, *sans* paragraph 20, Plaintiffs argue that they alleged Defendant Cockrell conspired to manufacture and present false evidence for the purpose of establishing probable cause through a forfeiture action. [DE 60, page 8].

Consistent with the standard of review at the motion to dismiss stage, courts are to accept Plaintiffs' factual allegations as true. However, the allegations in paragraphs 91-95, 99, and 104-107 are legal conclusions and do not address the legal tests discussed above: that a private person acts under color of state law when she is a "willful participant in joint action with the State or its agents," *L.P.*, 852 F.3d at 696 (citing *Dennis*, 449 U.S. at 27), which requires "evidence of a *concerted effort* between a state actor and that individual" *Fries*, 146 F.3d at 457 (citing *Adickes*, 398 U.S. at 152). Similarly, paragraphs 108-130 provide additional facts, but fail

13

to identify who specifically Defendant Cockrell jointly acted or conspired with to deprive Plaintiffs of their constitutional rights, oftentimes just referring to Defendants. [DE 1, ¶¶ 108-130]. Not all of the Defendants are state actors, making these facts, even accepted as true, not entirely helpful.

In his Order resolving Defendants Whisenand, Cockrell, and the United States' Motions to Dismiss, Judge Lee dismissed the *Bivens* claims. Accepting Plaintiffs' allegations as true, and "draw[ing] all reasonable inferences in favor of the non-movant," however, Judge Lee permitted the Section 1983 claims, premised on Defendants Whisenand and Cockrell being state actors, to go forward, leaving open the question of whether Defendants Whisenand and Cockrell were in-fact state actors. [DE 72]. The Court agrees with this resolution, and does not find the allegations and arguments included in Plaintiffs' Memorandum in Opposition to Defendant United States of America's Motion to Dismiss at [DE 56], and their Memorandum in Opposition to Defendant Cockrell's Motion to Dismiss at [DE 60], to be conclusive on the issue on Defendant Cockrell's status as a state actor.

Moving to their Summary Judgment briefing, Plaintiffs cite Defendant Cockrell's deposition where she stated that at the start of the investigation, there was no plan to prosecute Plaintiffs federally. [DE 197, Page 18]. Plaintiffs then dedicate significant discussion to their belief that after Defendant Whisenand took over investigation there still appeared to be no intent to bring federal charges. However, arguments based on whether state charges would be filed have no bearing on whether Defendant Cockrell reached an agreement, and worked in concert, with a state actor to intentionally deprive Plaintiffs of constitutional rights.

Following this discussion on state charges, Plaintiffs also assert:

> Without a doubt, Cockrell knew that she was submitting false information in her probable cause affidavit. At every step of the way

14

> Cockrell worked with state actors to seek a state search warrant, a state forfeiture action, a state-sanctioned seizure, a suspension of a state medical license, and state criminal charges.

[DE 197, Page 19]. Without citation to evidence, this assertion holds no weight. Throughout their Response, Plaintiffs failed to cite any *evidence* supporting their allegations that Defendant Cockrell "reached an understanding [with a state actor] to deprive the [P]laintiff[s] of constitutional rights" and worked in "concerted effort" with a state actor to do so. *See Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000).

The Court also reviewed Plaintiffs' Response to Defendant Cockrell's Statement of Material Facts in Support of their Cross-Motion for Summary Judgment. [DE 188]. While Plaintiffs assert that Defendant Garrison Law Firm authored Defendant Cockrell's affidavit, there is no evidence of an agreement existing between the two to intentionally deprive Plaintiffs of their constitutional rights using this affidavit. In fact, Plaintiffs agreed with the statement that Defendant Garrison was drafting an affidavit for Defendant Cockrell based on her own findings and investigation into the financial accounts:

> 67. As of July 29, 2015, the only information known to the Garrison Law Firm regarding what Cockrell had done to identify the assets subject to the Forfeiture Complaint was that she conducted a trash pull at the Economan residence, identified where insurance payments were made, conducted surveillance of Economan, and gathered data from the FinCEN database. Exhibit 5, Taylor Deposition at 73:20-25, 74:1-7, 173:10-13. Exhibit 3, Cockrell Deposition at 157:9-18, 161:4-6, 228:24-25; Exhibit 9, Forfeiture Complaint at Exhibit B (Cockrell Affidavit).
>
> Response to Statement No. 67: Agree to the extent that the above is the universe of information that GLF possessed at the time they authored Cockrell's affidavit, and when they filed the same with the court…

[DE 188, Page 39].

Plaintiffs also admitted that Defendant Garrison Law Firm did not review the documents recovered by Defendant Cockrell during the trash pull or otherwise follow up with her, or the financial institutions identified. [DE 188, Page 40]. Moreover, Plaintiffs admitted that "Cockrell was asked to sign her Affidavit that the Garrison Law Firm prepared…" and "Cockrell had neither seen nor read the Cockrell affidavit or Forfeiture Complaint before July 29, 2015." [DE 188, Page 41 ¶¶ 74-75]. This further supports the notion that Defendant Cockrell was acting alone, and had not engaged in a *concerted effort* with a state actor to deprive Plaintiffs of their constitutional rights.

Plaintiffs reassert almost identical facts in their Additional Material Facts section. Plaintiffs state that Defendant Cockrell was asked to sign a probable cause affidavit on July 29, 2015, but that the probable cause affidavit was written entirely by Defendant Garrison Law Firm. [DE 188, Page 114 ¶¶ 363-65; Page 122 ¶ 412]. Plaintiffs even state that Defendant Garrison Law Firm has no recollection of ever even speaking to Defendant Cockrell about her affidavit before drafting it or asking her to sign it. [DE 188, Page 122 ¶¶ 413-14]. Defendant Cockrell, in her Reply, did not dispute these facts. [DE 213, Pages 104-105, 121-22].

Plaintiffs also assert that Defendant Krug directed Defendant Cockrell as to the investigation, but provide no additional facts or details on Defendant Krug's direction or relationship with Defendant Cockrell. [DE 188, Page 132 ¶ 466]. Simply put, there is no evidence in Plaintiffs' Response to Defendant Cockrell's Statement of Material Fact that supports a finding that she worked in concert with any state actor to deprive Plaintiffs of their constitutional rights.

Plaintiffs' next opportunity to argue state actor status was within their Objection and Response to Defendants' Motion for Reconsideration, which was filed after the Court found that

the issue of state actor status would proceed to trial. However, Plaintiffs did not address the Court's decision to send the issue of state actor status to trial. [DE 238].

Plaintiffs' then had the opportunity to argue state actor status within their Objection to the Notice of Substitution at [DE 248]. Recall that Plaintiffs' burden was to "articulate specific facts" demonstrating that the Attorney General's certification that Defendant Cockrell was acting within the scope of her federal employment at the time the tort occurred was erroneous. Plaintiffs devoted very little of their brief to discussing Defendant Cockrell's status as a state or federal actor, and instead, focused on other factors. Plaintiffs state that "neither party conducted serious discovery concerning the question of whether Whisenand and Cockrell were acting within the scope of their employment. And serious questions persist on that subject…". [DE 248, page 5].

Plaintiffs pled that Defendant Cockrell was a state actor for the purposes of their § 1983 claims, and were on notice that Defendant Cockrell was proceeding on a theory that she was acting in her federal employment when she answered the Complaint and asserted Westfall Act immunity. While the inquiries for whether an individual is a state or federal actor, and whether an individual is acting in their state or federal employment for purposes of the Westfall Act are not identical, the facts underlying each certainly overlap. "[S]erious discovery" on Defendant Cockrell's actions and employment may have provided insight and, more importantly, *evidence* as to whether Defendant Cockrell was a state actor, and was a "willful participant in joint action with the State or its agents" which requires "evidence of a *concerted effort* between a state actor and that individual." *L.P.*, 852 F.3d at 696 (citing *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)); *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Plaintiffs failure to conduct "serious discovery" hamstrings them. [DE 248, page 5].

Finally, Plaintiffs filed their Position Regarding Claims Remaining Pending and Matters for Trial Following Remand. [DE 311]. But Plaintiffs still did not address the issue of Defendant Cockrell's status as a state actor, albeit having a section dedicated to: "Fourth Amendment / § 1983 Claims against Defendant Cockrell." [DE 311, Page 5].

Having reviewed the voluminous filings by Plaintiffs, this Court was unable to find evidence that Defendant Cockrell was acting under color of state law when she signed the probable cause affidavit which was ultimately attached to the civil forfeiture complaint. While Judge Lee permitted the Section 1983 claims, premised on Defendant Cockrell being a state actor, to survive the motion to dismiss stage, here, Plaintiffs have provided no evidence to support that theory. *See* [DE 72]. If Defendant Cockrell cannot be considered a state actor, then the § 1983 claim against her fails. However, this point is moot, because of the mandatory application of the judgment bar under the FTCA, which prevents the Fourth Amendment claim from proceeding against Defendant Cockrell.

2. Defendant Garrison Law Firm

Finally, the court must address Defendant Garrison Law Firm and its status as a state actor for the purposes of the Fourth Amendment claim. Here again, Plaintiffs must show that Defendant Garrison Law Firm was acting under color of law. As discussed above, a private person acts under color of state law when she is a "willful participant in joint action with the State or its agents." *L.P.*, 852 F.3d at 696 (citing *Dennis*, 449 U.S. at 27). This requires "evidence of a *concerted effort* between a state actor and that individual." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Another test, the traditional and exclusive public function test, finds *de facto* state action when a private actor performs a function traditionally reserved to the state and only to the state. *Mahoney v. Beacon*

18

*Health Ventures*, 585 F. Supp. 3d 1161, 1168 (N.D. Ind. 2022) (citing *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019)); *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 354 (1974). A court applying this test must focus on the specific conduct of which the plaintiff complains. *Mahoney*, 585 F. Supp. 3d at 1168 (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004, (1982)).

The conduct that Plaintiffs complain of involves Defendant Garrison Law Firm's actions to institute and maintain a civil forfeiture action against them. In Indiana, civil forfeiture actions typically proceed under either the general forfeiture statute in Indiana Code chapter 34-24-1, or the Racketeering Forfeiture Statute in Indiana Code chapter 34-24-2. *Abbott v. State*, 183 N.E.3d 1074, 1079 (Ind. 2022). Because they are an application of Indiana statutory law, these are cases traditionally brought by the state against private citizens. However, in this case, Defendant Garrison Law Firm asserted in their Statement of Material Facts that they contracted with multiple Indiana counties, including Grant County and its Prosecutor's Office, to handle civil racketeering and forfeiture cases. [DE 189, Page 8 ¶ 29]. Defendant Garrison Law Firm entered into an agreement with the Prosecuting Attorney for Grant County in 2007. [DE 189, Pages 8-9 ¶¶ 33-34]. Plaintiffs admitted these statements. [DE 189, Pages 8-9 ¶¶ 29, 33-34].

James Garrison testified that whenever a potential civil forfeiture or racketeering case arose that Defendant Garrison Law Firm may handle, he was alerted one of two ways.

> If it's already our client, we have a relationship with their investigative branch. Those cops got our numbers. They'll call us and ask us what we think about this as a civil case. For those that have not been our clients, therefore, oftentimes -- well, almost always we hear from either the chief deputy or the prosecutor of the county asking us if we would be interested in looking at a case for them and giving them some opinions on whether it was worth going forward with.

[DE 187-51, Page 35:21-36:13]. To summarize, law enforcement or prosecutors would call Defendant Garrison Law Firm directly, as if it were an arm of the government, to ask if the firm would pursue a case on behalf of the state. James Garrison also testified that if a civil forfeiture or racketeering case that Defendant Garrison Law Firm handled would go up on appeal, the Indiana Attorney General's Office would handle it. [DE 187-51, Pages 42:22-43:1]. The Indiana Attorney General's Office does not handle appeals on cases brought by private attorneys, but instead, handles appeals on cases brought by their staff or other state actors.

These facts sufficiently show Defendant Garrison Law Firm is taking *de facto* state action by performing a function traditionally reserved to the state by bringing lawsuits to freeze or confiscate the assets of private citizens. *Mahoney*, 585 F. Supp. 3d at 1168 (citing *Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1928).

While this Court has determined that Defendant Garrison Law Firm is a state actor, the question of qualified immunity remains. The Seventh Circuit made several findings as to Defendant Garrison Law's assertion of qualified immunity.

> Garrison contends that preparing an affidavit for a civil forfeiture without knowing it contained false information does not violate a clearly established right. Key to Garrison's argument is the assumption that it was ignorant of any false information in the Cockrell Affidavit. But this fact is heavily disputed, leading us to conclude we lack jurisdiction over Garrison's appeal challenging the district court's denial of qualified immunity of Economan's Fourth Amendment Claim.
>
> …
>
> But viewing the record in Economan's favor, a jury could reasonably conclude that Garrison knew or should have known the affidavit contained material misstatements.

[DE 303, Page 16]. For this reason, the question of whether Defendant Garrison Law Firm was aware of the false information in the Cockrell Affidavit, which controls whether they are entitled to qualified immunity, will proceed to a jury.

In conclusion, the Fourth Amendment claim will proceed only against Defendant Garrison Law Firm.

> c.  Failure to Intervene

In their Position Regarding Claims Remaining Pending and Matters for Trial Following Remand, Plaintiffs identify four paragraphs in the Complaint where they argue a failure to intervene claim was pled against Defendants Cockrell, Whisenand, Garrison Law Firm, and "all Defendants generally." [DE 311, page 6]. Those paragraphs are: 94, 97, 102, and 118 of the Complaint. [DE 1]. Paragraphs 94, 97, 102, and 118 are in a section entitled "Legal Claims". [*Id.*]. This section has general allegations. *See* [DE 1 ¶ ¶ 89-103]. After these general allegations, Plaintiffs identify each claim they seek to bring and against each Defendant.

Paragraph 94 reads:

> Additionally, Cockrell failed to intervene in a knowing violation of the Plaintiffs' constitutional rights, conspired with state and federal officials to deprive Plaintiffs of their property without probable cause, engaged in a malicious prosecution of the Plaintiffs, violated the Plaintiffs' right to due process, and knowingly or intentionally abused the process through which forfeitures are allowed in the state of Indiana.

[DE 1, Page 17 ¶ 94]. While each of the other allegations included in that paragraph –conspiracy, malicious prosecution, violations of the fifth amendment, and abuse of process– exist either as their own claim or are explicitly called out under one of the claims, the failure to intervene allegation is not, and instead, is only included as a supporting allegation of the malicious prosecution claim.

The same is true of Paragraph 97, discussing Defendant Whisenand's actions.

> Additionally, he failed to intervene in a knowing violation of the Plaintiffs' constitutional rights, conspired with state and federal officials to deprive Plaintiffs of their property without probable cause, engaged in a malicious prosecution of the Plaintiffs, and knowingly or intentionally abused the process through which forfeitures are allowed in the state of Indiana.

[DE 1, Page 18 ¶ 97]. Again, while conspiracy, malicious prosecution, and abuse of process all are listed as discrete claims, failure to intervene is not. Therefore, the Court is not persuaded that these paragraphs are evidence that Plaintiffs alleged a failure to intervene claim.

Paragraph 102 is slightly different from the above two paragraphs, as it appears to be a legal conclusion, stating:

> Finally, Plaintiffs allege that the Grant County Prosecutor, the Garrison Law Firm LLC, and the Medicaid Fraud and Control Unit of the Office of the Indiana Attorney General, acting under the color of Indiana law, each jointly and individually failed to intervene in a knowing violation of Plaintiffs' constitutional right(s).

[DE 1, Page 19 ¶ 102].

Finally, Paragraph 118, included under "Second Claim for Relief, Malicious Prosecution" states:

> Defendants acted with malice in continuing criminal proceedings against Dr. Economan and each jointly and individually failed to intervene or terminating the proceedings after becoming aware of the misconduct and violation of Plaintiffs' constitutional rights.

[DE 1, Page 22 ¶ 118]. Because Plaintiffs explicitly discuss "failure to intervene" as a supporting allegation under the malicious prosecution claim, the Court is unconvinced Plaintiffs meant to allege a stand-alone failure to intervene under § 1983. The Seventh Circuit has consistently recognized "that a state actor's failure to intervene in the violation of another's constitutional rights may render him liable under Section 1983." *Bey v. City of Chicago*, 2022 U.S. Dist.

22

LEXIS 83803, at *11 (N.D. Ill. May 10, 2022). *E.g.*, *Patrick v. City of Chi.*, 213 F. Supp. 3d 1033, 1053 (N.D. Ill. 2016) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)). Here, under Plaintiffs' "First Claim for Relief, Deprivation of Federal Civil Rights Under 42 U.S.C. § 1983" they state, "[a]ll of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983." [DE 1, Page 20 ¶ 106]. Failure to intervene is not included in that list. This is further evidence that Plaintiffs did not intend to bring a failure to intervene claim under § 1983.

While Plaintiffs provide a litany of allegations preceding paragraph 118, it is not clear which violations of Plaintiffs' constitutional rights Defendants failed to intervene on. Therefore, the court is hard-pressed to find any allegations in the Complaint sufficient to state a failure to intervene claim against any Defendant.

Plaintiffs also point to various filings which they allege show Defendants acknowledged the failure to intervene claim. Plaintiffs argue that Defendants Cockrell and Whisenand's Motions to Dismiss, and Plaintiffs' Responses to those Motions, discuss the failure to intervene claim. However, as was made in clear in Judge Lee's order resolving the Motions, Defendants Cockrell and Whisenand did so in the context of *Bivens* claims, which were dismissed, so the Court does not find this to be evidence that a non-*Bivens* failure to intervene claim is still live. [DE 72, Page 2].

Plaintiffs argue that pages 19-20 of Defendant United States' Motion for Summary Judgment discusses the failure to intervene claim, but that is not true. *See* [DE 171, Pages 19-20]. Defendant United States' Motion references paragraph 97 in the Complaint not in the context of

23

a failure to intervene claim, but in the context of the abuse of process claim. The same is true of Defendant Cockrell's Motion for Summary Judgment, [DE 178, Page 21], and of Defendant Whisenand's Motion for Summary Judgment, [DE 175, Page 20]. Plaintiffs cite their Responses to both Motions where they footnote that Defendants did not move or summary judgment on the failure to intervene claims, but because Defendants referenced only a single paragraph allegation from the Complaint in the context of the abuse of process claim, it does not appear, to this Court, that they were ever on notice that a failure to intervene claim was being advanced.

Furthermore, Plaintiffs point out that Defendant Garrison Law Firm includes the phrase "failure to intervene" in their Reply to Plaintiffs' Response during Summary Judgment Briefing. But the full quote in Defendant Garrison Law Firm's Reply to Plaintiffs' Response reads "GLF's malice may be inferred by the creation and admission of a false affidavit, the omissions of critical and exculpatory evidence, the failure to intervene, failure to conduct an adequate investigation and the general timeline of legal causes instituted against Dr. Economan…". [DE 207, Page 3]. This is not discussion of a stand-alone failure to intervene claim, but instead, of Defendant Garrison Law Firm summarizing the ways in which Plaintiffs are attempting to show malice. Tellingly, nowhere have Plaintiffs argued that "the omissions of critical and exculpatory evidence" and "failure to conduct an adequate investigation" are stand-alone claims that too have gone unaddressed.

Based on the Court's discussion above, the Court remains unconvinced that a failure to intervene claim was appropriately pled, and would have put Defendants, and this Court, on notice of the claim. For all of the foregoing reasons, no failure to intervene claim was appropriately pled.

d. Conspiracy under Section 1985

This Court granted Defendants Luttrull, Krug, and Garrison Law Firm's Motions for Summary Judgment on the Section 1985(3) conspiracy claim. This was because the Court found:

> The function of Section 1985(3) is to "permit recovery from a private actor who has conspired with state actors." *Florance v. Barnett*, 2023 U.S. App. LEXIS 28382, *6 (quoting *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)). When Section 1985 claims brought against state defendants, who can be sued directly under Section 1983, the Section 1985 claims are "superfluous." *Florance v. Barnett*, 2023 U.S. App. LEXIS 28382, *6 (7th Cir. Oct. 25, 2023); *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009).

> Judge Lee dismissed the Section 1985 claims against Defendants Cockrell, Whisenand, and the USA. [DE 72, page 50]. This leaves only Defendants Luttrull, Krug, and Garrison Law Firm. All three actors have been found to be state actors, making relief under Section 1985 duplicative of the relief available under Section 1983. *See Dewar v. Felmon*, 847 Fed. Appx. 356, 357 (7th Cir. 2021) (affirming dismissal of Section 1985 claims when Section 1983 claims are brought against state actors).

[DE 225, Page 32].

Plaintiffs now argue that the "§ 1985 claims that are no longer 'duplicative of the relief' granted under Section 1983 will proceed to a jury trial." [DE 311, Page 10]. This is misguided. First, regardless of the reason, the Court granted Defendants' Motions for Summary Judgment on that Count; this claim does not come back to life absent an explicit reconsideration or similar order from this Court. Notably, Plaintiffs did not file a Motion for Reconsideration on the Section 1985 conspiracy claim. *See* [DE 238]. Accordingly, the Court reiterated that the Section 1985 conspiracy claim was no longer live during its status conference on November 5, 2024.

> …[D]efendants filed motions for summary judgment on the following claims which were granted: The abuse of process under Indiana state law, that was granted; violations of the Eighth Amendment under 42 U.S.C. § 1983, that was granted; violations of the Fourteenth Amendment under 42 U.S.C. § 1983, which was granted; violations of the Fourteenth Amendment as applied to Indiana Code 34-24-2-1, which was granted; and conspiracy under section 1985, which was granted. So all of those motions for

25

> summary judgment filed by the various defendants were granted.
> The plaintiff did not file a motion to reconsider any of those claims;
> so at this time those claims would not proceed to trial.

[DE 239, Pages 5-6]. Nor does the conspiracy claim come back to life due to the findings of the Seventh Circuit which Plaintiffs believe make the relief under Section 1985(3) "no longer duplicative," especially when (1) Plaintiffs did not appeal to the Seventh Circuit on those grounds, (2) the Seventh Circuit made no such pronouncement in their Mandate, and (3) Plaintiffs offer no caselaw or evidence in support of this contention. The Court is unpersuaded that the Section 1985(3) conspiracy claim is live.

Notwithstanding the Court's position that the Section 1985(3) conspiracy claim is not live, because Judge Lee dismissed the Section 1985 conspiracy claim against Defendants Cockrell, Whisenand, and United States, the claim only proceeded against Defendants Luttrull, Krug, and Garrison Law Firm at summary judgment. [DE 72, page 50]. The Seventh Circuit awarded Defendants Luttrull and Krug "absolute immunity on any and all claims against them." [DE 303, Page 18]. The Seventh Circuit explicitly instructed that their award of absolute immunity was "not to be revisited on remand." [*Id.*]. That leaves *only* Defendant Garrison Law Firm. Section 1985(3) provides a remedy when "two or more persons in any state or Territory conspire . . . for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3)). With all other Defendants out, there is no other defendant that Defendant Garrison Law Firm could have conspired with.

Therefore, for each of the reasons elucidated above, the Section 1985(3) conspiracy claim remains resolved and will not proceed to any trial.

*Conclusion*

For the foregoing reasons, the Court holds that:

26

- Defendant United States has been found liable for malicious prosecution. The malicious prosecution claim will proceed to a jury trial against Defendant Garrison Law Firm on the issue of liability. If Defendant Garrison Law Firm is found to be liable, they will proceed to a joint damages trial with Defendant United States, where damages and apportionment of those damages will be determined by the bench. If Defendant Garrison Law Firm is not found liable at their jury trial, only Defendant United States will proceed to a bench trial on the issue of damages;

- The Fourth Amendment claim, based on the civil forfeiture proceeding, will proceed to a jury trial against Defendant Garrison Law Firm only. The jury will also determine the outstanding question relating to qualified immunity, which, as described by the Seventh Circuit, is whether Defendant Garrison Law Firm was ignorant of any false information in the Cockrell Affidavit;

- The Fourth Amendment claim against Defendant Cockrell is dismissed pursuant to 28 U.S.C. § 2676;

- There is no failure to intervene claim against any Defendant in the Complaint;

- All Section 1985 conspiracy claims have been previously resolved and therefore will not proceed to any trial, bench or jury.

SO ORDERED.

ENTERED: June 26, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court